Roman M. Silberfeld, SBN 62783
RSilberfeld@RobinsKaplan.com
Daniel L. Allender, SBN 264651
DAllender@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800


Attorneys for Plaintiff
*DivX, LLC*

Christopher A. Seidl (*pro hac vice*)
CSeidl@RobinsKaplan.com
Aaron R. Fahrenkrog (*pro hac vice*)
AFahrenkrog@RobinsKaplan.com
Bryan J. Mechell (*pro hac vice*)
BMechell@RobinsKaplan.com
Emily J. Tremblay (*pro hac vice*)
ETremblay@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>NETFLIX, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 2:19-cv-1602 (PSG)(JCx)<br><br>**PLAINTIFF DIVX, LLC'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: November 4, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Room: 6A<br>**ORAL ARGUMENT REQUESTED**<br><br>Complaint filed March 5, 2019<br>First Amended filed August 21, 2019 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ALLEGATIONS OF FACT .................................................................................2

ARGUMENT........................................................................................................6

I.   Legal standards: Netflix misapplies the law. ...................................6

    A.   A Rule 12(b)(6) motion challenging patent eligibility fails unless undisputed facts clearly require a holding of ineligibility. .......................6

    B.   Netflix misapplies the *Alice* framework. ........................7

        1.   Improvements to computer functionality are patent eligible.............8

        2.   Netflix has the burden to establish representative claims.................8

        3.   The specification informs the eligibility analysis at both steps........9

II.   The '720 and '515 claims are patent eligible. ..................................10

    A.   Step 1: The '720 and '515 claims are directed to patent eligible improvements to top level index files used in ABS systems. .................10

    B.   Step 2: The FAC pleads facts demonstrating an inventive concept. .......12

III.  The '792 claims are patent eligible. ...............................................15

    A.   Step 1: The '792 claims are directed to patent eligible improvements to multimedia files used in streaming. ........................15

    B.   Step 2: The FAC pleads facts demonstrating an inventive concept. .......17

IV.  The '673 claims are patent eligible. ...............................................18

    A.   Step 1: The '673 claims are directed to patent eligible improvements to encrypted data structures used in streaming. .......................18

    B.   Step 2: The FAC pleads facts demonstrating an inventive concept. .......21

V.   The '588 claims are patent eligible. ...............................................22

    A.   Step 1: The '588 claims are directed to security and performance improvements for ABS computer systems. .............................22

    B.   Step 2: The FAC pleads facts demonstrating an inventive concept. .......24

CONCLUSION..................................................................................................25

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ...................................................................passim

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)....................................................................................passim

*Ancora Techs., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ...................................................................passim

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) ..............................................................................7

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ............................................................................9

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .....................................................................8, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................7

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ..............................................................9, 10, 25

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  319 F. Supp. 3d 818 (E.D. Va. 2018) ...............................................................20

*Broadcom Corp. v. Sony Corp.*,
  2016 U.S. Dist. LEXIS 189457 (C.D. Cal. Oct. 5, 2016) ..................................16

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) .................................................................6, 7, 12

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ..........................................................................11

*Datatrak Int'l, Inc. v. Medidata Sols., Inc.*,
  2015 U.S. Dist. LEXIS 151039 (N.D. Ohio Nov. 6, 2015)..........................12, 17

*Digital Media Techs., Inc. v. Amazon.com, Inc.*,
  2017 U.S. Dist. LEXIS 190934 (N.D. Fla. July 3, 2017)...................................20

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018) .......................................................................... 7

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................... passim

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ........................................................ 8, 11, 16

*Glasswall Sols., Ltd. v. Clearswift Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) .............................................................. 12

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) ............................................................. 12, 17

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) .................................................................. 12

*McCalden v. Cal. Library Ass'n*,
  955 F.2d 1214 (9th Cir. 1992) ...................................................................... 7

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*,
  731 F.3d 1258 (Fed. Cir. 2013) .................................................................... 8

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011) ........................................................................................ 6

*Netflix, Inc. v. Rovi Corp.*,
  114 F. Supp. 3d 927 (N.D. Cal. 2015) ....................................................... 15

*Parker v. Flook*,
  437 U.S. 584 (1978) .................................................................................... 12

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
  161 F. Supp. 3d 325 (D. Del. 2015) ........................................................... 20

*PPS Data, LLC v. Jack Henry & Assocs.*,
  No. 2:18-cv-00007-JRG (E.D. Tex. Sept. 6, 2019) ..................................... 8

*Ramirez v. County of San Bernardino*,
  806 F.3d 1002 (9th Cir. 2015) ...................................................................... 9

*Steele v. Harrington*,
  2013 U.S. Dist. LEXIS 139707 (C.D. Cal. Sept. 25, 2013) ....................... 22

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015) .................................................................................. 24

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Universal Elecs., Inc. v. Roku, Inc.*,
   2019 U.S. Dist. LEXIS 74623 (C.D. Cal. Mar. 5, 2019) ....................................11

**Statutes**

35 U.S.C. § 101.................................................................................................1

35 U.S.C. § 282(a) .........................................................................................6, 8

35 U.S.C. § 282(b) .............................................................................................6

**Rules**

Civ. L.R. 7-9 .....................................................................................................9

Fed. R. Civ. P. 12(b)(6) .............................................................................passim

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:19-cv-1602 (PSG)(JCx)
DIVX'S RESPONSE TO MOTION TO DISMISS

# PATENT ABBREVIATIONS

| | Abbreviation |
|---|---|
| U.S. Patent No. 7,295,673 (Dkt. 60-1) | '673 patent or '673 |
| U.S. Patent No. 8,472,792 (Dkt. 60-3) | '792 patent or '792 |
| U.S. Patent No. 9,270,720 (Dkt. 60-5) | '720 patent or '720 |
| U.S. Patent No. 9,998,515 (Dkt. 60-6) | '515 patent or '515 |
| U.S. Patent No. 10,225,588 (Dkt. 60-8) | '588 patent or '588 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**INTRODUCTION**

DivX's asserted patents arise from its pioneering work in video streaming technology, work that largely predates Netflix's streaming service. DivX's innovation fueled development of its software, incorporated in 1+ billion licensed devices. DivX's First Amended Complaint (FAC) establishes that its inventions make streaming more efficient, more secure, and widely available. Yet Netflix dismisses the FAC wholesale, arguing that its robust detail changes nothing. Netflix either ignores the FAC's detailed allegations or argues against them, presenting a thicket of factual disputes. Every disputed fact is a reason to deny its motion.

The '720 and '515 inventions deliver faster adaptive bitrate streaming (ABS) with fewer interruptions by improving the top level index file that the streaming device uses to play back video streams. The '792 inventions make streaming features, like fast forward and seek, operate more quickly and easily by counterintuitively placing more data—an abridged index and a complete index—in the digital video file. The '673 inventions keep video content secure while making streaming faster and more efficient by providing a better encrypted data structure that encrypts less of the video data and makes the encrypted data easier to decrypt. And the '588 inventions provide faster and smoother ABS by integrating common encryption information into multiple, partially encrypted video streams.

