QUINN EMANUEL URQUHART & SULLIVAN, LLP
David Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Andrew Holmes (Bar No. 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Biddinger (Bar No. 224604)
brianbiddinger@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Defendant
Netflix, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>NETFLIX, INC., a Delaware corporation,<br><br>    Defendant. | Case No. 2:19-cv-1602-PSG-DFM<br><br>**DEFENDANT NETFLIX, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>Date: May 18, 2020<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Room: 6A<br><br>Complaint Filed: March 5, 2019<br>First Amended Filed: Aug. 21, 2019 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. A STAY SHOULD BE GRANTED IN THIS CASE ........................................ 2

    A. The Stage of Litigation Favors a Stay........................................................ 2

    B. Resolution of the IPRs Will Simplify the District Court Case ............... 4

    C. Speculative Prejudice Does Not Weigh Against a Stay ......................... 7

III. DIVX'S "LEGAL STANDARD" IS WRONG .................................................. 9

    A. *Landis* Is Inapplicable ................................................................................ 9

    B. There is a Liberal Policy in Favor of Granting a Stay .......................... 10

    C. The Legislative History Does Not Weigh Against a Stay .................... 12

IV. CONCLUSION ............................................................................................... 12

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*AIIRAM LLC v. KB Home*,
  No. 19-cv-00269, 2019 U.S. Dist. LEXIS 136744
  (N.D. Cal. Aug. 12, 2019) .................................................................................. 10

*Arris Enters. LLC v. Sony Corp.*,
  17-cv-02669, 2017 U.S. Dist. LEXIS 121035 (N.D. Cal. Aug. 1, 2017) ......... 9

*ASCII Corp. v. STD Entertainment USA, Inc.*,
  844 F. Supp. 1378 (N.D. Cal. 1994) .................................................................. 11

*Asetek Holdings, Inc. v. Cooler Master Co.*,
  No. 13-CV-00457, 2014 U.S. Dist. LEXIS 47134
  (N.D. Cal. Apr. 3, 2014) ....................................................................................... 3

*Big Baboon, Inc. v. Dell, Inc.*,
  No. 09-cv-01198, 2011 U.S. Dist. LEXIS 155536
  (C.D. Cal. Feb. 8, 2011) ........................................................................................ 2

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
  No. CV 13-00504 ACK-RLP, 2015 WL 12776595
  (D. Haw. Feb. 17, 2015) ........................................................................................ 8

*Cannarella v. Volvo Car United States LLC*,
  No. 16-cv-6195, 2016 U.S. Dist. LEXIS 192449
  (C.D. Cal. Dec. 12, 2016) ............................................................................. 10, 12

*Carl Zeiss A.G. v. Nikon Corp.*,
  No. 2:17-cv-07083, 2018 U.S. Dist. LEXIS 181120
  (C.D. Cal. Oct. 16, 2018) ....................................................................................... 4

*Celgene Corp. v. Peter*,
  931 F.3d 1342 (Fed. Cir. 2019) ............................................................................ 9

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-cv-618, 2016 U.S. Dist. LEXIS 188613
  (E.D. Tex. Dec. 9, 2016) ........................................................................................ 4

*DMF, Inc. v. AMP Plus, Inc.*,
  No. 2:18-cv-07090, 2019 U.S. Dist. LEXIS 118464
  (C.D. Cal. July 12, 2019) ...................................................................................... 5

*Drink Tanks Corp. v. Growlerwerks, Inc.*,
  No. 3:16-cv-410, 2016 U.S. Dist. LEXIS 91964
  (D. Or. July 15, 2016) ............................................................................................ 5

*Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*,
  IPR2012-00001, Paper No. 26 (PTAB Mar. 5, 2013) ...................................... 8

*Henny Penny Corp. v. Frymaster LLC*,
  938 F.3d 1324 (Fed. Cir. 2019)..................................................................9

*Hologram USA, Inc. v. Ventana, 3D, LLC*,
  No. 14-cv-09489, 2015 U.S. Dist. LEXIS 184440
  (C.D. Cal. Dec. 7, 2015)..............................................................................3

*Kahn v. General Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)................................................................11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ..................................................................................11

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ..................................................................................10

*Limestone v. Micron Technology*,
  No. 15-cv-0278, 2016 U.S. Dist. LEXIS 90742
  (C.D. Cal. Jan. 12, 2016).............................................................. 2, 5, 7, 8

*Lodge Manufacturing v. Gibson Overseas Inc.*,
  No. 18-cv-8085 PSG (GJSx) (Sept. 24, 2019).......................................2, 8

*Pi-Net Int'l, Inc. v. Hertz. Corp.*,
  No. CVC 12-10012 PSG JEMX, 2013 WL 7158011
  (C.D. Cal, June 5, 2013)...............................................................2, 3, 4, 10

*Pi-Net, Int'l Inc. v. Focus Bus. Bank*,
  No. 12-cv-4958, 2013 U.S. Dist. LEXIS,
  (N.D. Cal. Aug. 16, 2013) ..........................................................................7

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
  No. SA16-cv-00300, 2016 U.S. Dist. LEXIS 186795
  (C.D. Cal. Nov. 17, 2016) ..........................................................................5

*Polymer Tech. Sys. v. Jant Pharmacal Corp.*,
  No. 15-cv-02585, 2015 U.S. Dist. LEXIS 179423
  (C.D. Cal. Aug. 20, 2015) ..........................................................................9

*Roche Molecular Sys. v. Cepheid*,
  No. 14-cv-3228, 2015 U.S. Dist. LEXIS 2109 (N.D. Cal. Jan. 7, 2015)..........6

*Rovi Guides, Inc. v. Comcast Corp.*,
  No. 19-cv-00275, 2019 U.S. Dist. LEXIS 216706
  (C.D. Cal. Aug. 19, 2019) ........................................................................10

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
  No. SACV 12-21-JST (JPRx), 2012 U.S. Dist. LEXIS 186322
  (C.D. Cal. Dec. 19, 2012)....................................................................11, 12

*Slip Track Sys., Inc. v. Metal Lite, Inc.*,
  159 F.3d 1337 (Fed. Cir. 1998)..................................................................9

*Star Envirotech v. Redline Detection, LLC*,
  No. SACV 12-01861 JGB (MLGx), 2013 U.S. Dist. LEXIS 58866
  (C.D. Cal. Apr. 3, 2013) .................................................................................. 11

*TeleSign Corp. v. Twilio, Inc.*,
  No. 15-cv-3240 PSG (SSX), 2017 U.S. Dist. LEXIS 229022
  (C.D. Cal. May 16, 2017) ................................................................................. 2

*Tire Hanger Corp. v. My Car Guy Concierge Servs.*,
  No. 5:14-cv-00549, U.S. Dist. LEXIS 24256 (C.D. Cal. Feb. 27, 2015) ....... 11

*Uniloc 2017 LLC v. Microsoft Corp.*,
  No. 18-cv-02053, 2019 U.S. Dist. LEXIS 221950
  (C.D. Cal. Aug. 9, 2019) .................................................................................. 10

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  943 F. Supp. 2d 1028 (C.D. Cal. 2013) ................................................... passim

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) ......................................................................... 2

*Wonderland Nursery Goods Co., Ltd. v. Baby Trend, Inc.*,
  No. 14-cv-001153, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) ........... 3, 6, 8

**Statutes**

35 U.S.C. § 315(a) ................................................................................................ 12

35 U.S.C. § 315(b) ................................................................................................ 12

**Other Authorities**

77 F. Reg. 48680-01 (Aug. 14, 2012) ..................................................................... 1

## I.  INTRODUCTION

Nothing in DivX's Opposition ("Opp.") warrants denying Netflix's request for a stay pending the outcome of Netflix's IPRs.  Netflix's Motion shows that, under the proper three-factor test, a stay should be granted, and DivX does not rebut Netflix's analysis.  Instead, DivX attempts to distract from this inevitable conclusion by contriving a different test while citing inapplicable cases and standards.  DivX also complains about the inherent nature of stays and the IPR processes, but Congress intended for IPRs "to create a timely, cost-effective alternative to litigation" and set forth "a more efficient and streamlined patent system that [would] improve patent quality and limit unnecessary and counterproductive litigation costs."  77 F. Reg. 48680-01 (Aug. 14, 2012).  Stays are extremely common, and DivX's critiques of the IPR process itself has no bearing on deciding whether to stay this case.

Further, a stay would avoid the need for costly and unnecessary litigation. DivX does not dispute that the vast majority of the work in this case lies ahead: Depositions, claim construction, and expert discovery have all yet to commence; dispositive motions are still many months out; and trial is set for a year from now. And the COVID-19 pandemic has substantially hindered the ability to collect and review source code and documents, which is critical discovery for both sides to meaningfully proceed with immediate next steps in the case.

DivX will not be prejudiced by a stay as the parties are not competitors.  The Opposition offers only vague and conclusory speculation of possible prejudice linked to unidentified, potential licensees without identifying any actual prejudice that may result from a stay.  Even if those arguments bore any merit—and they do not—DivX fails to show why money damages would be insufficient compensation for its entirely hypothetical commercial harm.  Accordingly, Netflix requests that this Court stay this litigation until the IPR proceedings are resolved.

## II. A STAY SHOULD BE GRANTED IN THIS CASE

### A. The Stage of Litigation Favors a Stay

DivX does not—and cannot—rebut any of the cases or facts cited by Netflix that show that the "stage of the litigation" factor weighs in favor of a stay. As explained in Netflix's Motion (Mot. at 6-8), discovery as of the date the Motion was filed was and still is in its early stages.[1] *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) ("When cases are in the initial stages of litigation and there has been little or no discovery, policy favors granting a motion to stay pending IPR."); *see also Limestone v. Micron Tech.*, No. 15-cv-0278, 2016 U.S. Dist. LEXIS 90742, at *2 (C.D. Cal. Jan. 12, 2016) (that a case was still "in [its] infancy" favored stay); *Big Baboon, Inc. v. Dell, Inc.*, No. 09-cv-01198, 2011 U.S. Dist. LEXIS 155536, at *12-13 (C.D. Cal. Feb. 8, 2011) (stay appropriate during discovery when no claim construction had occurred and no trial date was set).

Rather than address the "stage of the litigation," DivX instead argues that "efficiency does not weigh in favor of a stay." Opp. at 12. But DivX does not deny that the vast majority of the work required to try this case has yet to happen (Opp. at 13-14), which weighs in favor of a stay. *Pi-Net Int'l, Inc. v. Hertz. Corp.*, No. CVC 12-10012 PSG JEMX, 2013 WL 7158011, at *2 (C.D. Cal, June 5, 2013) (granting stay where "there [was] more work ahead of the parties and the Court than behind the parties and the Court."). Instead, DivX incorrectly contends that a stay will "derail" any efforts to streamline the district court case to conserve resources. Opp. at 1, 13.

---

[1] "'[D]istrict courts have adopted the date of the filing of the motion to stay' as the 'proper time to measure the stage of litigation.'" *Lodge Mfg. v. Gibson Overseas Inc.*, No. 18-cv-8085 PSG (GJSx) (Sept. 24, 2019) (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) (collecting cases)); *TeleSign Corp. v. Twilio, Inc.*, No. 15-cv-3240 PSG (SSX), 2017 U.S. Dist. LEXIS 229022, at *8 (C.D. Cal. May 16, 2017) (same). As such, the Court should disregard DivX's superfluous discussion about developments that have occurred after March 13 or references to future events. *See* Opp. at 14.

The purpose of staying the case is to allow the IPRs to proceed, which will streamline the case should it proceed thereafter. Indeed, staying the case pending the IPRs will avoid wasting party and judicial resource on issues that the IPRs may resolve, such as the validity of the asserted claims. Any ***additional*** efforts to conserve resources in the district court can still be resumed after a stay following the conclusion of the IPR proceedings. Thus, DivX's argument that "Netflix's invalidity challenges to DivX's patents will resolve in this case, under the established schedule, well before they resolve in IPR" (Opp. at 3) misses the point. *See Wonderland Nursery Co. v. Baby Trend, Inc.*, No. 14-cv-01153, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (quoting *Universal Elecs., Inc.*, 943 F. Supp. 2d at 1031) ("The Court's expenditure of resources is an important factor in evaluating the stage of the proceedings."). In order to "resolve" the parties' disputes regarding invalidity, the Court will have to invest substantial time to construe the claims, decide motions for summary judgment and *Daubert* motions, and try this case, all without the "benefit [of] the expertise of the [PTAB] with regard to assessing the prior art" and the scope of the challenged claims. *See Pi-Net*, 2013 WL 7158011, at *3.

DivX also argues that "many courts deny stays where, as here, 'a trial date has been set.'" Opp. at 12. But the cases cited by DivX do not support its position and are distinguishable. For example, in *Universal Elecs.*, the Court did not discuss the trial date being set as the basis to deny a stay but instead focused on the fact that the entire claim construction process had concluded. *Universal Elecs.*, 943 F. Supp. 2d at 1031-32. Here, the claim construction process has not even begun. Similarly, when the stay was denied in *Asetek*, claim construction was complete, fact discovery was nearly complete, and the parties were direct competitors with allegations of undercutting prices. *Asetek Holdings, Inc. v. Cooler Master Co.*, No. 13-CV-00457, 2014 U.S. Dist. LEXIS 47134, at *13, 17-19 (N.D. Cal. Apr. 3, 2014). Finally, in *Hologram USA*, the IPR would not even be instituted until after ***the trial*** was over. *Hologram USA, Inc. v. Ventana, 3D, LLC*, No. 14-cv-09489, 2015 U.S. Dist. LEXIS

184440, at *5 (C.D. Cal. Dec. 7, 2015). Here, one IPR has already been instituted, and the others will have decisions by October at the latest, while trial is scheduled for the end of April 2021. Although a trial date has been set, it is not for a year, and that is just a portion of one factor to consider—it is not dispositive.

DivX also attempts to confuse the early stage of this litigation with the date of when the litigation could potentially conclude. The former controls. DivX alleges that "courts deny requests for stays where trial is set to occur before a final decision at the PTAB." Opp. at 12. The cases cited by DivX, however, do not support this position either as "significant" progression had already taken place in those cases, and the stay motions were filed right before trial. *See Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-cv-618, 2016 U.S. Dist. LEXIS 188613, at *18 (E.D. Tex. Dec. 9, 2016) (motion for a stay filed just one month before trial); *Carl Zeiss A.G. v. Nikon Corp.*, No. 2:17-cv-07083, 2018 U.S. Dist. LEXIS 181120, at *6 (C.D. Cal. Oct. 16, 2018) (only remaining matters were jury instructions and trial). Here, trial is not for another year, and the case has not progressed nearly as far along as in DivX's cited cases. This weighs in favor of a stay. *See Pi-Net*, 2013 WL 7158011, at *3.

Further, DivX's attempt to use the current COVID-19 pandemic as a reason for ***proceeding*** with the case on the current schedule is perplexing. Opp. at 14-15. Netflix has repeatedly asked DivX to agree to move case deadlines in light of the current shelter-in-place orders in California that have been effective since mid-March. Holmes Decl. ¶ 3, Ex. A. Netflix has explained to DivX on multiple occasions that even its own employees, experts, and counsel cannot access its premises or source code, let alone find a safe, secure, and legal way for DivX's counsel and experts to do so. Holmes Decl. ¶ 4, Ex. B at 4-5. If anything, that the COVID-19 pandemic has considerably impeded the parties' ability to proceed strongly favors a stay.

### B.   Resolution of the IPRs Will Simplify the District Court Case

DivX acknowledges that more than two-thirds of the claims still asserted in this case may be eliminated completely as a result of the IPR proceedings, and that the

average institution rate at the PTAB for IPRs is 65.5%. Opp. at 1, 3.

But DivX contends a stay is not warranted because the IPRs do not cover all of the asserted claims. Opp. at 3, 15. However, "it is well-established that the IPR proceedings need not resolve every single asserted claim." *Limestone*, 2016 U.S. Dist. LEXIS 90742, at *13 (internal citations omitted) (finding simplification where less than half of the asserted claims were subject to IPRs). As in *Limestone*, here, DivX "conflates simplification of the issues with total resolution of the case, which is not a factor considered by the court when addressing a motion to stay." *Id.* at *14.

DivX also argues a stay should be denied because not all of the IPR petitions are currently instituted. Opp. at 15. Yet DivX fails to rebut any of the cases cited by Netflix showing that "courts often stay proceedings **before** the PTAB determines whether to institute *inter partes* review given a relatively short delay until those decisions are issued, yet a considerable potential to save judicial and party resources during that interim period" (Mot. at 5-6) and that "[e]ven when IPR petitions have not yet been instituted by the PTAB, courts in this District have adopted the majority position that the simplification factor may still weigh in favor of a stay." Mot. at 9 (internal quotation omitted). Moreover, in each case DivX relies on, none of the IPR proceedings had been instituted at the time the stay was requested. *See DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090, 2019 U.S. Dist. LEXIS 118464, at *1-2 (C.D. Cal. July 12, 2019) ("[T]he PTAB has not yet decided whether to institute a proceeding . . . ."); *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SA16-cv-00300, 2016 U.S. Dist. LEXIS 186795, at *3 (C.D. Cal. Nov. 17, 2016) (same); *Drink Tanks Corp. v. Growlerwerks, Inc.*, No. 3:16-cv-410, 2016 U.S. Dist. LEXIS 91964, at *10 (D. Or. July 15, 2016) (same). That is not true here. The first IPR was instituted on February 10, 2020, and we will soon learn if others will be instituted too.

Plus, "courts routinely grant stays based on the filing of an IPR petition because the high probability that the request will be granted and potential benefits of IPR outweigh the relatively modest delay resulting from the stay if the petition for IPR is

denied." *Roche Molecular Sys. v. Cepheid*, No. 14-cv-3228, 2015 U.S. Dist. LEXIS 2109, at *8 (N.D. Cal. Jan. 7, 2015) (internal citations omitted)). Indeed, DivX concedes that Netflix's remaining petitions will receive institution decisions by this fall. Opp. at 1. This delay of a few months is outweighed by the strong likelihood that the IPRs will significantly simplify the district court case. Seven of eight asserted patents and over two-thirds of all asserted claims have been challenged in the IPRs. Over half of the asserted patents could be out of the district court case completely. Therefore, as stated in *Universal Elecs.*, "[i]f the PTO grants *inter partes* review, the issues would likely be simplified, either through invalidation of claims or by narrowing Defendant's defenses through estoppel. This factor weighs in favor of a stay." 943 F. Supp. 2d at 1033. On the other hand, refusing a stay "incurs the risk that developments in the IPR proceedings . . . will necessitate reconsideration of the Court's claim construction order" after the claims have already been construed. *Wonderland Nursery Goods Co.*, 2015 WL 1809309, at *3. Notably, DivX does not rebut any cases cited by Netflix showing that "the risk of delay . . . is minimal relative to the risk of unnecessary expenditure of resources." *Id.*; Mot. at 8-10.

Instead, DivX argues that, if a stay is granted, "the parties and Court will then need to sort out the effects of the PTAB's decisions, establish a new case schedule, and take additional discovery to address the time that elapses during a stay." But this would be the case for any stay pending an IPR proceeding, and the amount of effort it would take to create a new schedule following a stay pales in comparison to the time and effort saved by ***not*** litigating invalid claims representing two-thirds of the case. And because so little discovery has taken place in this case, there is little chance, if any, that duplicative discovery efforts would be needed at the end of the stay.[2]

DivX expresses concern that "the accused infringer [may] raise different invalidity attacks on the patents in the PTAB and in Court." Opp. at 18. But even if

---

[2] Plus, creating a new case schedule and potentially taking additional discovery are not factors that a court considers in deciding whether to stay a case pending IPRs.

the IPRs and this case were to proceed in parallel, DivX could face different invalidity arguments in each forum. On the other hand, if the IPR proceeds while this is stayed, the invalidity issues in this case will be simplified. Obviously, if the claims are invalidated in IPR, those claims will not be litigated here. And if the claims are not invalidated during the IPR and after a Final Written Decision, Netflix will be estopped from making certain arguments in litigation. Therefore, simplification of the case weighs strongly in favor of a stay.

In addition, the district court case and the IPRs proceeding in parallel could actually complicate the issues. Even if Netflix were to allege the same invalidity arguments in each forum, the Court and the PTAB could adopt different claim mappings, scope of the prior art, and invalidity conclusions. But at this stage of the case, the Court has not yet decided any of the issues the PTAB will consider when evaluating Netflix's petitions. As a result, litigating those same issues in this Court while the PTAB considers them *in parallel* would duplicate effort and waste judicial resources. This is yet another reason to stay this case pending resolution of the IPRs.

### C. Speculative Prejudice Does Not Weigh Against a Stay

Contrary to DivX's assertion (Opp. at 19), "mere delay" in a patent owner's enforcement of its rights "does not establish undue prejudice." *Universal Elecs.*, 943 F. Supp. 2d at 1033. In fact, courts recognize "[p]rotracted delay is always a risk inherent in granting a stay" but still maintain that "[t]he general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay." *Limestone*, 2016 U.S. Dist. LEXIS, at *16 (internal quotations omitted)).

DivX admits that any *potential* damage that it alleges it may face based on its licensees is entirely speculative. Opp. at 20 (delay "may incentivize" licensees to "wait and see" before renewing its license). Postulating about future damage does not provide a basis for finding prejudice that weighs against a stay. *See Pi-Net, Int'l Inc. v. Focus Bus. Bank*, No. 12-cv-4958, 2013 U.S. Dist. LEXIS, at *16 (N.D. Cal. Aug. 16, 2013) ("[Plaintiff] has failed to point to any *specific* prejudice from a delay

that is more than speculative."). Importantly, DivX does not dispute that the parties are not competitors; so "to the extent that a stay would prolong the period of potential injury to [DivX's] commercial interests, such injury can be accurately compensated through damages." *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, No. CV 13-00504 ACK-RLP, 2015 WL 12776595, *7 (D. Haw. Feb. 17, 2015); *see also Lodge Mfg.*, slip op. at 8 (rejecting prejudice argument based on loss in market share and revenue).

It also is not relevant that DivX's former licensees may be infringing on certain of DivX's unidentified, alleged intellectual property rights. Opp. at 20. **Nothing** in DivX's Opposition connects any of its licenses to any of the asserted patents, let alone to this litigation or Netflix's requested stay. *See Limestone*, 2016 U.S. Dist. LEXIS 90742, *16 (rejecting prejudice argument). Even if DivX had tied its alleged harm to this case—which it has not—DivX fails to show that monetary damages would be inadequate to address any hypothetical commercial harm. Nothing supports Plaintiff's prejudice argument beyond mere "*ipse dixit*." *Wonderland Nursery Goods*, 2015 WL 1809309, at *3.

Moreover, the Court should disregard DivX's apparent disgruntlement with the fairness of PTAB's processes as it is entirely irrelevant to the determination of whether to grant a stay. Similarly, DivX speculates that different discovery standards in each forum could somehow lead to prejudice in trying to prove non-obviousness.[3] That too is unsupported. The sole case DivX relies on relates to defending the priority of an invention in an IPR, not raising objective considerations of non-obviousness.

---

[3] As support for its position, DivX cites a case where a motion for additional discovery was denied by the PTAB. *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, Paper No. 26, at 6-7 (PTAB Mar. 5, 2013). But the fact that the PTAB may not allow evidentiary fishing expeditions during its proceedings is not a reason to deny a stay here. In *Garmin Int'l*, for example, the complex accused devices had many features, and there was no evidence that the claimed features were the reason for the devices' success. Thus, the PTAB held that the requested sales and pricing information would not have been helpful to the patent owner's case. *Id*. In any case, the PTAB has the ability and authority to permit or deny the type of discovery DivX purports to need.

*See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1338-40 (Fed. Cir. 1998). Further, contrary to DivX's arguments that it may be precluded "from fully discovering and litigating objective considerations of non-obviousness" at the PTAB and that "[o]nly this Court . . . can provide the most fulsome vetting of [the parties'] disputes relating to validity" (Opp. at 20-21), the PTAB regularly and thoroughly considers obviousness issues, including evidence of objective considerations of non-obviousness. *See, e.g.*, *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1334 (Fed. Cir. 2019); *Celgene Corp. v. Peter*, 931 F.3d 1342, 1352 (Fed. Cir. 2019).

Because there is no undue prejudice to DivX, Netflix need not show hardship. *See, e.g.*, *Polymer Tech. Sys. v. Jant Pharmacal Corp.*, No. 15-cv-02585, 2015 U.S. Dist. LEXIS 179423, at *7-8 (C.D. Cal. Aug. 20, 2015). Even if it did, overlapping discovery between the district court and the IPRs is an unnecessary and significant hardship that weighs in favor of a stay. *Arris Enters. LLC v. Sony Corp.*, 17-cv-02669, 2017 U.S. Dist. LEXIS 121035, at *6-11 (N.D. Cal. Aug. 1, 2017).

## III. DIVX'S "LEGAL STANDARD" IS WRONG

Setting aside the factors applicable to whether a stay should be granted, DivX makes several other irrelevant and erroneous arguments, which the Court should disregard. First, DivX fails to address the correct three-factor test for determining whether to grant a stay pending an IPR and instead attempts to create a new test based on cases and arguments wholly unrelated to staying a district court case pending an IPR or otherwise not analogous to this case. Second, DivX incorrectly alleges that there is "no liberal policy" in favor of granting a stay, which is contrary to the law. Finally, DivX misconstrues legislative history of the America Invents Act. These inapplicable arguments do not change the fact that a stay is appropriate in this case.

### A. *Landis* Is Inapplicable

There can be no legitimate dispute that the three factors set forth in *Universal Elecs.*, together with the totality of the circumstances, govern the stay analysis here. Mot. at 5. Rather than address that legal framework, DivX dodges it and instead relies

on an irrelevant case from more than 80 years ago, *Landis v. North American Co.*, 299 U.S. 248 (1936) to argue that a stay is not warranted. But *Landis* dealt with whether to stay one lawsuit while another lawsuit was being decided and is inapplicable. *Id.* It had nothing to do with IPRs at the PTO, which were only introduced in 2012, or even staying a district court case while an administrative body determines the plaintiff's rights. *See, e.g.*, *Rovi Guides, Inc. v. Comcast Corp.*, No. 19-cv-00275, 2019 U.S. Dist. LEXIS 216706, at *2 (C.D. Cal. Aug. 19, 2019) (granting motion to stay and citing *Landis* for the power to stay a case, but citing *Universal Elecs.* as the controlling case "[i]n determining whether a stay is appropriate pending PTO proceedings"); *Uniloc 2017 LLC v. Microsoft Corp.*, No. 18-cv-02053, 2019 U.S. Dist. LEXIS 221950, at *6-7 (C.D. Cal. Aug. 9, 2019) (same). *Landis* is not even controlling when deciding whether to stay parallel state and federal court proceedings, let alone when deciding to stay a federal court action pending the resolution of a PTO proceeding. *See AIIRAM LLC v. KB Home*, No. 19-cv-00269, 2019 U.S. Dist. LEXIS 136744, at *17-18 (N.D. Cal. Aug. 12, 2019) (holding that "the *Landis* analysis is inapplicable to the instant case").

### B. There is a Liberal Policy in Favor of Granting a Stay

DivX argues that there is no "liberal policy" in favor of granting stays pending IPR proceedings, but the case law holds differently. Courts in this district and many others have repeatedly held that "[t]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of IPR, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Cannarella v. Volvo Car United States LLC*, No. 16-cv-6195, 2016 U.S. Dist. LEXIS 192449, at *9-10 (C.D. Cal. Dec. 12, 2016) (internal brackets and citations omitted); *Pi-Net Int'l, Inc. v. Hertz. Corp.*, 2013 WL 7158011, at *2 (Gutierrez, J.). DivX fails to address these cases.

DivX also erroneously contends that "[t]he *ASCII* case originating the 'liberal policy' proposition" does not apply to IPRs because it dealt with reexaminations

instead. *See ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378 (N.D. Cal. 1994). The "liberal policy in favor of granting motions to stay" established by *ASCII* equally applies to IPRs, as this District and numerous other courts have held. *See, e.g., Star Envirotech v. Redline Detection, LLC*, No. SACV 12-01861 JGB (MLGx), 2013 U.S. Dist. LEXIS 58866, at *7 (C.D. Cal. Apr. 3, 2013) (granting stay pending IPR in light of factors and "liberal policy of granting motion to stay litigation pending the outcome of PTO proceedings" and citing *ASCII* as authority); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST (JPRx), 2012 U.S. Dist. LEXIS 186322, at *11 (C.D. Cal. Dec. 19, 2012) (same); *Tire Hanger Corp. v. My Car Guy Concierge Servs.*, No. 5:14-cv-00549, U.S. Dist. LEXIS 24256, at *5, 9-10 (C.D. Cal. Feb. 27, 2015) (same)).[4]

DivX also absurdly argues that federal courts follow an "opposite policy" that favors first-filed district court actions over IPR proceedings. Opp. at 9. The decades-old cases that DivX relies on—*Kahn* from 1989 and *Kerotest* from 1952—are inapplicable. Neither case dealt with a motion to stay a federal district court case pending resolution of PTO invalidity proceedings. Both cases instead addressed whether to stay one district court case in favor of another based on which case was filed first. *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (vacating order staying plaintiff's suit in favor of a suit that was filed later in time); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180. 186 (1952) (affirming reversal of decision to stay later filed lawsuit in favor of first filed lawsuit, where the petitioner could be joined as a defendant in the first action). The rules and policies for whether to stay an earlier-filed district court action as in *Kahn* and *Kerotest* do not apply here. IPR petitions are nearly always filed ***after*** a patentee has filed suit. *See*

---

[4] This Court has noted that "[e]ffective September 16, 2012, the Leahy-Smith America Invents Act amended the *inter partes* reexamination process and renamed it the *inter partes* review process," and thus applied the same test and standards for determining a stay pending an IPR that was previously used for stays pending reexamination. *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST, 2012 U.S. Dist. LEXIS 186322, at *3 n.1 (C.D. Cal. Dec. 19, 2012).

35 U.S.C. § 315(b) (allowing up to a year after a lawsuit has been filed to then file an IPR petition). In fact, in every case in this District located by Netflix where a stay pending IPR was granted, the IPR was filed *after* the plaintiff filed the district court case. *See, e.g.*, *supra* Section III(B) (collecting cases). In the cases where a stay was not granted, none of the courts considered in the fact that the IPR was filed after the district court case.

### C. The Legislative History Does Not Weigh Against a Stay

DivX's "legislative history" arguments are inapposite as well. Opp. at 10-11. The legislative history DivX relies on relates to a scenario where a party *initiates* two separate invalidity actions in two separate venues, which is not the situation here. *Id.* 35 U.S.C. § 315(a)(1) prevents an IPR from being filed if a declaratory judgment action of invalidity was previously initiated by the same party, and 35 U.S.C. § 315(a)(2) automatically stays a declaratory judgment action of invalidity if it is filed after an IPR that was filed by the same party. But Netflix did *not* "initiate invalidity declaratory judgment litigation." Opp. at 11. *DivX* initiated the lawsuit, and Netflix responded to it, just as in the other cases in this District that have been stayed pending IPR. *See, e.g.*, *Semiconductor Energy*, 2012 U.S. Dist. LEXIS 186322, at *1-3; *Cannarella*, 2016 U.S. Dist. LEXIS 192449, at *7-8.

DivX further argues that the patent owner has "authority over whether to proceed in litigation" when an IPR is involved. Opp. at 11. There is no such policy or rule. The Court makes that decision. The only scenario when a patent owner may choose to forego an automatic stay is when a declaratory judgment action is filed against the patent owner after an IPR has already been filed for the same patents. But here, that is not what happened. DivX—not Netflix—initiated the lawsuit.

### IV. CONCLUSION

For at least the foregoing reasons and those set forth in Netflix's Motion, Netflix respectfully requests that the Court stay this action pending the outcome of Netflix's IPRs.

| | | |
|---|---|---|
| 1 | DATED: May 4, 2020 | Respectfully submitted, |
| 2 | | |
| 3 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | |
| 5 | | By     /s/ David Perlson |
| 6 | | David Perlson (Bar No. 209502) |
| | | davidperlson@quinnemanuel.com |
| 7 | | Andrew Holmes (Bar No. 260475) |
| 8 | | drewholmes@quinnemanuel.com |
| | | 50 California Street, 22nd Floor |
| 9 | | San Francisco, CA 94111 |
| 10 | | Telephone: (415) 875-6600 |
| | | Facsimile: (415) 875-6700 |
| 11 | | |
| 12 | | Brian Biddinger (Bar No. 224604) |
| | | brianbiddinger@quinnemanuel.com |
| 13 | | 51 Madison Avenue, 22nd Floor |
| 14 | | New York, NY 10010 |
| | | Telephone: (212) 849-7000 |
| 15 | | Facsimile: (212) 849-7100 |
| 16 | | |
| 17 | | Lance Yang (Bar No. 260705) |
| | | lanceyang@quinnemanuel.com |
| 18 | | Valerie Lozano (Bar No. 260020) |
| | | valerielozano@quinnemanuel.com |
| 19 | | 865 S. Figueroa St., 10th Floor |
| 20 | | Los Angeles, CA 90017 |
| | | Telephone: (213) 443-3000 |
| 21 | | Facsimile:  (213) 443-3100 |
| 22 | | |
| | | *Attorneys for Netflix, Inc.* |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |