Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:   (650) 802-6000
Facsimile:    (650) 802-6001

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

*Attorneys for Plaintiff DivX, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company, <br><br>      Plaintiff and Counterclaim-Defendant, <br><br>      v. <br><br> NETFLIX, INC., a Delaware corporation, <br><br>      Defendant and Counterclaimant. | **Case No. 2:19-cv-1602 PSG (DFMx)** <br><br> **PLAINTIFF DIVX, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO LIFT STAY AND REOPEN CASE** <br><br> Date:   February 25, 2022 <br> Time:   1:30 pm <br> Ctrm:   6A <br> Judge:  Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 2

       A.    History Of District Court Proceedings ................................................ 2

       B.    IPR Proceedings .................................................................................... 3

III.   LEGAL STANDARD ..................................................................................... 3

IV.    ARGUMENT ................................................................................................... 4

       A.    Factor 1: The Stage Of Proceedings Supports Lifting The Stay ......... 4

       B.    Factor 2: A Stay Will Not Meaningfully Simplify These Cases ......... 6

       C.    Factor 3: A Stay Would Prejudice And Tactically Disadvantage
             DivX ..................................................................................................... 10

             1.    Sub-Factor 1: Netflix's Delay In Filing IPR Petitions ............ 10

             2.    Sub-Factor 2: The Timing Of The Request For A Stay .......... 11

             3.    Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay ... 11

             4.    Sub-Factor 4: The Relationship Between The Parties ............ 11

             5.    DivX Is Prejudiced If Its Claims Are Not Timely Resolved .. 14

       D.    The Totality Of The Circumstances Favors Lifting The Stay ........... 15

V.     CONCLUSION ............................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Game and Tech. Co. v. Blizzard Entm't, Inc.*,
   No. CV 16-06499-BRO (SK), slip op (C.D. Cal. May 15, 2017) ................ 3, 4, 5, 16

*Ioengine, LLC v. Paypal Holdings, Inc.*,
   Civil Action No. 18-452-WCB, 2020 WL 6270776 (D. Del. Oct. 26, 2020) . 5, 7, 8, 9

*Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*,
   No. CV 19-4047 PSG (MAAx), 2020 WL 5079051 (C.D. Cal. June 17, 2020) ... 4, 7, 11

*Juno Therapeutics, Inc. v. Kite Pharma*,
   No. CV 17-07639 SJO (RAOx), 2018 WL 1470594 (C.D. Cal. Mar. 8, 2018) .......... 8

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*,
   No. SACV 17-01914-CJC-JPR, slip op. (C.D. Cal. May 13, 2020) ............. 4, 5, 8, 14

*Masterobjects, Inc. v. Ebay, Inc.*,
   No. 16-cv-06824-JSW, 2018 WL 11353751 (N.D. Cal. Nov. 7, 2018) ..................... 8

*Medtronic, Inc. v. Axonics Modulation Technologies, Inc.*,
   No. SA CV 19-02115-DOC-JDE, slip op. (C.D. Cal. Oct. 21, 2021) .................... 7, 8

*Milwaukee Elec. Tool Corp. v. Hilti, Inc*,
   No. 14-CV-1288-JPS, 2016 WL 7495808 (E.D. Wis. Dec. 30, 2016) ............ 4, 8, 14

*Netflix, Inc. v. DivX LLC*,
   IPR2020-00614, Paper 68 (PTAB Dec. 15, 2021) .................................... 3, 6

*Netflix, Inc. v. DivX LLC*,
   IPR2020-00648, Paper 28 (PTAB Sep. 27, 2021) ...................................... 6

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
   No. 6:11cv492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ................................. 9

*Tire Hanger Corp. v. My Car Guy Concierge Servs.*,
   Case No. 5:14-cv-00549-ODW(MANx), 2015 U.S. Dist. LEXIS 193390 (C.D. Cal. June 16, 2015) ........................................................................... 7

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

   943 F. Supp. 2d 1028 (C.D. Cal. 2013)........................................................................ 4

*ZOLL Med. Corp. v. Respironics, Inc.*,

   Case No. 12-1778-LPS, 2015 WL 4126741 (D. Del. July 8, 2015) ........................ 14

**Statutes and Regulations**

35 U.S.C. § 315(b) ........................................................................................................ 3

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................ 16

# I.   INTRODUCTION

Pursuant to the Court's Order inviting applications to reopen this case after resolution of IPRs affecting the patents asserted in this case, DivX respectfully asks the Court to exercise its discretion to lift the stay.[1]

This is a straightforward motion to reopen: Netflix's IPRs have now ended with not even one asserted patent eliminated from this case, and only three of thirty asserted claims invalidated.  This case has been stayed for more than a year and a half and has been pending for over two and a half years.  With the IPRs now complete, there is no remaining justification for the stay to continue.  Every factor in the stay analysis weighs in favor of lifting the stay and allowing the case to proceed.

Extending the stay would run directly counter to Rule 1's purpose of just, speedy, and inexpensive resolution of all actions.  It also would unfairly prejudice DivX's rights and block the orderly and timely resolution of DivX's claims that were properly brought years ago in the forum with the constitutionally endowed power to hear them.

Netflix may argue its multiple appeals of the IPR results justify continuing the stay.  They do not.  Courts have repeatedly recognized that waiting to see if a result changes on appeal is highly speculative, and it is extremely unlikely here given that over 70% of IPR appeals result in a full affirmance.  The odds against Netflix are even higher here because the majority of these patents survived IPRs essentially unscathed.  Although any change in result is exceedingly unlikely, a stay pending appeal is likely to double the length of the stay to a total of about three years, and Netflix's conduct in commencing its appeals by seeking extensions shows that even longer delay is likely.

---

[1] In its Order, the Court invited *ex parte* applications to reopen the case.  Dkt. No. 106 at 8.  DivX respectfully submits that the swiftness implied by the Court's invitation to move *ex parte* is appropriate here, but, mindful of *Mission Power*, the Court's busy schedule, and Netflix having a full chance to file an opposition, DivX submits a regularly noticed motion.

No further delay is justified.

There is nothing in this case that supports continuing the stay. If Netflix—unable to find support in this case to maintain the stay—attempts to argue that DivX's co-pending cases against Hulu warrant continuing the stay here, they do not. The prospect that different patents in a later-filed case against a different defendant should justify keeping this case from progressing should be rejected. That is especially true when Netflix already brought IPRs against the actual patents in this case and failed to eliminate a single one of them.

DivX was a streaming video pioneer long before Netflix shifted its focus from DVDs-by-mail to streaming video. Netflix built a multi-billion-dollar internet video business using technology DivX created and patented. In the mid-2000s, Netflix was one of the companies that approached DivX to discuss using DivX's technology to power online video content delivery platforms. Dkt. 1, ¶ 42. But rather than work with DivX or obtain the right to use the technology DivX owned and Netflix needed, Netflix built its platform using DivX's patented technology without license or recognition, harming DivX's reputation and business opportunities in a market that DivX helped create. The PTAB's decisions support the importance and primacy of DivX's technology. The stay has achieved its purpose, and the PTAB's affirmance of DivX's patents corroborates DivX's foundational place in the field. DivX should now be allowed to pursue its claims on the merits before this Court.

## II.    BACKGROUND

### A.    History Of District Court Proceedings

DivX filed this case on March 5, 2019, more than two and a half years ago. *Netflix*, Dkt. 1. The Court set a trial date of April 27, 2021. *Netflix*, Dkt. 83 (Jan. 29, 2020 Order). On March 13, 2020, more than a year after the case was filed, Netflix moved for a stay. *Netflix*, Dkt. 94. The Court granted that motion on May 11, 2020. *Netflix*, Dkt. 106. The same Order permitted any party to apply to reopen the case "after the conclusion of all IPR proceedings" on the *Netflix* patents. *Id.* at 8. On

December 15, 2021, the Final Written Decision ("FWD") issued in the last *Netflix* IPR, so DivX now moves to lift the stay. *Netflix, Inc. v. DivX LLC*, IPR2020-00614, Paper 68 (PTAB Dec. 15, 2021).

### B.     IPR Proceedings

Seven of eight *Netflix* patents were challenged in IPRs, but those IPRs failed to eliminate ***any*** patent from this case.  FWDs have issued in all the *Netflix* IPRs, the latest one issuing on December 15, 2021.  *See* Ex. 1 (table summarizing the status of all *Netflix* IPRs, the length of delay in filing the petitions, and the number of asserted claims challenged, and the number of claims the PTAB confirmed).  There are claims asserted in this Court from each challenged patent either that the PTAB confirmed were patentable or that were not challenged in an IPR proceeding—and for five of those seven challenged patents ***no*** claims were found unpatentable in IPR.  Ex. 1. With only three claims out of thirty found unpatentable in IPR, there has not been any significant simplification of this case.

The *Netflix* Complaint was served on March 12, 2019, starting the one-year period for filing IPR petitions.  *Netflix*, Dkt. 32; 35 U.S.C. § 315(b).  Netflix waited to file until the end of that period.  Six out of seven IPRs were filed in or near the last month of the allowed period.  *Netflix*, Dkt. 106 at 2-3.

## III.   LEGAL STANDARD

Stays pending IPR are within the Court's discretion.  In determining whether to stay a case pending IPR, or whether to lift such a stay, courts consider three factors:

> (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

Ex. 2, *Game and Tech. Co. v. Blizzard Entm't, Inc.*, No. CV 16-06499-BRO (SK), slip op. at 3 (C.D. Cal. May 15, 2017) (O'Connell, J.); *Hulu II*, Dkt. 83 at 7.  In weighing

the third factor—prejudice—courts consider four sub-factors: "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*, No. CV 19-4047 PSG (MAAx), 2020 WL 5079051, at *4 (C.D. Cal. June 17, 2020) (Gutierrez, J.). [2] "[U]ltimately 'the totality of the circumstances governs.'" Ex. 2, *Game and Tech.*, slip op. at 3 (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013)). Importantly, "[t]he proponent of a stay bears the burden of establishing its need." *Id.*

Rule 1 provides that the Federal Rules are to be administered to "secure the just, speedy, and inexpensive determination of every action and proceeding." These considerations from Rule 1 weigh in favor of lifting a stay. *See Milwaukee Elec. Tool Corp. v. Hilti, Inc*, No. 14-CV-1288-JPS, 2016 WL 7495808, at *3 (E.D. Wis. Dec. 30, 2016) ("In light of its obligation to ensure the expeditious resolution of this case, *see* Fed. R. Civ. P. 1, the Court finds that the stay in the Related Cases has outlived its usefulness."); Ex. 3, *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-01914-CJC-JPR, slip op. at 6 (C.D. Cal. May 13, 2020) (Carney, J.) (finding the third factor weighs against a stay, including because "the Court has an obligation to manage its docket to ensure that cases are resolved in a timely manner").

## IV. ARGUMENT

With the IPRs on all *Netflix* patents resolved overwhelmingly in DivX's favor, all stay factors, and the totality of the circumstances, favor lifting the stay.

### A. Factor 1: The Stage Of Proceedings Supports Lifting The Stay

With good reason, courts typically do not give significant weight to this factor when considering whether to extend an already lengthy stay. As one court observed, although this factor was "unchanged" given that the "proceedings in this court have

---

[2] Emphasis added and internal quotation marks and citation omitted unless noted.

been frozen since the stay was imposed," the "focus of the inquiry" is not on this factor, but the other two factors. *Ioengine, LLC v. Paypal Holdings, Inc.*, Civil Action No. 18-452-WCB, 2020 WL 6270776, at *2 (D. Del. Oct. 26, 2020) (Bryson, J., sitting by designation). A court in this district found the factor "neutral" when the case was "nearing the two-year mark" and a "significant portion of that time was subject to the current stay," despite no depositions, expert discovery, or trial date. Ex. 2, *Game and Tech.*, slip op. at 4. This makes sense. If a lack of progress could justify continuing the very stay that caused it, then stays would become indefinite, and their justifications circular. Here, similar to *Game and Technology*, over two and a half years have passed since *Netflix* was filed, and the case has been stayed for over one and a half years. *Netflix*, Dkt. 1; *Netflix*, Dkt. 106. This factor supports lifting the stay.

Further, the status of this case favors lifting the stay. The Court has already addressed two substantive motions to dismiss. *Netflix*, Dkts. 59, 72. Another court in this district found that it "slightly favor[ed]" lifting a stay where, like here, the parties had engaged in "some motions practice before this Court" and "complex proceedings before the PTAB." *Lund*, slip op. at 4. "Given the time that has passed and the resources the parties have expended, it would be a mistake to characterize this case as one that is still in its early stages." *Id.* Moreover, before the stay in *Netflix*, the parties served and responded to discovery, served detailed contentions, and were about to start claim construction. *See Netflix*, Dkts. 89, 102-1. DivX narrowed its asserted claims and produced 72,783 pages. *Netflix*, Dkt. 102-1.

Another consideration is whether a trial date has been set. Ex. 2, *Game and Tech.*, slip op. at 3. Although there is currently no trial date, the Court had previously set one, and less than a year remained until trial when this case was stayed. *Netflix*, Dkts. 106, 83. The prospect of an expeditious trial date should favor lifting the stay versus waiting on the speculation that Netflix could find a wholesale reversal of fortune on appeal or that the PTAB, considering patents not even asserted here, will provide fodder of yet to be determined relevance to an issue in the present case. This

Court can resolve the dispute in its entirety before either of those unlikely events would ever occur, and there is no reason not to proceed.  It is more important to allow the present case to reach a fair result on the merits on a schedule contemplated by the Rules than to wait for such speculation.

### B. Factor 2: A Stay Will Not Meaningfully Simplify These Cases

The factor addressing whether a stay is likely to simplify the court proceedings strongly favors lifting the stay.  Now, FWDs have issued in all IPRs on *Netflix* Patents, and the results are overwhelmingly in DivX's favor.  *See above* Section II(B); Ex. 1.  With all *Netflix* IPRs complete, no patents have been eliminated, and the case has ***not*** been significantly simplified.  Netflix cannot now argue that simplification is likely given this outcome.  There is no reason patents that have now been through IPR (or were not challenged in the first place) should not be allowed to proceed.  Any alleged simplification has already happened, and there is no reason to wait.

Of the eight asserted patents in this case, one patent was never subjected to IPR (No. 10,212,486). *Netflix*, Dkt. 106 at 2; Ex. 1.  Five more of the asserted patents were challenged in IPRs without a single claim being found unpatentable (Patent Nos. 8,139,651 ("651 Patent"); 10,225,588 ("588 Patent"); 8,472,792 ("792 Patent"); 9,270,720 ("720 Patent"); 9,184,920 ("920 Patent")).  *Netflix*, Dkt. 106 at 2-3; Ex. 1.  For the remaining two patents (No. 9,998,515 ("515 Patent") and No. 7,295,673 ("673 Patent")), only one of two and two of five currently asserted claims, respectively, were found unpatentable in IPR.[3]  Ex. 1.  Thus, of the thirty claims across eight patents

---

[3] DivX has asserted only Claims 10, 18, 21, 29, and 32 from the 673 Patent and Claims 1 and 16 from the 515 Patent.  Ex. 4 at 2.  Only Claims 1–6, 9, 10, and 13–19 of the 673 Patent were challenged in IPR.  *Netflix, Inc. v. DivX LLC*, IPR2020-00614, Paper 68 at 84 (PTAB Dec. 15, 2021).  Although the challenged claims of the 673 Patent were found unpatentable in the IPR (*id.*), that has not eliminated Claims 21, 29, and 32 from the 673 Patent claim that are asserted in this case.  Only Claims 16, 17, and 19 of the 515 Patent were found unpatentable, while Claims 1–6, 8–10, 13, and 14 were found patentable. *Netflix, Inc. v. DivX LLC*, IPR2020-00648, Paper 28 at 57 (PTAB Sep. 27, 2021).

presently asserted in this case, only three claims were found unpatentable in IPR. Ex. 1. DivX will not be proceeding on these three claims. Any simplification of this case from the IPRs is, therefore, now complete; there is no reason to delay resolution of the present case in this Court. As another court in this district recently explained, "[n]ow that PTAB has issued its final written determinations, the stay has served its purpose of simplifying the case and is no longer warranted or appropriate." Ex. 5, *Medtronic, Inc. v. Axonics Modulation Technologies, Inc.*, No. SA CV 19-02115-DOC-JDE, slip op. at 2 (C.D. Cal. Oct. 21, 2021) (Carter, J.).

This Court has previously denied a stay when four of six patents (67%) would never be subject to an IPR, and correctly concluded that the Court "will have to resolve all claims in dispute as to those patents" and "waiting for the outcome of reexamination does nothing for that portion of the litigation." *Jiaxing*, 2020 WL 5079051, at *3. In the present case, ***none*** of the asserted patents is subject to proceedings before the PTAB. "[T]o truly simplify the issues the outcome of the reexamination must finally resolve all issues in the litigation." *Id.*; *see also Tire Hanger Corp. v. My Car Guy Concierge Servs.*, Case No. 5:14-cv-00549-ODW(MANx), 2015 U.S. Dist. LEXIS 193390, at *3 (C.D. Cal. June 16, 2015) (Wright, J.) ("The '897 petition only addresses three out of the eleven asserted claims in the case, therefore there is no reason to allow the remaining claims to 'languish' unresolved during the IPR process.").

Netflix's pending appeals of those IPR results do not change the analysis of the simplification factor. Courts in this and other districts have repeatedly concluded that once IPRs have resolved, appeals—like those filed in the present case—are not a reason to continue a stay. *See* Ex. 1. As Judge Bryson explained while sitting by designation in Delaware, "the great weight of the case law, both in this district [Delaware] and elsewhere," rejects issuing a stay pending an appeal of an IPR decision. *Ioengine*, 2020 WL 6270776, at *5. "Whether any further simplification will result from an appeal to the Federal Circuit from the PTAB's final written

decisions is *speculative*." *Id.* at \*7; *Masterobjects, Inc. v. Ebay, Inc.*, No. 16-cv-06824-JSW, 2018 WL 11353751, at \*2-3 (N.D. Cal. Nov. 7, 2018) (noting the "*speculative*" nature of awaiting additional claim construction on appeal); *Milwaukee Elec. Tool*, 2016 WL 7495808, at \*2 ("[N]ow that those patents have survived IPR, there remains only a *speculative* possibility that the Federal Circuit will reverse the PTAB and invalidate them."); Ex. 5, *Medtronic*, slip op. at 2-3 ("[T]he pendency of an appeal and its *speculative* success is 'not, in and of itself, a sufficient basis to make the patentee continue to wait to enforce patent rights that it currently holds.'" (quoting *Juno Therapeutics, Inc. v. Kite Pharma*, No. CV 17-07639 SJO (RAOx), 2018 WL 1470594, at \*7 (C.D. Cal. Mar. 8, 2018) (Otero, J.))); Ex. 3, *Lund*, slip op. at 6 ("The Court declines to subject this case to certain delay based on the *speculative* possibility that its scope might be somewhat altered by Defendants' appeal.").

The high affirmance rate of PTAB decisions by the Federal Circuit—well over 70% affirmance on all issues—confirms this. *Ioengine*, 2020 WL 6270776, at \*3 (noting in 2020 that "the Federal Circuit has issued a full affirmance in more than 75% of appeals from the PTAB[.]"); Daniel F. Klodowski et al., *Federal Circuit PTAB Appeal Statistics Through August 31, 2021*, IX Nat'l Law Rev. 274 (2021), https://www.natlawreview.com/article/federal-circuit-ptab-appeal-statistics-through-august-31-2021 (attached as Ex. 6 at 1-2) (through August 31, 2021, the Federal Circuit affirmed the PTAB on every issue in 73.26% of IPR appeals, and partially affirmed in another 10.07% of appeals). To materially alter the present case, the Federal Circuit would have to reverse multiple IPRs, which is even less likely.

Further, stays pending appeal subject plaintiffs to an "open-ended period of delay": while "IPR proceedings are statutorily limited in duration," appeals are not. *Ioengine*, 2020 WL 6270776, at \*6; *Masterobjects*, 2018 WL 11353751, at \*3 (an IPR has a "statutorily-imposed deadline," but an appeal does not). As Judge Bryson noted when sitting by designation, it is "hard to predict how long the appellate process will take, although from the available statistics, it is safe to assume that it will take at least a

year." *Ioengine*, 2020 WL 6270776, at *7.  Indeed, in 2018-2021, the median time to the Federal Circuit decision in a PTAB appeal, including roughly three months from the final written decision to the docketing of the appeal, has been between 17 and 18 months, *See* the Federal Circuit's own report "Median Disposition Time for Cases Terminated After Hearing or Submission," https://cafc.uscourts.gov/wp-content/uploads/reports-stats/disposition-time/06_Med_Disp_Time_MERITS_table.pdf. Although any change in result from an appeal is highly speculative, such a lengthy delay is certain to result from any stay. This too weighs against a further stay.

Congress intended IPRs to be timely and cost-effective.  *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11cv492, 2015 WL 11439060, at *5 n.8 (E.D. Tex. Jan. 5, 2015).  It is neither timely nor cost-effective to require companies that have waited for their district court claims to proceed upon the conclusion of IPRs in their favor to be burdened with additional and excessive delays on the improbable chance that the Federal Circuit might reverse multiple IPR results.  Indeed, Congress did not require a stay during the pendency of the appeals.  *Id.*

Failing to find support to continue the stay on the facts of this case, Netflix may attempt to argue that recently filed or yet to be filed IPR petitions in a different case (*Hulu II*) against a different defendant (Hulu) on different patents will simplify the issues in this case.  They will not.  As the Court already found in October of last year, the existence of recently filed IPR petitions on two patents out of five asserted in *Hulu II* rendered this factor neutral even in the *Hulu* cases.  *Hulu II*, Dkt. 83 at 9-10.  This applies with even more force to the *Netflix* case.  This *Netflix* case involves a different defendant, different accused products, and includes ***none*** of the patents from *Hulu II*, which means there is no possibility of simplification of *Netflix* from eliminating the *Hulu II* patents.  If the *Netflix* case were held back on the account of unrelated IPRs and their appeals (if IPRS are even instituted), this would needlessly extend the stay in Netflix by at least an additional year after the appeals of Netflix IPRs are completed

for a cumulative stay of over four years.  Continuing the stay is not a fair or efficient result and would be contrary to Federal Rule 1.

If Netflix raises the need for coordination between the Netflix and Hulu cases, the goal of coordination between the cases does not point to any meaningful prospect of simplification of issues in this case that overcomes the overwhelming reasons to lift the stay.  Although some discovery is expected to overlap between *Netflix* and *Hulu*, that discovery is predominantly discovery from DivX to the respective defendants. DivX is willing to proceed with *Netflix* now and provide that discovery regardless of what the Court decides with respect to *Hulu*, although it would be most efficient and just if the Court allowed both *Netflix* and *Hulu* cases to proceed together now, as is explained in DivX's concurrently filed *Hulu* motion.  If Netflix and Hulu are interested in saving resources by combining discovery in the cases, they should both agree to proceed now and not impose further costly delay after nearly uniformly unsuccessful IPRs delayed the cases by a year and a half.

In any event, Netflix will need to produce its same documents, present the same witnesses, and seek to defend itself from the same infringement allegations, whether *Hulu* is proceeding or not.  The cases are not consolidated for pretrial discovery. Rather, DivX agreed to work with Netflix and with Hulu to coordinate the cases for the sake of efficiency while the cases were proceeding to trial.  DivX did not agree that such coordination would mean Netflix can take advantage and delay the progress of this case by demanding a protracted stay based on tangential arguments that really have only to do with Hulu. DivX should not be punished for its cooperation.  This factor strongly favors lifting the stay.

## C.   Factor 3: A Stay Would Prejudice And Tactically Disadvantage DivX

### 1.   Sub-Factor 1: Netflix's Delay In Filing IPR Petitions

Netflix delayed its IPR filings, and it would unduly prejudice DivX and subject DivX to clear tactical disadvantage, if the case were further delayed.   DivX acknowledges and does not seek to revisit the Court's original decision to grant the

stay.  The further stay that Netflix now seeks, however, must be considered against the backdrop of the timing of Netflix's IPR petitions.   This Court has previously considered six months to be a "delay" that contributed to this factor weighing against a stay. *Jiaxing,* 2020 WL 5079051, at *4 ("Defendant delayed in both bringing the IPRs and in bringing the request for a stay.  Although Plaintiffs served Defendant with the complaint in May 2019, Defendant did not bring its IPRs until November 2019."). Here, Netflix's delay was even longer.  The first IPR was not filed until seven months after service of the Complaint, and the remaining petitions were filed from around eleven months to a full year after service.  *See* Ex. 1; *Netflix*, Dkt. 106.  This case has been pending for over two and a half years, and Netflix now attempts to extend an already year and a half long stay by what is likely to be well over another year or more. *Netflix*, Dkts. 1, 106.  Netflix should not be permitted to stack delay upon delay.

### 2.    Sub-Factor 2: The Timing Of The Request For A Stay

Although the timing of Netflix's initial request for a stay was relevant to whether to stay the case in the first place, it provides no reason to continue the stay now that all substantive reasons for doing so are gone.  This sub-factor is no longer relevant and cannot weigh in favor of a stay.  In any case, this cannot outweigh the other sub-factors.  DivX is promptly moving to lift the stay upon the conclusion of the last IPR, and DivX's diligence favors lifting the stay.

### 3.    Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay

The Court previously found this sub-factor weighed slightly against a stay in the *Hulu* case (*Hulu II*, Dkt. 83), when IPR petitions had been filed on two *Hulu II* patents out of five.  In this case **no** patents are subject to IPR petitions and this sub-factor must therefore strongly weigh for lifting the stay.  The only effect of continuing the stay on patents where IPRs have finished would be to give Netflix an unfair tactical advantage.

### 4.    Sub-Factor 4: The Relationship Between The Parties

The fourth and final prejudice sub-factor is the "relationship of the parties." *Jiaxing*, 2020 WL 5079051, at *4.  DivX has a long history as a pioneer in technology

for providing high quality video over the internet.  DivX's innovations—including those described in the asserted patents—span a wide range of technologies that permit the viewing experience to which today's users have become accustomed.  For example, DivX improved digital rights management, which controls access to, and prevents piracy of, protected digital media—a *sine qua non* of non-pirated streaming video.  DivX developed technology for adaptive bitrate streaming that detects streaming conditions and adjusts the quality of the stream accordingly to prevent disruption in video playback.  DivX developed "trick play" technology that provides effects such as a "fast forward" for a familiar and friendly user experience.  DivX technology also enabled high quality video playback, including ultra-high definition (4K) video.  *See, e.g.*, *Netflix*, Dkt. 60 (Amended Complaint), ¶¶ 10, 80, 81, 124.  DivX built the technological foundations that Netflix now uses without a license and to DivX's detriment.  Indeed, DivX released its own products long before Netflix changed focus from sending its customers DVDs through the mail to streaming video on the internet.  Netflix's decision to design its platform using DivX technology without permission requires remedy from this Court, and the relationship between the parties weighs against a continued stay.

DivX's products and history of innovation have a long track record.  Over 20 years ago, on September 6, 2001, DivX released a video-on-demand service: the Open Video System ("OVS").  Ex. 7 at 1-7.  DivX's product launch was many years before streaming took off in earnest, and six years before the launch of Netflix's streaming offering in January 2007.  *See id.* at 8-10.  OVS allowed content providers to sell a "high quality download" of their media.  *Id.* at 2.  The first film on the OVS could be rented for five days by users with "high-speed Internet connections" for $4.95.  *Id.* The OVS platform offered a "complete delivery management infrastructure" for "profitable delivery of high quality video-on-demand," and it had a "proprietary digital rights management solution to ensure security."  *Id.* at 4.  This OVS platform was based on the DivX codec that allowed for the playing of DivX content.  *Id.* at 4, 12-17.

DivX continued to develop and expand its technology. There are now over 1.5 billion devices that are certified to play DivX content. Ex. 8 at 10, 15. For more than fifteen years, the leading consumer electronics brands have recognized the need to include DivX's technology in their products, ranging from televisions to mobile phones, from DVD and BluRay players to in-car systems. Ex. 9 at 1-6, 7-12, 13-20, 21-27, 28-34, 35-40 (announcing DivX Certified LG DVD Devices on June 2, 2005; DivX Certified in-car navigation and multimedia device on January 5, 2006; DivX Certified television on August 31, 2007; DivX Certified handset on November 25, 2008; DivX Certified Blu-ray Disc Player on March 3, 2008; DivX Certification of over 200 in-car and in-dash media device models on March 20, 2008). DivX licensed partners included industry leaders Samsung and LG as early as 2007, and both have recently entered patent licenses with DivX. Ex. 10 at 13-20, 41-47; Ex. 10 at 1-9. Though Samsung recently renewed its DivX license, Netflix is a holdout. Ex. 10 at 10-14.

DivX also offered new platforms for providing video over the internet. For example, in 2011, DivX Plus Streaming was introduced as a "secure adaptive streaming solution" that included "trick-play features such as smooth fast forward and rewind" and the "trusted digital rights management technology" used for other DivX movies. Ex. 11 at 2, 5. Hubee, "a major supplier of multi-screen entertainment solutions," selected DivX Plus Streaming in 2013 to use the "advanced adaptive streaming format to power digital entertainment delivery for new customer entertainment storefronts that are expected to launch in Europe," and had by that time already collaborated with Rovi (then owner of DivX) to provide Disney content for purchase and steaming. Ex. 11 at 8, 11. Companies, such as leading video streaming platform provider Roku, continue to recognize DivX's contributions and license DivX's technology. Ex. 11 at 13-15.

In the mid-2000s, Netflix was one of the companies that approached DivX to discuss using DivX's technology to power online video content delivery platforms.

Dkt. 1, ¶ 42.  Rather than purchasing DivX technology or seeking the right to use the DivX technology it needed, Netflix built its platform for internet video using technology that belongs to DivX.  The PTAB's decisions support the validity and importance of DivX's technology.  DivX's only recourse for the on-going harm to its reputation and business is in this Court.  The relationship between the parties favors lifting the stay.

### 5.    DivX Is Prejudiced If Its Claims Are Not Timely Resolved

The long pendency of the stay only increases the prejudice to DivX and accentuates the need to have these claims adjudicated timely.  Courts have recognized that continuing a stay—including during an appeal of an IPR—would "'unduly prejudice [the plaintiff] and unfairly advantage [the defendant].'"  *Milwaukee Elec. Tool*, 2016 WL 7495808, at *3 (alterations in original, quoting *ZOLL Med. Corp. v. Respironics, Inc.*, Case No. 12-1778-LPS, 2015 WL 4126741, at *1 (D. Del. July 8, 2015)).  One court found that "[i]n light of its obligation to ensure the expeditious resolution of this case, *see* Fed. R. Civ. P. 1, the Court finds that the stay in the Related Cases has outlived its usefulness." *Id.*  A court in this district similarly found its "obligation to manage its docket to ensure that cases are resolved in a timely manner" and the passage of time—in that case the years since the case was filed—without the court being "able to weigh in on the merits of its claims" also weighed in favor of lifting a stay.  Ex. 3, *Lund*, slip op. 6.

In this case, multiple consumer electronics companies have recognized the value of DivX's technology and taken licenses, including while this case was pending, but Netflix has refused, and other smaller, streaming video companies are following suit.  As DivX's CEO Brian Way recently stated following Samsung's and LG's decisions to license DivX patents,  "When other companies use our technology without authorization, including some of the largest companies in the world, our ability to protect our investment for both DivX and DivX's licensees . . . is significantly

impacted by their unauthorized use."[4]  Ex. 10 at 3.  DivX has reached out to eight other companies offering streaming media services, and, despite diligent efforts, has not been able to enter license agreements with them.[5]  This prejudice to DivX if it is unable to timely litigate its claims weighs in favor of lifting the stay.

Continuing this stay pending the highly speculative results of multiple Federal Circuit appeals, and perhaps even more speculative and irrelevant results of recently filed IPR petitions on patents that are not even a part of this case, would unfairly prejudice DivX and unfairly provide tactical advantage to Netflix.  As another Court in this district recognized, in co-pending cases with only certain patents in common, allowing a party to benefit from a stay who did not join in the filing of the IPRs and had not agreed to be bound by their result would unfairly delay the adjudication of the plaintiff's rights. *Document Sec. Sys. v. Seoul Semiconductor Co.*, No. SACV 17-00981 JVS(JCGx), 2018 WL 10670109, at *3 (C.D. Cal. Mar. 26, 2018).  More so here.  In *Document Security Systems*, the parties who did not join in the IPRs and were not bound by their results were nevertheless accused of infringing those same patents.  Here, the only patents in common between the cases are already clear of IPRs, and the only patents potentially subject to IPR at all are not even asserted against Netflix.  Thus, the prejudice of allowing Netflix to benefit from a stay on patents that are not even asserted against it in the first place is even greater.

### D.   The Totality Of The Circumstances Favors Lifting The Stay

There is no reason the patents in the *Netflix* case should not be allowed to proceed on the merits.  The IPRs on all patents in this case are complete.  ***All*** patents

---

[4] Samsung and LG entered a license "a week before the evidentiary hearing" in the ITC, and after LG and Samsung "lost the bulk of claim construction" and "lost a bid for summary determination of noninfringement."  Ex. 10 at 3. This confirms the best way to resolve this dispute is to allow the case to progress in this Court.

[5] If the Court requires additional information, DivX will seek permission from the third parties to provide additional details of these negotiations under seal.

with instituted IPRs have survived and need to be litigated here.  Continuing the stay will not simplify this case.  Any possibility of subsequent appeals changing the results of those IPRs is highly speculative, is extremely improbable, and cannot justify the certain and lengthy additional delay that a stay would cause.  DivX's claims against Netflix have been pending for over two and a half years, and much of that time they have been stayed.  *Netflix*, Dkts. 1, 106.  There will be continuing harm to DivX if its claims are not adjudicated on the merits despite the resolution of all IPRs.  This case is ready to proceed on the merits.

Any simplification of this case has already been achieved by the stay.   The Courts should be open to all litigants to have their disputes heard on the merits, and all litigants should be given a "just, speedy, and inexpensive determination of every action and proceeding" pursuant to Federal Rule of Civil Procedure 1.   Neither appeals seeking to change IPR results nor the infringement of different DivX patents by a party other than Netflix is a basis to preclude adjudication of DivX's rights against Netflix. It would be particularly unfair to penalize DivX for seeking the Court's assistance in a new matter against a different party by denying that very assistance to DivX on its earlier-filed claims.  If there is "even a fair possibility that the stay . . . will work damage to someone else," the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward."  Ex. 2, *Game and Tech*., slip op. 3.  There is no harm or inequity to Netflix if the stay is lifted and this case now proceeds after this already lengthy stay.  As a court in this district observed, "[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts." Ex. 2, *Game and Tech*., slip op. 3.  But in this case, DivX would not even be allowed to start.  The totality of the circumstances weighs in favor of lifting the stay.

## V.   CONCLUSION

The IPRs on the patents asserted in this case are over.  Not a single patent has been eliminated from this litigation.  There is no simplification to be gained from

continuing the stay, but the prejudice from a stay to DivX is material.  This case is ready to proceed now on the merits in this Court.  DivX respectfully requests that the Court lift the stay.

Dated: January 8, 2022

Respectfully submitted,

 */s/  Matthew D. Powers*
Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich (Bar No. 228543)
paul.ehrlich@tensegritylawgroup.com
William P. Nelson (Bar No. 196091)
william.nelson@tensegritylawgroup.com
Natasha M. Saputo (Bar No. 291151)
natasha.saputo@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:   (650) 802-6000
Facsimile:    (650) 802-6001
DivX_Netflix_Service@tensegritylawgroup.com

Azra M. Hadzimehmedovic (Bar No. 239088)
azra@tensegritylawgroup.com
Aaron M. Nathan (Bar No. 251316)
aaron.nathan@tensegritylawgroup.com
Samantha A. Jameson (Bar No. 296411)
samantha.jameson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA 22102
Telephone:   (703) 940-5033
Facsimile:    (650) 802-6001
DivX_Netflix_Service@tensegritylawgroup.com

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone:  (949) 752-7100
Facsimile:   (949) 252-1514

*Attorneys for Plaintiff*
*DivX, LLC*