These inventions improve upon prior, inferior approaches to internet video distribution. The Patent Office scrutinized these inventions and found them patentable, in several cases issuing the patents after specifically examining them under § 101 and the *Alice* framework. The claims do not recite only abstract ideas, like "indexing" or "encryption," as Netflix asserts. Netflix's attempts to recast the claims are contrary to the patents and allegations in the FAC, creating, at the very least, disputed issues of fact that preclude Rule 12 dismissal.

The Court should deny Netflix's motion for at least three reasons. First, DivX's claims are directed to improvements to computer systems streaming video. The

DIVX'S RESPONSE TO MOTION TO DISMISS

Federal Circuit has routinely found such specific technological improvements to be patent eligible, as in *Enfish*. Second, DivX's FAC pleads facts demonstrating that the claims contain inventive concepts—they recite elements and combinations that were not well-understood, routine, or conventional at the time of invention. The FAC's well-pleaded facts preclude dismissal under Rule 12(b)(6), as in *Aatrix*. Third, Netflix has not satisfied its burden to demonstrate that the FAC *requires* a holding of ineligibility. Netflix cannot prevail on its affirmative defense at this juncture.

## ALLEGATIONS OF FACT

DivX's FAC pleads facts establishing that the claimed inventions improve computer systems streaming video and addressing the Court's noted concerns. These allegations preclude dismissal.

**'720 and '515 patents.** The '720 and '515 inventions enable higher-performance ABS with an improved top level index file that a playback device uses to play back and switch among streams. The inventions provide for improved, automatic generation and use of a top level index file tailored to the requesting playback device's capabilities. Dkt. 60 ¶¶ 168-76, 183, 186, 189-98, 205, 207.

In ABS, a playback device detects streaming conditions in real time and adjusts the resolution of the streamed video so that the viewer does not experience playback interruptions. *Id.* ¶¶ 170, 192 (citing '720 at 1:26-45, '515 at 1:30-45). The playback device uses a top level index file to request and switch among different streams from the server, encoded at different bitrates. *Id.* (citing '720 at 6:39-45, '515 at 6:50-57).

Many different playback devices, with different capabilities, can stream video. *Id.* ¶¶ 172, 194 (citing '720 at 7:55-62, 9:1-8, 11:46-66, 12:20-31, '515 at 8:2-9, 9:16-23, 11:65-12:18, 12:39-51). Sending the same index file to devices with different capabilities degrades playback. *Id.* ¶¶ 173, 195. Thus, each playback device needs a device-specific top level index file that enables it to request only those streams suitable for playback on that device. *Id.* ¶¶ 168, 172-73, 189, 194-95 (citing '720 at 12:20-13:24, '515 at 12:39-55).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Prior playback server systems did not generate a device-specific top level index file in response to a playback device's request. *Id.* ¶¶ 175, 197. Before the '720 and '515 inventions, servers could not provide device-specific top level index files for a variety of devices without maintaining a library of unique index files, which would have required increased server-side processing power and memory. *Id.* ¶¶ 173, 195.

The '720 and '515 patents solve these problems by automatically generating (or, on the device side, requesting and using) an improved, device-specific top level index file for a particular playback device based on that playback device's capabilities, *id.* ¶¶ 174, 196, creating more efficient ABS and improving the performance of both the ABS server and the playback device. *Id.* ¶¶ 176, 183, 186 (citing '720 at 2:24-28, 6:39-43, 6:50-55, 20:15-35, 21:14-22:6), 198 (citing '515 at Abstract, 2:21-33, 10:11-34, 12:39-13:55), 205 (citing '515 at 2:28-33, 6:50-54, 6:62-67, 20:43-67), 207. The server does not need to store a static top level index file for every unique playback device, and each playback device receives an index to streams compatible with that specific device. *Id.* The FAC explicitly addresses the Court's concern that the claims may not recite *ordered* steps for generating a device-specific top level index file in response to the playback device request. *Id.* ¶¶ 182, 185, 204 (claiming ordered steps). '515 claim 16 recites the device-specific top level index file that improves device performance during ABS. *Id.* ¶ 207.

**'792 patent.** The '792 inventions allow a playback device to execute streaming functions, like fast forward and seek, more quickly and easily by counterintuitively placing more data—an abridged index in addition to a complete index—in a digital video file. *Id.* ¶¶ 124-33, 144, 147, 150.

When a multimedia file contains only a complete index, obtaining and parsing that index to navigate the file's content is time- and resource-intensive and either delays playback or prevents the viewer from using desirable playback functions like seek and fast forward. *Id.* ¶¶ 125-26. The patent's new multimedia file provides a dual-index structure, including an abridged index, that allows the playback device to

Case No. 2:19-cv-1602 (PSG)(JCx)
DIVX'S RESPONSE TO MOTION TO DISMISS

more quickly access index information and, as a result, more efficiently request, play back, and navigate content during streaming. *Id.* ¶¶ 124 (citing '792 at Abstract, 1:20-21, 1:38-40, 1:48-53), 127, 128 (citing '792 at 15:9-21, 16:26-36), 129 (citing '792 at 48:21-49:42), 130-133 (citing file history). The new file improves playback features like trick play and reduces delays in commencing playback. *Id.* ¶¶ 124, 129 (citing '792 at 15:10-16:36, 48:21-49:42), 131-32, 144, 147, 150. The FAC addresses the Court's concern regarding the non-conventional aspects of that file and its dual-index structure, regardless of where in the file the second, abridged index resides. *Id.* And the FAC addresses the Court's concern that the initial complaint had not incorporated those aspects of the intrinsic record that show that the '792 invention is a new multimedia file. *See id.* ¶¶ 124-25, 127-29, 144, 147, 150.

**'673 patent.** The '673 inventions secure video streams while making streaming faster and more efficient. The inventions teach encrypting less video data and synchronizing the partially encrypted data with decryption information, making it easier to decrypt and decode. *Id.* ¶¶ 84-95, 99, 102, 105, 108. Decoding a digital video stream is "very computationally intensive." *Id.* ¶ 87 (quoting '673 at 1:63-2:9). Further, digital video streams are encrypted to secure the content, which requires a playback device to *decrypt* the stream, adding to the computational overhead. *Id.* ¶¶ 88 (quoting '673 at 3:34-51), 89, 90. Some frames contain more data than others yet need to be decrypted and decoded at the same speed and quality. *Id.* ¶ 89. "As a consequence, adequate processing power needs to be provided to ensure that even the largest frames expected to be received may be successfully decrypted and decoded." *Id.* (quoting '673 at 3:34-51). Thus, "a need exist[ed] for an adequately secure technique for bounding the resources consumed during decryption, thereby reducing peak processing requirements." *Id.* ¶ 90 (quoting '673 at 3:49-51).

The '673 patent provides a technical solution: new stream formats that include partially encrypted video data and also decryption information synchronized with the encrypted content, to adequately secure the content while limiting the resources

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

consumed during decryption. *Id.* ¶¶ 85 (citing '673 at 1:14-20), 90, 91 (citing '673 at 3:39-51), 92, 99, 102, 105, 108. By encrypting only a portion of the video stream or a portion of a frame, the new stream structure reduces the computing resources required for encoding, encrypting, decrypting, and decoding, as FIG. 10 depicts. *Id.* ¶ 95 (citing '673 at 9:34-10:34, FIG. 10). In addition, synchronized decryption information makes decryption less computationally intensive and reduces errors that could be caused by a lack of synchronization. *Id.* ¶¶ 93 (citing '673 at 3:55-4:42, 5:25-32, 6:39-10:17), 95. Prior video data structures did not do this. *Id.* ¶ 94. Thus, "[t]he bounded encryption approach of the invention requires substantially less peak processing power . . . during the decryption process than would otherwise be required using standard encryption techniques." *Id.* (quoting '673 at 10:18-34). The FAC explicitly clarifies, in response to the Court's concerns, that partial encryption—be it partial *frame* or some but not all frames—with synchronized decryption information provides the technical solution. *See, e.g.*, *id.* ¶¶ 84, 93-95.

**'588 patent.** The '588 inventions improve ABS playback performance while keeping content secure. The inventions integrate common encryption information into multiple video streams and communicate that information using top level index files and container index files that the playback device uses to switch among streams. *Id.* ¶¶ 224-28, 232, 235. The inventions reduce the complexity of the cryptographic information needed to ensure content security for alternative video streams, so that an ABS user experiences fewer stalls, delays, or errors caused by processing the cryptographic information. *Id.* ¶¶ 224-25, 228, 232, 235 (citing '588 at Abstract, 2:66-3:30, 8:37-61, 9:65-10:31).

Before the '588 inventions, each stream used unique cryptographic information for authorizing secure playback. *Id.* ¶ 225 (citing '588 at 8:37-61, 9:65-10:31). Storing and processing cryptographic information for each stream requires more computing resources, increases the capability demands on the playback device, and may cause stalls or delays when switching among streams with different bitrates. *Id.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

The '588 inventions provide a technical solution: a new index file structure and encrypted data structure to reduce the computer memory and other resources needed to process cryptographic information during ABS. *Id.* ¶ 224. The new structure includes alternative video streams encrypted using a set of common keys, partially encrypted video frames, a top level index identifying those streams, and a container index containing byte ranges for portions of a stream. *Id.* ¶¶ 226-27 (citing '588 at Abstract, 2:66-3:30, 8:37-61, 9:65-10:31). The inventions allow playback devices to switch among alternative streams during ABS and to decrypt those streams without the computationally intensive processes of obtaining and processing additional cryptographic information. *Id.* ¶ 228 (citing '588 at 8:55-61, 10:22-31). The FAC clarifies that *combining* partial frame encryption with common encryption keys provides the inventive solution. *See, e.g.*, *id.* ¶¶ 231-32, 235.

**Eligibility examined during prosecution.** During prosecution of the '720, '515, '792, and '588 patents, the examiner rejected pending claims under § 101. *Id.* ¶¶ 142, 181, 203, 230. Each time, the applicant overcame the rejection by amending the rejected claims, allowing the claims to issue as patent eligible. *Id.*[1]

## ARGUMENT

### I. Legal standards: Netflix misapplies the law.

#### A. A Rule 12(b)(6) motion challenging patent eligibility fails unless undisputed facts clearly require a holding of ineligibility.

Netflix contends that DivX must plead eligibility. That is not the law. A patent is presumed eligible. 35 U.S.C. § 282(a); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (validity presumption includes § 101 eligibility). Thus, ineligibility is an affirmative defense that requires clear and convincing proof. 35 U.S.C. § 282(b); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95, 100 (2011).

"For a complaint to be dismissed because the allegations give rise to an

---

[1] The '720, '515, and '588 patents also issued after the *Alice* decision.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1992). Under Rule 12(b)(6), the Court must "limit [its] review to the complaint, accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). The Court does not evaluate the "plausibility" of pleaded facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (explaining that the Court judges the plausibility of entitlement to relief, not the plausibility of any particular pleaded fact).

Thus, the complaint survives unless the movant satisfies two requirements; Netflix satisfies neither. First, "patent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law"—if the complaint pleads facts that undermine the defense, the complaint survives. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "[S]pecific factual allegations that aspects of the claims are inventive" preclude dismissal. *Cellspin*, 927 F.3d at 1317. As do "concrete allegations regarding the claimed combination's improvement to the functioning of the computer." *Aatrix*, 882 F.3d at 1128. Second, the Court may adjudicate eligibility only "where the *undisputed* facts . . . *require* a holding of ineligibility"—the complaint must *prove the defense*. *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018) (emphases added); *see also Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).").

## B. Netflix misapplies the *Alice* framework.

The Court previously discussed the two-step test for evaluating patent eligibility under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Dkt. 59 at 9-11. Here, DivX addresses aspects of that test that Netflix misapplies in its motion.

**1. Improvements to computer functionality are patent eligible.**

The Federal Circuit has held that claims reciting improvements to computer functionality either were not directed to an abstract idea at *Alice* step one or were not well-understood, routine, and conventional[2] at step two. For example, improved database functionality was not abstract at step one. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-39 (Fed. Cir. 2016). A method for using an improved computer file was not abstract at step one. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303-06 (Fed. Cir. 2018). An improved internet content-filtering system precluded Rule 12(b)(6) dismissal at step two. *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016). As did "an improvement in the importation of data from third-party software applications." *Aatrix*, 882 F.3d at 1129-30. Netflix ignores these cases that provide the proper framework for analyzing DivX's claims, which recite technology-based video streaming solutions.

**2. Netflix has the burden to establish representative claims.**

Ineligibility, "like other grounds of invalidity, must be analyzed on a claim-by-claim basis." *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013); *see also* 35 U.S.C. § 282(a). Netflix bears the burden of proving that each challenged claim is ineligible. Netflix therefore must establish a basis for representativeness. *See PPS Data, LLC v. Jack Henry & Assocs.*, No. 2:18-cv-00007-JRG, Opinion and Order at 6 (E.D. Tex. Sept. 6, 2019) (attached as Ex. 1) ("The initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims."). DivX bears no burden to demonstrate *non*-representativeness.

Here, Netflix offers nothing to prove representativeness and attempts to excuse its burden by arguing that DivX did not previously dispute representativeness. Dkt. 61 at 3. But DivX did not concede, and does not agree, that any claim properly

---

[2] DivX abbreviates this phrase as "well-understood" going forward.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

represents any other. Because Netflix makes no prima facie case for representativeness in support of this motion, it offers no basis to find ineligible any claim that it did not expressly address in its motion.

In its order, the Court "deem[ed] Plaintiff to have waived any argument to the contrary" as to representative claims. Dkt. 59 at 15. But the initial complaint and Netflix's motion addressing that complaint are now moot and "treated . . . as non-existent." *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). "The amended complaint is a new complaint, *entitling the plaintiff to judgment on the complaint's own merits*; we do not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling. . . . The district court is not . . . bound by any law of the case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) (emphasis added). Indeed, under this Court's local rules, DivX has the opportunity to respond to the arguments in the new motion, directed to the new pleading. *See* L.R. 7-9 (opposition must contain "a statement of all the reasons in opposition [to the motion]"). DivX cannot have waived responses to a new motion addressing a pleading that did not yet exist when DivX filed its prior opposition.

### 3. The specification informs the eligibility analysis at both steps.

Netflix misapplies the law by asking the Court to ignore the specifications where they describe the claimed inventions' technical benefits. *See, e.g.*, Dkt. 61 at 1, 10 n.6, 14-15. At step one, the Court considers each claim in view of the specification, which can confirm that a claim is not abstract by teaching that "benefits flow from" the claimed combination. *See Enfish*, 822 F.3d at 1333-37. Similarly, at step two, the specification's description of "benefits that improve computer functionality" indicates that a claimed combination is not well-understood and instead provides an inventive concept. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369-70 (Fed. Cir. 2018). DivX's citations to the specifications tie the benefits to the claim language, requiring consideration of those benefits under both steps.

Elsewhere, Netflix relies on the specifications, asserting that they demonstrate

that claim elements were well-understood. In reality, the specifications simply provide context for the inventions. A specification cannot establish that a particular element or combination was well-understood unless it clearly states as much—to identify an element as recognized in the prior art is not enough. *Id.* at 1369 ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").

## II.  The '720 and '515 claims are patent eligible.

### A.  Step 1: The '720 and '515 claims are directed to patent eligible improvements to top level index files used in ABS systems.

The '720 and '515 claims are directed to a device-specific top level index file, and how to generate and use it, that improves the functionality of ABS systems. Dkt. 60 ¶¶ 168, 189. All claims relate to this particular kind of index file that enables a playback device to switch among streams depending on streaming conditions during ABS, and not "indexing" generally. *See* '720 claims 1-18, '515 claims 1-21; *see also* '720 at 2:24-28, 6:39-45, 7:29-42, 9:20-48, 10:18-22, 12:20-13:24, '515 at 2:28-33, 6:50-57, 7:43-56, 9:35-63, 10:34-38, 12:39-13:55 (Dkt. 60 ¶¶ 170-72, 175-76, 192-94, 197-98). Thus, the claims are directed to streaming technology improvements, not merely "creating and using an index."

For example, '720 claim 1 and '515 claim 1 recite how to generate a device-specific top level index file in response to particular information that a playback device provides. '720 at 20:15-35, '515 at 20:43-67. The claimed steps show that the device-specific top level index file is generated in response to a playback device request; each step following receiving the request refers back to "the" output of a prior step.[3] *Id.*; *see also* Dkt. 60 ¶¶ 182, 204. The specification consistently refers to

---

[3] If Netflix argues that the claims do not require performing these steps in order, the Court should defer a ruling on ineligibility until after claim construction.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

the claimed methods as "automatically generating top level index files."[4] *See* '720 at Title, Abstract, 1:15-19, 2:15-28, 6:12-18, 6:28-32, 7:15-42, 7:55-8:3, 10:61-12:19, 12:20-13:34, 19:32-62 (Dkt. 60 ¶¶ 182, 204). '515 claim 16 recites a playback device configured to request and use a device-specific top level index file providing locations and bitrates for the alternative streams. '515 at 22:4-27 (Dkt. 60 ¶ 207).

The specification confirms that the device-specific top level index file improves ABS functionality by conserving server-side and device-side resources and ensuring that the device requests streams compatible with its computing capabilities. *See, e.g.*, '720 at 2:24-28, 6:39-43, 6:50-55, 9:63-10:17, 12:20-13:24 (Dkt. 60 ¶¶ 174-76, 183, 186). The '720 and '515 claims, in view of the specification, therefore are directed to patent eligible improvements to ABS systems. *See Finjan*, 879 F.3d at 1305; *Enfish*, 822 F.3d at 1339; *Universal Elecs., Inc. v. Roku, Inc.*, 2019 U.S. Dist. LEXIS 74623, at *19-21 (C.D. Cal. Mar. 5, 2019) (finding eligible a claim that "represents a more efficient, and thus improved, method of appliance control functionality").

Netflix mischaracterizes the '720 and '515 claims to suggest that they recite only indexing, without acknowledging the claims' context.[5] The claims do not recite only generic computer functions or database indexes; they recite an improved file (a *device-specific* top level index file), how to generate that file in response to a playback device request, and how to request and use that file. '720 claims 1-18, '515 claims 1-21. The top level index file is *not* an index of product identifiers and associated device capabilities, as Netflix contends—it is a device-specific file "describing each asset in the filtered list of assets." '720 at 20:15-35. Further, Netflix

---

[4] The claims do not recite "automatically" as in automating a task by using a computer. Thus, *Data Engine* does not inform the analysis here. Dkt. 61 at 9 (citing *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1013 (Fed. Cir. 2018)).

[5] Netflix's description of "the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

argues facts, asserting that "there [is] no new type of file," Dkt. 61 at 7-8, creating fact or claim construction disputes unsuitable for resolution under Rule 12(b)(6).

Netflix does not identify any Federal Circuit opinion holding that claims drawn to a particular type of file are abstract, and DivX knows of none. *Erie Indemnity* is not that case. There, the claims recited searching *any* database for *any* information and creating and using a generic database index. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1326-27 (Fed. Cir. 2017) (claiming "[a] method for searching a database of information"). The claims were not "focused on *how* usage of the XML tags alters the database in a way that leads to an improvement in the technology of computer databases." *Id.* at 1328. The claims discussed in *Glasswall*, *Symantec*, and *Datatrak* also were not drawn to a particular file (claiming "filtering" or "parsing" any electronic data, filtering generic "data files," and "data organization and retrieval from multiple data sources and data source types," respectively).[6] Netflix's auto parts store analogy is also drawn to a generic database index, and thus it, too, is not relevant to the claimed device-specific top level index file for ABS.[7]

## B.  Step 2: The FAC pleads facts demonstrating an inventive concept.

The FAC pleads facts demonstrating that the '720 and '515 claims recite an

---

[6] *Glasswall Sols., Ltd. v. Clearswift Ltd.*, 754 F. App'x 996 (Fed. Cir. 2018); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016); *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, 2015 U.S. Dist. LEXIS 151039, at *14 (N.D. Ohio Nov. 6, 2015).

[7] Netflix also incorrectly asserts that DivX's claims recite ABS as a "field of use." Dkt. 61 at 8 n.4. A "field of use" limitation merely recites an environment for the claim without any application. *See Parker v. Flook*, 437 U.S. 584, 596-97 (1978) (reciting "in a process comprising the catalytic chemical conversion of hydrocarbons" with no further detail). In contrast, DivX's claims recite how to perform ABS with new files and processes; they do not simply say "do this in ABS." *See Cellspin*, 927 F.3d at 1319 (distinguishing field of use limitations from claims reciting how to "use an environment—a computer, a mobile phone, etc.—to do significantly more than simply carry out an abstract idea").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

inventive concept beyond mere indexing: a device-specific top level index file that improves ABS by conserving resources and improving playback.[8] Dkt. 60 ¶¶ 168-76, 183, 186, 189-98, 205, 207. For example, '720 claim 1 and '515 claim 1 recite how to generate a device-specific top level index file in response to a playback device request including particularized device information, including a device capability(ies). *Id.* ¶¶ 177, 182-83, 204-05. Generating the device-specific file in response to a request conserves server- and device-side resources during ABS while making compatible streams available for improved playback. *Id.* ¶¶ 168-76, 183, 189-98, 205. '515 claim 16 recites how a playback device requests and uses the device-specific top level index file—specifically, a file identifying "locations and bitrates" for alternative streams that are "accessible to the playback device." *Id.* ¶ 207. This improves ABS playback because "[t]he playback device need not parse through a larger top level index file that contains streams that the device cannot or does not want to play back." *Id.*

In light of the FAC's well-pleaded facts, the Court "[can]not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood, routine, and conventional." *Aatrix*, 882 F.3d at 1129. Even setting aside DivX's well-pleaded facts, Netflix has not carried its Rule 12(b)(6) burden to show that the FAC *requires* a holding of ineligibility. *Ancora*, 908 F.3d at 1347.

For example, Netflix does not cite anything from the FAC or patents to establish that several claim elements or combinations were well-understood, including: (1) retrieving or identifying a device capability(ies) based on information that the playback device provides (a product identifier) ('720 claim 1, '515 claim 1);

---

[8] "[A]n analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two. . . . [U]nder step two of the Alice analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible." *BASCOM*, 827 F.3d at 1348.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

(2) filtering the list of assets using the device capability(ies) (*id.*); (3) the ordered steps[9] for generating a device-specific top level index file in response to a request (*id.*); or (4) a device-specific top level index file providing locations and bitrates for accessible alternative streams ('515 claims 1 and 16).[10]

Where Netflix engages with the claims, it disputes the FAC's well-pleaded facts.[11] For example, Netflix admits that DivX pleaded that the claims recite an improved, device-specific top level index file. Dkt. 61 at 10-11. But Netflix argues that DivX is wrong and that top level index files already existed, that "top-level index files were already used for ABS in the same way they are used in the '720 and '515 patents" and that "[s]uch routine, conventional activity cannot pass muster." *Id.* First, DivX does not claim to have invented top level index files; rather, it pleaded facts showing that it invented an *improved kind of* top level index file. Regardless, the Court cannot resolve these disputes in Netflix's favor under Rule 12. The FAC's facts show the opposite, and no amount of attorney argument can prove otherwise.[12]

---

[9] *See* Dkt. 60 ¶¶ 182, 185, 204 (explaining why steps occur in the order recited).

[10] Nor does Netflix consider whether the additional elements that each of the *other* claims recites were well-understood. *See* Dkt. 60 ¶¶ 184, 187, 206, 208. For example, '720 claim 2 recites "filtering the list of assets based upon at least one of a geographic location of the playback device, a language associated with the playback device, one or more user preferences, and one or more requirements of a content owner." *Id.* ¶ 184. And '515 claim 2 recites "the request for content from the playback device further comprises information regarding a web browser on the playback device being used to request the content." *Id.* ¶ 206. Netflix thus has not shown that the FAC *requires a holding of ineligibility* as to *all* claims of both patents.

[11] Throughout its brief, Netflix contends that DivX does not dispute many facts allegedly favorable to Netflix. DivX has disputed and disputes now Netflix's factual arguments regarding what was well-understood at the time of invention, as the FAC's well-pleaded facts demonstrate.

[12] Netflix also argues against the FAC's well-pleaded facts with case law, citing *Rovi* (Dkt. 61 at 11). First, *Rovi* is a summary judgment opinion. Second, case law outside the pleadings cannot establish that a particular concept is well-understood when the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

### III.  The '792 claims are patent eligible.

#### A.  Step 1: The '792 claims are directed to patent eligible improvements to multimedia files used in streaming.

The '792 claims are directed to a new multimedia file that improves a playback device's ability to navigate and play back the file's content. '792 at Abstract, 1:20-21, 1:38-40, 1:48-53 (Dkt. 60 ¶ 124). The new file includes an abridged index that references the location of a subset of the file's video frames. '792 claims 1-23 (Dkt. 60 ¶¶ 143-51). The claims are directed to more than "creating and using an index."

The '792 claims recite the new, dual-index multimedia file, how to package it, or how to use it to enable trick play functionality. *Id.* For example, claim 9 recites how an encoder packages the dual-index multimedia file by "including the abridged index, the at least one sequence of encoded video frames, and a full index so that the abridged index is located within the multimedia file prior to the series of encoded video frames, the first and second indexes enabling trick play functionality." *Id.* at 52:15-32 (Dkt. 60 ¶¶ 146-47). Claim 15 recites how a decoder uses the dual-index multimedia file to "locate a particular encoded video frame within the multimedia" and to play back "the sequence of encoded video frame starting from the located encoded video frame, the first and second indexes enabling trick play functionality." *Id.* at 52:54-53:3 (Dkt. 60 ¶¶ 149-50).

The specification confirms that the claimed inventions improve a device's ability to navigate and play back a multimedia file's content. Packaging a multimedia file with an abridged index in addition to a complete index streamlines processing associated with streaming video: "[a]ppropriate selection of the 'data' chunks referenced in the [abridged index] can enable rapid location of a specific video frame." *Id.* at 15:19-21; *see also id.* at 15:10-19. The dual-index multimedia file "can

---

FAC pleads otherwise. Finally, the *Rovi* claims directed to "bookmarking across devices" are not analogous to the '720 and '515 claims addressing particular files. *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 951 (N.D. Cal. 2015).

enable a device to start playing and performing other functions, such as fast forward, rewind and scene skipping, prior to the downloading of the [complete index]." *Id.* at 16:26-29; *see also id.* at 48:21-49:42 (explaining that the abridged index "can be used to skip frames either in a regular fashion (such as during fast forwarding or rewinding) or in an irregular fashion (such as when skipping between scenes or chapters)"); *see also* Dkt. 60 ¶¶ 128-29. The file history, too, confirms that the new, dual-index multimedia file is "particularly useful, e.g., for trick play applications." *Id.* ¶ 132 (citing file history excerpt). The '792 claims, in view of the specification, are directed to a new multimedia file that enables a playback device to perform efficient playback with fast-start and trick play functionality and are patent eligible. *See Finjan*, 879 F.3d at 1305; *Enfish*, 822 F.3d at 1339; *Broadcom Corp. v. Sony Corp.*, 2016 U.S. Dist. LEXIS 189457, at *12 (C.D. Cal. Oct. 5, 2016) (claims "directed to improving digital video decoding . . . are not directed to abstract ideas").

Netflix tries to dismiss the claimed multimedia file by contending that "there is no new type of 'file.'" Dkt. 61 at 13. That assertion is wrong. First, Netflix mischaracterizes the specification, which provides only that "[m]ultimedia files in accordance with embodiments of the present invention *can be structured to be compliant with*" the RIFF file format—it does *not* say that the claimed multimedia file was known. '792 at 5:33-38. Second, Netflix argues facts, creating a dispute that the Court must resolve in DivX's favor. At best, Netflix's contention creates a claim construction issue about the claimed file not suitable for resolution at this juncture.

Netflix also mischaracterizes the '792 claims, again comparing the claims to those reciting generic database indexes. But Netflix's comparison is conclusory and reductive: it states only that the '792 claims and generic database index claims "all associate a specific piece of data with one or more characteristics of that data." Dkt. 61 at 13. But on their face, the '792 claims recite more: a new, dual-index multimedia file, how to package that multimedia file, and how to use that multimedia file to enable trick play functionality. *Supra* at 3-4, 15-16. Again, Netflix identifies

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

no Federal Circuit opinion holding that claims limited to a particular type of computer file are abstract. Both *Erie* and *Datatrak*, *supra* at 12, consider only generic database indexes, or organizing and sorting *any* data, untethered to particular files, a particular context, or particular computing improvements like those recited in the '792 claims.

## B. Step 2: The FAC pleads facts demonstrating an inventive concept.

The FAC pleads facts demonstrating that the '792 claims contain an inventive concept beyond merely creating and using an index: a new, dual-index multimedia file that improves streaming systems by facilitating faster and more efficient navigation and playback.[13] Dkt. 60 ¶¶ 124-33, 144, 147, 150. Prior multimedia files did not contain a second, abridged index, and to provide the second index was counterintuitive. *Id.* ¶¶ 132-41. With the invention, the playback device can request the smaller index and navigate it more easily, improving performance of trick play functionality and fast-start playback. *Id.* ¶¶ 144, 147, 150. Packaging the file so that the abridged index precedes the video content makes it even easier for a playback device to locate the abridged index to navigate the file's content. *Id.* ¶ 147. The FAC thus addresses the Court's concern on this point, Dkt. 59 at 19, and these facts preclude dismissal. *Aatrix*, 882 F.3d at 1129.

In addition, Netflix has not established that undisputed facts require dismissal. *Ancora*, 908 F.3d at 1347. For example, Netflix does not cite anything from the FAC or patent to establish that several claim elements or combinations were well-understood, including: (1) the dual-index multimedia file (all claims); (2) encoding and packaging a multimedia file with a second, abridged index referencing a subset of encoded video frames (all claims); (3) packaging the file so that the second, abridged index precedes the encoded video frames (at least claims 1 and 9); or (4) using a second, abridged index to improve trick play functionality (all claims). *Cf.*

---

[13] The '792 claims do not recite "streaming video" as a "field of use" limitation, as Netflix asserts. Dkt. 61 at 14. They recite a multimedia file with a specific structure.

Dkt. 61 at 14 (asserting, without support from either the FAC or the patent, that trick play functionality "was a well-understood, routine, and conventional activity").[14]

When it does attempt to address particular claim elements, Netflix offers attorney argument as fact. In addition to arguing that trick play functionality was well-understood, without support,[15] it asserts "[n]or can the placement of the abridged index before the encoded video frames provide an inventive step," *id.* at 15, with no support and in conflict with the FAC. *See* Dkt. 60 ¶¶ 128-42, 147. Netflix further asserts that such placement is "a well-understood design choice," again without citation. Dkt. 61 at 15. The Court cannot resolve these disputes under Rule 12(b)(6), and for Netflix to argue otherwise demonstrates that it misunderstands its burden. Netflix asks the Court to dismiss DivX's complaint without undisputed facts to justify the holding, and its motion should be denied.

## IV. The '673 claims are patent eligible.

### A. Step 1: The '673 claims are directed to patent eligible improvements to encrypted data structures used in streaming.

The '673 claims are directed to a new structure of encrypted video data, including partial encryption of the video stream and frame decryption information synchronized with the encrypted video frames, that improves the security and performance of video streaming. '673 at FIG. 9, 9:23-10:17 (Dkt. 60 ¶ 84). Thus, the claims are not broadly directed to mere "encrypting and decrypting."

For example, '673 claim 1 recites how to produce the improved encrypted data structure, including generating, storing, and using a frame encryption key; encrypting

---

[14] Nor does Netflix consider whether the additional elements that each of the *other* claims recites were well-understood. *See* Dkt. 60 ¶¶ 145, 148, 151. For example, claim 22 recites "the processor is configured to locate and playback the sequence of encoded video frame without receiving the complete index." *Id.* ¶ 151.

[15] Trick play functionality, in this context of digital video streaming (as opposed to analog fast forward/rewind functions) was not well-understood. *See* Dkt. 60 ¶¶ 144, 147, 150; *supra* at 15-16. Netflix's arguments to the contrary are factual disputes.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

selected frames;[16] generating frame decryption information necessary to decrypt the encrypted frames; and assembling the video stream so that the "frame decryption information is synchronized with said set of encrypted frames."[17] *Id.* at 11:39-60. Claim 14 recites how to decrypt the improved data structure that "contain[s] encrypted frames and unencrypted frames," and in which "frame decryption information is synchronized with said set of encrypted frames . . . and distinguishes said encrypted frames from said unencrypted frames." *Id.* at 12:47-64.

The specification confirms that the claimed encrypted data structure improves streaming. Decoding a digital video stream on a playback device is "very computationally intensive." *Id.* at 1:63-2:9. Decryption adds to the computational overhead and associated expense. *Id.* at 3:34-51. "As a consequence, adequate processing power needs to be provided to ensure that even the largest frames expected to be received may be successfully decrypted and decoded." *Id.* at 3:42-45. The '673 claims address the need "for an adequately secure technique for bounding the resources consumed during decryption thereby reducing peak processing requirements." *Id.* at 3:49-51. The new data structure, including frame decryption information synchronized with the encrypted frames, reduces the computing resources required for encoding, encrypting, decrypting, and decoding the data. *Id.* at 3:55-4:42, 5:25-32, 6:39-10:17, FIGS. 6, 7, 8, 9, 10 (describing new, claimed processes for creating, decrypting, and decoding new synchronized structure). The '673 claims, in view of the specification, therefore are directed to an improved, protected, synchronized data structure, and are patent eligible. *See Ancora*, 908 F.3d

---

[16] Whether each individual claim allows for full-frame or requires partial-frame encryption does not change the fact that the claim as a whole is directed to a patent eligible data structure that improves streaming security and performance. Dkt. 60 ¶¶ 84-95, 99, 102, 105, 108.

[17] Synchronization in the '673 claims refers to a particular data structure, unlike the generic synchronization function in *TrackTime*, which Netflix cites. Dkt. 61 at 21.

DIVX'S RESPONSE TO MOTION TO DISMISS

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

at 1348-49 (finding claims directed to improving program security eligible because they improved computer functionality through a specific technique).

Netflix mischaracterizes the '673 claims. It ignores the context that the claim language provides, assumes that encryption and decryption are *per se* abstract, and offers circular reasoning to defend its positions. Dkt. 61 at 16 (asserting that "the asserted claims recite an abstract idea because they are directed to that abstract concept"). Claims reciting an encryption or decryption step are not *per se* directed to abstract ideas. *See, e.g.*, *Ancora*, 908 F.3d at 1348 (upholding computer security invention involving encryption). The '673 claims recite more than encryption and decryption: as discussed, they recite an improved data structure and how to use it.

Netflix does not cite any Federal Circuit opinion holding that claims limited to a particular encrypted data structure are abstract. *Personalized Media* and *Digital Media Technologies* addressed claims that recited only encrypting and decrypting, untethered to a specific data structure. *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 332-34 (D. Del. 2015); *Digital Media Techs., Inc. v. Amazon.com, Inc.*, 2017 U.S. Dist. LEXIS 190934, at *5-6, 13 (N.D. Fla. July 3, 2017). *Bridge & Post* addressed a claim relating to targeted advertising that recited only functional language, again untethered to a specific file or structure. *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 319 F. Supp. 3d 818, 822-23 (E.D. Va. 2018).

Further, Netflix improperly imports its own facts into the record and misrepresents the specification, suggesting that it describes the claimed data structure as "familiar to those skilled in the art." Dkt. 61 at 18. This is incorrect, and a product of selectively quoting from the specification while ignoring context. The specification actually provides that certain components of an *unencrypted* video stream "are familiar to those skilled in the art,"[18] juxtaposing that unencrypted

---

[18] The complete quotation reads: "The succeeding portions of first frame **904** consist of video object plane **916** and macroblock **918**, the contents of which are familiar to those skilled in the art." '673 at 9:15-18.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

structure against the invention. It then describes that the inventive structure includes decryption information synchronized with encrypted frames, which Netflix ignores. '673 at 9:40-10:17, FIG. 9. This example highlights the reason that Rule 12(b)(6) does not allow adjudication of fact-intensive inquiries where the parties dispute many issues without a developed record, including expert testimony instead of bare attorney argument. Netflix's argument depends on its interpretation of factual issues that cannot be resolved in its favor under Rule 12(b)(6).

## B.   Step 2: The FAC pleads facts demonstrating an inventive concept.

The FAC pleads facts demonstrating that the '673 claims recite an inventive concept beyond mere encryption and decryption: a partially encrypted, synchronized video data structure that improves computer systems by making streaming faster and more efficient while providing content security. Dkt. 60 ¶¶ 84-95, 99, 102, 105, 108. "Prior video data structures did not include frame decryption information synchronized in the data with encrypted frames in a video stream that includes both encrypted and unencrypted frames." *Id.* ¶ 94. The inventive structure "requires substantially less peak processing power . . . during the decryption process than would otherwise be required using standard encryption techniques." *Id.* (citing '673 at 10:18-34, FIG. 10); *see also id.* ¶ 95. Synchronization "mak[es] it easier to decrypt encrypted frames because the frame decryption information is synchronized with the encrypted frames in the stream, which also reduces decryption errors where some frames are at least partially encrypted and at least some frames are not encrypted." *Id.* ¶ 99; *see also id.* ¶¶ 102 (claim 14), 105 (claim 21), 108 (claim 29). These facts preclude dismissal. *Aatrix*, 882 F.3d at 1129.

Further, Netflix has not identified undisputed facts that require dismissal. *Ancora*, 908 F.3d at 1347. For example, Netflix does not cite anything from the patent to establish that at least these claim elements were well-understood: (1) a video stream structured to synchronize the frame decryption information with the encrypted frames; (2) the claimed combination of steps for producing the synchronized

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

structure; or (3) the claimed combination of steps for decrypting the synchronized structure.[19] Netflix again improperly relies on "facts" from case law and DivX's purported failures to dispute Netflix's arguments, instead of identifying proof of its affirmative defense from DivX's pleading. And rather than accept DivX's factual allegations as true, Netflix argues against them. *See* Dkt. 61 at 21 (arguing, without support, what is "possible" or "makes sense"). Netflix's unsupported arguments, at most, create disputed issues of fact.[20]

## V.   The '588 claims are patent eligible.

### A.   Step 1: The '588 claims are directed to security and performance improvements for ABS computer systems.

The '588 claims are directed to methods and systems for performing secure ABS using alternative streams assembled using partial-frame encryption and common encryption keys, which improves the performance of the ABS computer system while maintaining content security. Dkt. 60 ¶¶ 224-28, 231-36. The claims relate to a digital video file structure—namely, a stream with partially encrypted video frames encrypted using a common set of keys. That new structure provides for improved secure ABS, not merely "decryption using a common key."

The '588 claims recite particular kinds of files, encryption/decryption schemes, and ABS techniques. The specific files include a "top level index file," a "container index," and a "stream of protected video within an associated container file." *See* '588 at 27:30-63 (Dkt. 60 ¶¶ 231-33), 28:61-29:23 (Dkt. 60 ¶¶ 234-36). The specific

---

[19] Nor does Netflix consider whether the additional elements that each of the *other* claims recites were well-understood. *See* Dkt. 60 ¶¶ 100, 103, 106, 109. For example, claim 2 recites "said synchronized frame decryption stream includes references to frame encryption keys in the key table." *Id.* ¶ 100.

[20] Netflix also improperly tries to incorporate sections of its prior motion by reference. *See, e.g.*, Dkt. 61 at 19. But "[u]nder Federal Rule of Civil Procedure 10(c), parties may [not] incorporate by reference . . . briefs supporting or opposing a motion or any other filing." *Steele v. Harrington*, 2013 U.S. Dist. LEXIS 139707, at *4 (C.D. Cal. Sept. 25, 2013).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

encryption structures and decryption techniques include "partially encrypted video frames that are encrypted using a set of common keys," "locating encryption information that identifies encrypted portions of frames of video," and "decrypting each encrypted portion of the frames of video identified within the located encryption information using the set of common keys." *Id.*

The specification confirms that the claimed technical solutions improve ABS systems while maintaining content security. Before the '588 invention, each video stream used different cryptographic information for authorizing secure playback, which increased requirements for computing resources when switching among ABS streams. *See* '588 at 8:37-61, 9:65-10:31 (Dkt. 60 ¶ 225). The claimed inventions reduce the computing resources required to perform secure ABS by using top level index files, container index files, and video stream container files employing partial-frame encryption and common encryption keys. *Id.* (Dkt. 60 ¶¶ 226-28, 231-32, 234-35); *supra* at 6 (inventive combination reduces the resources needed to process cryptographic information during ABS). The '588 claims, in view of the specification, therefore are directed to improvements to secure ABS systems—not mere "decryption using a common key"—and are patent eligible. *See Ancora*, 908 F.3d at 1348 (upholding computer security invention at step one as directed "to a computer-functionality improvement"). Netflix does not identify any case suggesting that decryption and streaming of video files using particular computer techniques constitutes an abstract idea representing a "building block[] of human ingenuity." *Alice*, 573 U.S. at 217.

Netflix again mischaracterizes the claims, again suggests that decryption is *per se* abstract, and again omits many claim elements (and combinations) from its analysis. Netflix's unsupported generalization of multiple claim elements as mere "decryption" and others as mere "ABS" (Dkt. 61 at 22), and its conjecture about the claims' alleged "focus," does not excuse consideration of the claims' "character as a whole," required at step one. *Enfish*, 822 F.3d at 1335. Rather than examine all

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

elements and combinations of the '588 claims, Netflix disputes whether individual elements were "new." Dkt. 61 at 23-24. Patent eligibility at step one, however, is not a novelty analysis, and fact disputes about the state of the art preclude dismissal.[21]

### B.   Step 2: The FAC pleads facts demonstrating an inventive concept.

The FAC pleads facts establishing that the '588 claims recite inventive concepts beyond decryption using a common key: they recite a new index file structure and a new structure of encrypted data, including partially encrypted video frames encrypted using a set of common keys, that reduce the memory and other resources consumed by cryptographic information during ABS. Dkt. 60 ¶¶ 224-28, 232, 235. In light of the FAC's well-pleaded facts, the Court "[can]not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood." *Aatrix*, 882 F.3d at 1129.

Netflix also has not identified undisputed facts that require dismissal. *Ancora*, 908 F.3d at 1347. For example, Netflix does not cite anything from the patent to establish that "locating encryption information that identifies encrypted portions of frames of video within the requested portions of the selected stream of protected video" and "decrypting each encrypted portion of the frames of video identified within the located encryption information using the set of common keys" were well-understood or even recognized in the art. '588 at 27:30-63, 28:61-29:23. It also cites nothing to establish that the claimed combination—ABS using partially encrypted alternative streams encrypted with a common key—was well-understood.[22] *Id.*

Where Netflix does cite the '588 patent, it mischaracterizes it. Netflix contends, for example, that "the 'container index' was not a new structure or file either," but

---

[21] Determination of claim scope depends on subsidiary factual issues, including the state of the art. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838, 841 (2015).

[22] Nor does Netflix consider whether the additional elements that each of the *other* claims recite were well-understood. *See* Dkt. 60 ¶¶ 233, 236. For example, claim 3 recites "wherein the located encryption information comprises a reference to the start of an encrypted block of data." *Id.* ¶ 233.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

relies on the '588 specification's description of "container *files*," a separate claim element. Dkt. 61 at 24 (citing '588 at 2:27-31, 2:35-37). The Background of the '588 patent does not mention a "container index," Netflix does not explain why the Court can or should conclude, as a matter of fact, that a "container index" was well-understood from the specification's general discussion of a "container file," and, regardless, Netflix does not address the actual claim language reciting how the ABS system uses the container index to request video for streaming.[23]

Yet again, Netflix's disputes of the FAC's well-pleaded facts demonstrate that Netflix's affirmative defense is not amenable to Rule 12(b)(6). Only *undisputed* facts can justify dismissal. *Ancora*, 908 F.3d at 1347. Yet Netflix argues against the FAC, improperly arguing that factual allegations are "not plausible" and asking the Court to infer contrary conclusions, like "the top level index in the claims does the same thing the specification admits was routine and conventional" and "[t]he streaming files have no new structure to their encrypted data, either." Dkt. 61 at 23-25. Such factual disputes and inferences, which Netflix relies on throughout its motion for every patent, cannot be resolved in Netflix's favor. Its motion should be denied.

## CONCLUSION

DivX's FAC contains detailed, specific factual allegations that address the Court's previous order and further expand upon the inventive concepts recited in the patent claims and their technical improvements to computer systems. These allegations must be accepted as true, and they show why the claimed inventions are eligible under *Alice*. Netflix's attempts to dispute these allegations or to mischaracterize the scope and nature of the patent claims cannot justify dismissal under Rule 12(b)(6). Its motion should be denied in its entirety.

---

[23] Netflix also cites the '673 patent, Dkt. 61 at 24, but finding an element in a prior patent does not prove that it was well-understood. *Berkheimer*, 881 F.3d at 1369.

DATED: September 30, 2019      Respectfully submitted,

**ROBINS KAPLAN LLP**

By: _s/ Aaron R. Fahrenkrog_
    Aaron R. Fahrenkrog

Roman M. Silberfeld, SBN 62783
RSilberfeld@RobinsKaplan.com
Daniel L. Allender, SBN 264651
DAllender@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800

Christopher A. Seidl (_pro hac vice_)
CSeidl@RobinsKaplan.com
Aaron R. Fahrenkrog (_pro hac vice_)
AFahrenkrog@RobinsKaplan.com
Bryan J. Mechell (_pro hac vice_)
BMechell@RobinsKaplan.com
William E. Manske (_pro hac vice_)
WManske@RobinsKaplan.com
Shui Li (_pro hac vice_)
SLi@RobinsKaplan.com
Emily J. Tremblay (_pro hac vice_)
ETremblay@RobinsKaplan.com
Mary Pheng (_pro hac vice_)
MPheng@RobinsKaplan.com
Rajin Singh Olson (_pro hac vice_)
ROlson@RobinsKaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181

Christine Yun Sauer, SBN 314307

Robins Kaplan LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CYunSauer@RobinsKaplan.com
**ROBINS KAPLAN LLP**
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

David M. Stein, SBN 198256
dstein@ggtriallaw.com
**Greenberg Gross LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

**ATTORNEYS FOR PLAINTIFF
DIVX, LLC**

Case No. 2:19-cv-1602 (PSG)(JCx)
DIVX'S RESPONSE TO MOTION TO DISMISS

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES