**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
David Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Andrew Holmes (Bar No. 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100

Brian Biddinger (Bar No. 224604)
brianbiddinger@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant and Counterclaimant
Netflix, Inc.*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> NETFLIX, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:19-cv-01602-PSG(DFMx) <br><br> **NETFLIX, INC.'S OPPOSITION TO PLAINTIFF DIVX, LLC'S MOTION TO LIFT STAY AND REOPEN CASE** |
| NETFLIX, INC., a Delaware corporation, <br><br> Counterclaimant, <br><br> v. <br><br> DIVX, LLC, a Delaware limited liability company, <br><br> Counterclaim-Defendant. | Hearing Date: February 25, 2022 <br> Time: 1:30 pm <br> Courtroom: 6A <br> Judge: Hon. Philip S. Gutierrez |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   BACKGROUND ................................................................................... 1

    A.    This Case Is Still in Its Early Stages ........................................... 1

    B.    Netflix Has Appealed The Validity of Six of the Asserted Patents........ 2

    C.    The ITC's Initial Determination of the Validity of Two of the Asserted Claims of the '486 Patent is Expected by the End of March 2022 ................................................................................... 3

III.  LEGAL STANDARD ........................................................................... 3

IV.   ARGUMENT ....................................................................................... 4

    A.    The Early Stage of This Case Favors Continuing the Stay ................... 4

    B.    The Ongoing Federal Circuit Appeals and ITC Investigation Will Likely Further Simplify This Case ................................................. 7

    C.    DivX Will Not Be Prejudiced By a Continued Stay............................ 16

    D.    The Totality of the Circumstances Favors Continuing the Stay........... 21

V.    CONCLUSION ................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

***Cases***

*Andrea Elecs. Corp. v. Apple Inc.,*
   No. 16-CV-5220 (SIL), 2019 WL 3712120
   (E.D.N.Y. Aug. 6, 2019) ...................................................................4, 5, 8, 22

*Baxter Healthcare Corp. v. Becton, Dickinson & Co.,*
   No. 3:17-CV-2186 JLS-RBB, 2021 WL 22553
   (S.D. Cal. Jan. 4, 2021) ..................................................4, 6, 8, 14, 16, 17, 22

*Boston Sci. Corp. v. Cook Grp. Inc.,*
   No. 1:17-cv-03448-JRS-MJD, 2019 WL 2511162
   (S.D. Ind. June 17, 2019)........................................................6, 9, 14, 16

*CMax, Inc. v. Hall,*
   300 F.2d 265 (9th Cir. 1962) ...........................................................23

*Cypress Semiconductor Corp. v. GSI Tech, Inc.,*
   No. CV 13-2013 JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014)..............21

*DivX, LLC v. Hulu, LLC,*
   No. 2:21-cv-01615 PSG (DFMx) (C.D. Cal.) ("Hulu I") ..........................2, 17

*E.Digital Corp. v. Dropcam, Inc.,*
   No. 14-CV-04922-JST, 2016 WL 658033
   (N.D. Cal. Feb. 18, 2016) ...................................................18, 20, 21

*Game and Tech. Co. v. Blizzard Entm't, Inc.,*
   No. CV 16-06499-BRO(SK) (C.D. Cal. May 15, 2017) .......................5, 6, 23

*Ho Keung Tse v. Apple, Inc.,*
   No. C 06-06573 SBA, 2013 WL 5302587 (N.D. Cal. Sept. 19, 2013)............3

*Ioengine, LLC v. Paypal Holdings, Inc.,*
   No. 18-452-WCB, 2020 WL 6270776 (D. Del. Oct. 26, 2020)............5, 14, 15

*Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.,*
   No. CV 19-4047 PSG(MAAx), 2020 WL 5079051
   (C.D. Cal. June 17, 2020)......................................................13, 18

*Lodge Mfg. Co. v. Gibson Overseas, Inc.,*
   No. CV 18-8085 PSG(GJSx), 2019 WL 9443180
   (C.D. Cal. Sept. 24, 2019) ...............................................20, 21, 22

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.,*
   No. SACV 17-01914-CJC-JPR (C.D. Cal. May 13, 2020).................6, 15, 20

*Magseis FF LLC v. Seabed Geosolutions, Inc.,*
   2020 WL 1429338 (S.D. Tex. Mar. 19, 2020) ......................4, 6, 8, 9, 19, 22

*Masterobjects, Inc. v. eBay, Inc.,*
   No. 16-cv-06824-JSW, 2018 WL 11353751 (N.D. Cal. Nov. 7, 2018) ...14, 15

*Medtronic, Inc. v. Axonics Modulation Techs., Inc.*,
   No. SA CV 19-02115-DOCJ-DE, 2020 WL 5087820
   (C.D. Cal. May 8, 2020) ................................................................. 4

*Medtronic, Inc. v. Axonics Modulation Techs., Inc.*,
   No. SA CV 19-02115-DOC-JDE (C.D. Cal. Oct. 21, 2021) ......................... 15

*Milwaukee Elec. Tool Corp. v. Hilti, Inc.*,
   No. 14-CV-1288-JPS, 2016 WL 7495808 (E.D. Wis. Dec. 30, 2016) ..... 14, 20

*Netflix, Inc. v. DivX LLC*,
   IPR2020-00052, Paper 82 (PTAB Apr. 22, 2021) ........................................ 10

*Netflix, Inc. v. DivX LLC*,
   IPR2020-00511, Paper 44 (PTAB Aug,. 13, 2021) ..................................... 11

*Netflix, Inc. v. DivX LLC*,
   IPR2020-00558, Paper 50 (PTAB Aug. 23, 2021) ....................................... 12

*Netflix, Inc. v. DivX LLC*,
   No. 2021-1931 (Fed. Cir. Sept. 20, 2021) ................................................... 10

*Netflix, Inc. v. DivX LLC*,
   No. 2022-1043 (Fed. Cir. Oct. 13, 2021) ..................................................... 11

*Netflix, Inc. v. DivX LLC*,
   No. 2022-1083 (Fed. Cir. Oct. 25, 2021) ..................................................... 12

*Netflix, Inc. v. DivX LLC*,
   No. 2022-1138 (Fed. Cir. Nov. 10, 2021) .................................................... 11

*Netflix, Inc. v. DivX LLC*,
   IPR2020-0614, Paper 68  (PTAB Dec. 15, 2021) .......................................... 2

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
   No. 6:11cv492, 2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ..................... 15

*PersonalWeb Techs., LLC v. Apple Inc.*,
   69 F. Supp. 3d 1022 (N.D. Cal. 2014) ......................................................... 19

*Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*,
   No. 3:17-CV-503-JD-MGG, 2017 WL 6947786
   (N.D. Ind. Sept. 22, 2017) ................................................................. 9, 12, 14

*Realtime Data LLC v. Silver Peak Sys., Inc.*,
   No. 17-cv-02373-PJH, 2018 WL 3744223
   (N.D. Cal. Aug. 7, 2018) .................................................. 5, 8, 16, 17, 18, 20, 22

*Safe Storage LLC v. Dell Inc.*,
   No. 12-1624-GMS, 2016 WL 11689536 (D. Del. Mar. 11, 2016) ......... 5, 8, 22

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
   No. 5:18-cv-00356 AB(SPx) (C.D. Cal. Nov. 2, 2020) ................ 8, 10, 16, 22

*Software Rts. Archive, LLC v. Facebook, Inc.*,
    No. C-12-3970 RMW, 2013 WL 5225522
    (N.D. Cal. Sept. 17, 2013) ....................................................................17, 18, 21

*Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*,
    No. 16-CV-4236(AJN), 2016 WL 6094114
    (S.D.N.Y. Oct. 18, 2016)..........................................................................9, 19, 22

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ........................................................................ 13

*Willis Elec. Co. v. Polygroup Ltd.*,
    No. 15-cv-3443-WMW-KMM, 2018 WL 7690327
    (D. Minn. Apr. 24, 2018)................................................................8, 16, 18, 22

**Statutory Authorities**

35 U.S.C. § 101 ...............................................................................................17

**Rules and Regulations**

19 C.F.R. § 210.42(h)(2) .............................................................................3, 13

Fed. R. Civ. P. 1 ...............................................................................................24

**Additional Authorities**

*Certain Video Processing Devices, Components Thereof, and Digital Smart
    Televisions Containing the Same*, Inv. No. 337-TA-1222, USITC Pub.
    719260 (Sept. 10, 2020) ....................................................................................3

*Certain Video Processing Devices*, Inv. No. 337-TA-1222, USITC Pub.
    748359 (July 30, 2021)......................................................................................3

*Certain Video Processing Devices*, Inv. No. 337-TA-1222, USITC Pub. 757811
    (Dec. 3, 2020)....................................................................................................3

*The Compendium of Federal Circuit Decisions*, Univ. of Iowa,
    https://fedcircuit.shinyapps.io/federalcompendium (last visited Jan. 25, 2022).

United States District Court for the Central District of California, Press Release:
    Further Measures Taken in Response to COVID-19 Pandemic (April 13,
    2020), available at https://www.cacd.uscourts.gov/news/further-measures-
    taken-response-covid-19-pandemic .................................................................7

United States District Court for the Central District of California, Notice from the
    Clerk: Resumption of Normal Operations in the Central District (June 11,
    2021), available at https://www.cacd.uscourts.gov/news/resumption-normal-
    operations-central-district........................................................................7

United States District Court for the Central District of California, Notice from the Clerk: Temporary Suspension of Jury Trials (January 3, 2021), available at https://www.cacd.uscourts.gov/news/temporary-suspension-jury-trials .......... 7

United States District Court for the Central District of California, Notice from the Clerk: Extension of the Temporary Suspension of Jury Trials (January 3, 2021), available at https://www.cacd.uscourts.gov/news/extension-temporary-suspension-jury-trials ...................................................................................... 7

https://insight.rpxcorp.com/news/8671?utm_source=Mondaq&utm_medium=syndication&utm_campaign=inter-article-link.......................................................... 17

https://www.divx.com/press/neulion-enters-into-purchase-agreement-with-an-affiliate-of-fortress-investment-group-to-sell-certain-divx-assets-intellectual-property-and-subsidiaries-for-cash-consideration-of-41-5-million/ ............... 17

## I.    INTRODUCTION

DivX's motion to lift the stay should be denied because continuing the stay will streamline the case, promote judicial economy, and prevent inconsistent rulings between this Court and those from parallel proceedings before the Federal Circuit and the International Trade Commission.  All three stay factors, which courts weigh equally, and the totality of the circumstances weigh in favor of continuing the stay until the Federal Circuit issues its rulings on Netflix's appeals of the PTAB's IPR decisions. *First*, there is no dispute this case remains in the early stages, with significantly more work to do ahead for the Court and the parties than what has already been done.  While DivX argues that "courts typically do not give significant weight to this factor" in this context (Mot. at 4), the case law—including the case that DivX relies on—actually shows that courts give this factor the same weight as the other two factors.  *Second*, Netflix's appeals of the IPR decisions raise key issues related to claim construction and the validity of asserted claims and are thus likely to materially streamline this case—regardless of their ultimate outcome.  *Third*, DivX has not shown (and cannot show) that it will suffer undue prejudice if the stay is left in place pending appeals.  The parties are undisputedly not competitors.  Any delay can be compensated by monetary damages and there is no risk of competitive injury.  The only prejudice DivX has pointed to is delay, but the law is clear—delay alone is not sufficient to show undue prejudice.  The relevant factors and the totality of the circumstances in this case strongly favors continuing the stay.

## II.    BACKGROUND

### A.    This Case Is Still in Its Early Stages

On March 5, 2019, DivX filed this case against Netflix alleging infringement of the Asserted Patents.[1]  Dkt. 1.  After the Court partially granted Netflix's motion to

---

[1]  The Asserted Patents consist of U.S. Patent Nos. 7,295,673 (the "'673 patent"), 8,139,651 (the "'651 patent"), 8,472,792 (the "'792 patent"), 9,814,920 (the "'920

dismiss infringement claims for five of the Asserted Patents, DivX filed its First Amended Complaint ("FAC") on August 21, 2019. Dkt. 60. Netflix filed an answer and counterclaims on December 5, 2019. Dkt. 76. Netflix moved to stay this case pending *inter partes* review of seven of the Asserted Patents on March 13, 2020. Dkt. 94. When the Court granted Netflix's motion to stay, the parties had served opening sets of written discovery and responses, there had been limited document production, no depositions had been scheduled, and the parties had not yet exchanged proposed claim constructions. Yang Decl. ¶¶ 3-6. As the Court noted, the case was in the "early stages" and there was "significantly more work left to be done in this case compared to work that has already been completed[.]" Dkt. 106 at 4.

**B. Netflix Has Appealed The Validity of Six of the Asserted Patents**

The PTAB issued the last Final Written Decision ("FWD") on December 15, 2021. *Netflix, Inc. v. DivX LLC*, IPR2020-0614, Paper 68 (PTAB Dec. 15, 2021). Netflix has appealed six of the FWDs to the Federal Circuit. The following chart summarizes, for each appeal, the filing date, asserted patent, asserted claims at issue, and status:

| Docket No. | Filing Date | Patent | Asserted Claims | Status |
|---|---|---|---|---|
| 2021-1931 | 4/30/21 | 8,139,651 | 1, 2, 19 | Opening and response briefs filed; reply brief due 2/24/22 |
| 2022-1043 | 10/12/21 | 9,184,920 | 1, 3, 5 | Opening brief due 2/22/22 |
| 2022-1083 | 10/22/21 | 10,225,588 | 1, 13, 16 | Opening brief due 2/25/22 |
| 2022-1138 | 11/8/21 | 8,472,792 | 1, 9, 15, 22 | Opening brief due 2/19/22 |
| 2022-1203 | 11/24/21 | 9,270,720 | 1, 2, 4, 5 | Opening brief due 3/11/22 |
| 2022-1204 | 11/24/21 | 9,998,515 | 1 | Opening brief due 3/11/22 |

*See* Yang Decl. ¶ 7. In addition to these appeals, DivX's Notice of Appeal regarding the FWD invalidating all fifteen challenged claims of the '673 patent (if it chooses to

patent"), 9,270,720 (the "'720 patent"), 9,998,515 (the "'515 patent"), 10,212,486 (the "'486 patent"), 10,225,588 (the "'588 patent"). DivX has also asserted all of the Asserted Patents except the '920 patent against Hulu, LLC in a related action: *DivX, LLC v. Hulu, LLC*, No. 2:21-cv-01615 PSG (DFMx) (C.D. Cal.) ("Hulu I").

1  appeal) is due on February 18, 2022.  *Id.* ¶ 8.

2  ### C.  The ITC's Initial Determination of the Validity of Two of the Asserted Claims of the '486 Patent is Expected by the End of March 2022

4  In September 2020, DivX filed a complaint at the International Trade

5  Commission against various third parties asserting infringement of the '486 patent—the

6  one asserted patent not challenged by Netflix in an IPR.  Ex. 1, Complaint, *Certain*

7  *Video Processing Devices, Components Thereof, and Digital Smart Televisions*

8  *Containing the Same*, Inv. No. 337-TA-1222, USITC Pub. 719260 (Sept. 10, 2020).

9  From July 7-15, 2021, the ALJ held a hearing to address the validity of claims 1 and 8

10  of the '486 patent, which were also asserted here.  *See* Ex. 2, TCL Resp'ts' Initial Post-

11  Hr'g Br. at 2, 23-42, *Certain Video Processing Devices*, Inv. No. 337-TA-1222, USITC

12  Pub. 748359 (July 30, 2021); Dkt. 125-6 at 2.

13  The ALJ expects to issue an initial determination regarding the validity of these

14  two claims by March 29, 2022.  Ex. 3, Order No. 71, *Certain Video Processing*

15  *Devices*, Inv. No. 337-TA-1222, USITC Pub. 757811 (Dec. 3, 2020).  Unless the ITC

16  orders a review within 60 days, the initial determination will become final by May 28,

17  2022.  *See* 19 C.F.R. § 210.42(h)(2) ("An initial determination . . . shall become the

18  determination of the Commission 60 days after the date of service of the initial

19  determination, unless the Commission within 60 days after the date of such service

20  shall have ordered review of the initial determination or certain issues therein[.]").

21  Furthermore, the ALJ has set a target date of July 29, 2022 for the completion of that

22  investigation.  Ex. 3.

23  ## III.  LEGAL STANDARD

24  A district court that imposes a stay of litigation has discretion in whether to lift

25  that stay.  *Ho Keung Tse v. Apple, Inc.*, No. C 06-06573 SBA, 2013 WL 5302587, at *2

26  (N.D. Cal. Sept. 19, 2013).  "When determining whether to lift a stay, the court

27  analyzes the same three-factor test which informed whether the stay was appropriate in

28  the first place[.]"  *Baxter Healthcare Corp. v. Becton, Dickinson & Co.*, No. 3:17-CV-

2186 JLS-RBB, 2021 WL 22553, at *2 (S.D. Cal. Jan. 4, 2021).  Those three factors are: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."  *Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, No. SA CV 19-02115-DOCJ-DE, 2020 WL 5087820, at *1 (C.D. Cal. May 8, 2020) (internal quotation marks omitted).  "The three factors are not exhaustive, however, as the decision whether to order a stay must be based on the totality of the circumstances." *Id.* (internal quotation marks omitted).  "While case law supplies these general considerations, the Court ultimately must decide whether to issue a stay on a case-by-case basis." *E. Digital v. Dropcam, Inc.*, No. 14-CV-04922-JST, 2016 WL 658033, at *2 (N.D. Cal. Feb. 18, 2016).

## IV.  ARGUMENT

### A.  The Early Stage of This Case Favors Continuing the Stay

The Court granted the motion to stay in part because this case was in its "early stages," the claim construction hearing was more than three months away, and "[l]imited discovery ha[d] occurred." *See* Dkt. 106 at 4.  As the Court reasoned, "[t]here is significantly more work left to be done in this case compared to work that has already been completed, and [DivX] does not reasonably dispute that fact." *Id.* The situation has not changed.  Thus, this factor weighs in favor of continuing the stay.

DivX downplays the importance of this factor by asserting that "courts typically do not give significant weight to this factor when considering whether to extend an already lengthy stay."  Mot. at 4.  Not so.  Courts around the country consider this factor when deciding whether to lift a stay and regularly find that it weighs in favor of maintaining a stay.  *See, e.g.*, *Baxter*, 2021 WL 22553, at *3 (denying motion to lift stay pending IPR appeals, finding that "the first factor disfavors lifting the stay as this case is still in the early stages"); *Magseis FF LLC v. Seabed Geosolutions (US) Inc.*, No. H-17-1458, 2020 WL 1429338, at *3 (S.D. Tex. Mar. 19, 2020) (denying motion

for reconsideration of denial of request to lift stay pending IPR appeals, finding that the case "remain[ing] in the very early stages . . . weighs in favor of continuing the stay"); *Andrea Elecs. Corp. v. Apple Inc.*, No. 16-CV-5220 (JMA) (SIL), 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019) (denying motion to lift stay pending IPR appeal, finding that the case was "stayed in its infancy" and that since defendant "merely requests to continue the status quo . . . [this] weighs in favor of continuing the stay"); *Realtime Data LLC v. Silver Peak Sys., Inc.*, No. 17-cv-02373-PJH, 2018 WL 3744223, at *2 (N.D. Cal. Aug. 7, 2018) (denying motion to lift stay pending IPR appeals, finding that "the litigation is still in an early phase" supports continuing the stay); *Safe Storage LLC v. Dell Inc.*, No. 12-1624-GMS, 2016 WL 11689536, at *2 n.1 (D. Del. Mar. 11, 2016) (denying motion to lift stay pending IPR appeal, finding that "the early stage of litigation favors entering a stay").

DivX cites to *Ioengine* and *Game and Tech.* as support for its claim that courts either disregard this factor in deciding whether to lift a stay or that the stage of this case favors lifting the stay. Mot. at 5. But neither supports its claim. In *Ioengine*, the court recognized that "proceedings in th[e] court have been frozen" and thus this factor was "unchanged." *Ioengine, LLC v. Paypal Holdings, Inc.*, No. 18-452-WCB, 2020 WL 6270776, at *2 (D. Del. Oct. 26, 2020). Nevertheless, the court balanced all three factors to "conclude that the stay should be lifted[.]" *Id.* at *7. In doing so, the court did not disregard this factor, but simply found that the other two factors outweighed it in favor of lifting the stay, which is not the case here. *See id.* In *Game and Tech.*, the court noted the parties had already engaged in significant claim construction by identifying claim terms to be construed and exchanging initial claim constructions (which distinguishes it from this case), but ultimately found this factor as "neutral." *See Game and Tech. Co. v. Blizzard Entm't, Inc.*, No. CV 16-06499-BRO (SK), slip op. at 2 (C.D. Cal. May 15, 2017). Because DivX and Netflix have not yet exchanged proposed claim constructions in this case (*see* Yang Decl. ¶ 6), this factor is not neutral

1   under *Game and Tech* and instead favors continuing the stay.[2]

2       DivX argues that when this case was stayed, less than a year remained until the

3   trial date and that "[t]he prospect of an expeditious trial date should favor lifting the

4   stay." Mot. at 5. But DivX offers no support for this argument. *See id.* DivX

5   overlooks the impact of the ongoing COVID-19 pandemic to the Court's calendar, a

6   reality that this Court already noted in granting the stay and one that, unfortunately,

7   remains. *See* Dkt. 106 at 5. Indeed, civil jury trials in this district were suspended

8   around April 2020 and did not resume until after June 15, 2021. *See* United States

9   District Court for the Central District of California, Press Release: Further Measures

10  Taken in Response to COVID-19 Pandemic (April 13, 2020), available at

11  https://www.cacd.uscourts.gov/news/further-measures-taken-response-covid-19-

12  pandemic; United States District Court for the Central District of California, Notice

13  from the Clerk: Resumption of Normal Operations in the Central District (June 11,

14  2021), available at https://www.cacd.uscourts.gov/news/resumption-normal-operations-

15  central-district. And due to the spread of the Omicron variant, the Court has recently

16  suspended civil jury trials from January 3, 2022 through February 28, 2022. *See* United

17  States District Court for the Central District of California, Notice from the Clerk:

18  Temporary Suspension of Jury Trials (January 3, 2021), available at

19  https://www.cacd.uscourts.gov/news/temporary-suspension-jury-trials; United States

20  District Court for the Central District of California, Notice from the Clerk: Extension of

21  the Temporary Suspension of Jury Trials (January 3, 2021), available at

22  https://www.cacd.uscourts.gov/news/extension-temporary-suspension-jury-trials.

23      Given the COVID-related backlog and remaining uncertainty for the resumption

24  of jury trials, and the significant amount of work that remains to do be done in this case

25  _____

26      [2] In *Lund*—another case relied on by DivX—trial was less than eight months away
    when the defendant moved to stay the case pending IPR. *See Lund Motion Prods., Inc.*
27  *v. T-Max Hangzhou Tech. Co.*, No. SACV 17-01914-CJC-JPR, Scheduling Order Dkt.
    29 at 1 (C.D. Cal. May 13, 2020).
28

before it is ready for trial—including claim construction, the majority of fact discovery, expert discovery, dispositive motions, and pretrial motions—it is unrealistic that trial will occur in less than twelve months if the stay is lifted now.  Moreover, as discussed in more detail in Section IV.B., given the direct impact the Federal Circuit decisions in the IPR appeals will have on key issues in this case and the likely timing of those decisions, there is likely to be additional discovery or motion practice that will need to occur as a result of those decisions.  Given that it is highly unlikely this case will be able to proceed to trial in a year if the stay is lifted now, this factor weighs in favor of continuing the stay.

### B.   The Ongoing Federal Circuit Appeals and ITC Investigation Will Likely Further Simplify This Case

DivX mistakenly alleges that "any simplification of this case has already been achieved by the stay."  Mot. at 16.  In 2020, this factor favored a stay because asserted claims could be invalidated and claim construction issues resolved through the IPR process.  That remains true.  For each of the six patents, the PTAB found that the vast majority of the claim limitations already existed in the prior art.  The PTAB, however, incorrectly found (i) a handful of limitations to be missing in the prior art, and (ii) for the '588 patent, that although a person of ordinary skill in the art would have been motivated to combine the prior art, a POSITA would not have had a reasonable expectation of success in combining the prior art to arrive at the claimed inventions. *See* Ex. 4, *Netflix, Inc. v. DivX LLC*, IPR2020-00558, Paper 50 at 16-28 (PTAB Aug. 23, 2021).  The Federal Circuit will hear these issues, and Netflix continues to maintain that, under a proper understanding of the prior art, these six patents are invalid.

Continuing a stay is warranted here because, as demonstrated below, "[t]he appeals involve claim construction and patentability issues that will bind this Court" and likely simplify this case. *Sleep Number Corp. v. Sizewise Rentals, LLC*, No. 5:18-cv-00356 AB (SPx), slip op. at 1 (C.D. Cal. Nov. 2, 2020) (denying request to lift stay where the PTAB found some claims patentable and IPR decisions were appealed); *see*

*also Baxter*, 2021 WL 22553, at *3 (denying motion to lift stay because "the Federal Circuit's de novo review of the PTAB's claim constructions of the patents-in-suit may also provide guidance that will further simplify the issues before this Court"); *Magseis*, 2020 WL 1429338, at *2 (denying motion for reconsideration of denial of request to lift stay because "[a] decision by the Federal Circuit on the proper construction of the disputed terms will likely simplify construction of the disputed claim terms"); *Andrea Elecs. Corp.*, 2019 WL 3712120, at *2 (E.D.N.Y. Aug. 6, 2019) (acknowledging in denial of motion to lift stay that "the Federal Circuit's opinion, even if upholds the PTAB decision, will clarify the definition of . . . a claim term"); *Realtime*, 2018 WL 3744223, at *2 (denying motion to lift stay pending IPR appeals, finding that "the pending appeals . . . could clarify and simplify the issues for trial"); *Willis Elec. Co. v. Polygroup Ltd.*, No. 15-cv-3443-WMW-KMM, 2018 WL 7690327, at *1 (D. Minn. Apr. 24, 2018) (denying motion to lift stay because "[w]aiting to begin this litigation until the Federal Circuit resolves the appeal will be useful in simplifying and narrowing the issues"); *Safe Storage*, 2016 WL 11689536, at *2 n.1 (denying motion to lift stay pending IPR appeals, finding that "the Federal Circuit's final adjudication on the IPR appeals will simplify the issues for trial").

No matter how the Federal Circuit rules in the appeals here, "a decision in favor of either side is likely to carry at least some streamlining benefits for this action, whether because causes of action are reduced in their scope or foreclosed entirely or because the contours of the infringement inquiry are sharpened by the Federal Circuit's application of its recent claim construction to prior art." *Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236 (AJN), 2016 WL 6094114, at *3 (S.D.N.Y. Oct. 18, 2016) (granting motion to stay pending resolution of Federal Circuit appeals of IPR decisions). Specifically, the court in *Straight Path* noted that "[i]f, for example, [the plaintiff] prevails in the appeal, then the Circuit's analysis in distinguishing the challenged claims from prior art may well shed considerable light on whether Defendants' products infringed the Patents-in-Suit." *Id.*

The Federal Circuit will address claim construction and the invalidity of the asserted patents, and maintaining "a stay would help this Court avoid highly undesirable inconsistent legal rulings." *Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*, No. 3:17-CV-503-JD-MGG, 2017 WL 6947786, at *4 (N.D. Ind. Sept. 22, 2017) (granting motion to stay pending resolution of IPR appeals because "any decisions—particularly related to claim construction—this Court might reach during the pendency of Defendant's appeal to the Federal Circuit could end up in variance with the Federal Circuit's ruling"); *Magseis*, 2020 WL 1429338, at *2 (denying motion for reconsideration of denial of request to lift stay pending "[a] decision by the Federal Circuit on the proper construction of the disputed terms will . . . avoid the potential for inconsistent rulings"); *Boston Sci. Corp. v. Cook Grp. Inc.*, No. 1:17-cv-03448-JRS-MJD, 2019 WL 2511162, at *3 (S.D. Ind. June 17, 2019) (denying motion to lift stay pending IPR appeals, finding that "[t]he opportunity to simplify issues and the scope of the proceedings will streamline the litigation process and avoid duplicative proceedings, saving the Court resources . . . weighs heavily in favor of maintaining the stay").

Here, the appeals will streamline this case regardless of their ultimate conclusions. For example, the Federal Circuit's decision on the appeal regarding the '651 patent involves the proper construction of a claim term, which "will bind this Court," and affects every asserted claim of the patent. *See Sleep Number Corp.*, No. 5:18-cv-00356 AB (SPx), slip op. at 1 (C.D. Cal. Nov. 2, 2020). A key issue on appeal is whether the PTAB erred in the FWD by "requir[ing] 'level of detail' to 'reflect variations *between* adjacent pixels' instead of being 'driven by the difference between pixel values *across* the entire region being evaluated.'" Ex. 5, Br. of Appellants at 26, *Netflix, Inc. v. DivX LLC*, No. 2021-1931 (Fed. Cir. Sept. 20, 2021), ECF No. 14 (emphasis in original). The PTAB's construction of "level of detail" was critical to its decision finding that the prior art cited by Netflix in the IPR did not anticipate or render the challenged claims of the '651 patent obvious, including asserted claims 1, 2, and 19.

*See* Ex. 6, *Netflix, Inc. v. DivX LLC*, IPR2020-00052, Paper 82 at 25-31, 37-43 (PTAB Apr. 22, 2021).  If the Federal Circuit reverses the PTAB's construction of "level of detail," the asserted claims of the '651 patent would be invalidated.  And even if the Federal Circuit affirms the PTAB's construction, the Federal Circuit's opinion will help clarify the scope of the asserted claims by conclusively defining a claim term that is found in each of the asserted claims of the '651 patent.  Indeed, the Federal Circuit's decision will not only resolve an open issue of claim construction, but it will also tailor this case in a variety of other ways, including clarifying the reasonableness and effectiveness of any efforts to design around the '651 patent and the availability of non-infringing alternatives.

The appeal of the '920 patent, as another example, addresses whether the PTAB erred in construing a claim limitation that also appears in each asserted claim.  A key issue on appeal is whether the PTAB erred in its construction of the limitation "obtaining ***encrypted content*** using a playback device, ***where the content includes frames of video and at least a portion of a plurality of frames of video are encrypted*** using at least one frame encryption key."  Ex. 7, Pet'r Notice of Appeal at 3, *Netflix, Inc. v. DivX LLC*, No. 2022-1043 (Fed. Cir. Oct. 13, 2021) (emphasis added), ECF No. 1-2. In the decision, the PTAB implicitly construed this limitation to require obtaining an entire encrypted frame before playback or decryption, even though the claim language imposes no such requirement.  *See* Ex. 8, *Netflix, Inc. v. DivX LLC*, IPR2020-00511, Paper 46 at 32, 37, 44-45 (PTAB Aug,. 13, 2021).  Here, the claim language only requires obtaining content that includes, without limitation, frames of video, a portion of which are encrypted.  *See* '920 patent col. 16 ll. 58-61.  It does not mention, let alone require, an entire frame to be obtained or assembled before playback or decryption begins.  Yet, the PTAB erroneously limited the definition of "content" to mean only whole frames.  *Id.*  The PTAB's interpretation was critical to its decision finding that the prior art cited by Netflix in the IPR did not anticipate or render obvious the challenged claims of the '920 patent obvious, including asserted claims 1, 3, and 5.

*Id.* Like the appeal regarding the '651 patent, if the Federal Circuit determines that the PTAB erred in its claim construction, the asserted claims of the '920 patent would be invalidated and thus streamline this case. And even if the Federal Circuit affirms the PTAB's construction, its opinion will clarify the scope of the '920 patent's asserted claims, which impacts all aspects of the case, including damages and non-infringing alternatives. In addition, the Federal Circuit's opinion will likely shed light on whether certain prior art systems disclose this limitation and can be combined with each other to render the asserted claims obvious.

For the '792 patent, the limited question before the Federal Circuit is whether a prior art reference cited by Netflix in the IPR—U.S. Patent No. 6,671,408 ("Kaku")—is "analogous art" to the '792 patent. Ex. 9, Pet'r Notice of Appeal at 3, *Netflix, Inc. v. DivX LLC*, No. 2022-1138 (Fed. Cir. Nov. 10, 2021), ECF No. 1-2. If so, then the PTAB's decision must be vacated and the matter remanded to determine if the combinations of Kaku and the other cited prior art render the challenged claims obvious. The Federal Circuit's ruling on this issue, whether affirming or reversing the PTAB's decision, will provide valuable guidance to the Court in this case when evaluating whether other prior art, including system prior art, is analogous art to the '792 patent.

For the appeal of the '588 patent, the PTAB erred in finding that Netflix did not sufficiently demonstrate that a POSITA would have had a reasonable expectation of success of combining the cited prior art. *See* Ex. 10, Pet'r Notice of Appeal at 3, *Netflix, Inc. v. DivX LLC*, No. 2022-1083 (Fed. Cir. Oct. 25, 2021), ECF No. 1-2. In its decision, the PTAB recognized that there was "ample motivation to combine" the prior art, but took the unusual position that a POSITA would not have had a reasonable expectation of success in combining the prior art to create the claimed inventions. *See* Ex. 4, *Netflix, Inc. v. DivX LLC*, IPR2020-00558, Paper 50 at 16-28 (PTAB Aug,. 23, 2021). If the Federal Circuit rules that the PTAB's finding was erroneous, then the decision must be vacated and remanded to address invalidity. The Federal Circuit's

ruling on this issue could also help the Court decide whether other prior art, including prior art systems, could be combined with each other to render the asserted claims obvious.

DivX's Notice of Appeal of the PTAB's decision invalidating all the challenged claims of the '673 patent is due February 18, 2022, and if it does appeal the decision, Netflix expects that a key issue in the appeal will be the PTAB's interpretation of the term "synchronized frame decryption stream," which appears in the asserted claims of the '673 patent. Again, the Federal Circuit's ruling on the interpretation of this term will help clarify the scope of the asserted claims and tailor this case—regardless of the appeal's ultimate outcome. On the other hand, "any decisions—particularly related to claim construction—this Court might reach during the pendency of Defendant's appeal to the Federal Circuit could end up in variance with the Federal Circuit's ruling." *Puget BioVentures*, 2017 WL 6947786, at *4.

Additionally, there is also an ongoing ITC investigation that will likely further simplify this case. In that investigation, the ALJ will issue an initial determination regarding the validity of claims 1 and 8 from the '486 patent in less than two months. *See supra* Section II.C. An initial determination invalidating a patent from the ITC becomes final after 60 days unless the ITC orders a review within 60 days. *See* 19 C.F.R. § 210.42(h)(2). Although ITC decisions are not binding on district courts, this Court "can attribute whatever preclusive effect to the prior art ITC decision as it considers justified." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). And if either DivX or the respondent TCL appeals the ITC's decision regarding claims 1 and 8 of the '486 patent to the Federal Circuit, the resulting decision could mean the invalidation of these two claims or clarify the scope of the claims, the scope of the prior art, and the availability of non-infringing alternatives.

DivX argues that the possibility of successful appeals are "speculative" because the "high affirmance rate of PTAB decisions by the Federal Circuit—well over 70%

affirmance on all issues,"[3] weighs in favor of lifting the stay.  Mot. at 8 (citing *Ioengine*, 2020 WL 6270776, at *3).  Courts have already rejected this argument.  For example, in *Baxter*, the plaintiff argued in support of lifting the stay by pointing to the Federal Circuit's "high affirmance rate of PTAB decisions" and how that made it "too speculative to justify a stay."  2021 WL 22553, at *3.  However, the court denied the motion, holding that "[a]lthough the Federal Circuit's affirmance of the PTAB decisions may be more statistically likely, this outcome is far from a foregone conclusion."  *Id.*  In *Boston Sci. Corp*, the plaintiff also argued that "reversal by the Federal Circuit is too 'remote' and 'speculative'" but the court rejected that argument.  2019 WL 2511162, at *3.  In *Puget BioVentures*, in continuing the stay, the court rejected the plaintiff's argument that simplification "is merely speculative" and held that "the benefits to this Court from any opinion the Federal Circuit might offer cannot be overstated in light of the Federal Circuit's unique expertise in the patent realm."  2017 WL 6947786, at *4.  Indeed, the possibility that Federal Circuit review could invalidate most of the asserted claims for six of the eight Asserted Patents (75%) makes this case distinguishable from *Jiaxing* (Mot. at 7), where "four of the six patents (67%) would never be subject to an IPR" and thus required the Court "to resolve all claims in dispute as to those patents."  Mot. at 7 (citing *Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*, No. CV 19-4047 PSG (MAAx), 2020 WL 5079051, at *3 (C.D. Cal. June 17, 2020)).

DivX cites to *Ioengine*, but that case does not apply here because the defendants

---

[3]   DivX's "over 70%" statistic is not an accurate reflection of Netflix's odds of success.  DivX relies on the affirmance of PTAB appeals filed by patent owners ***and*** patent challengers.  *See* Mot. at 8.  When the proper universe is considered—IPR appeals only by patent challengers—the rate of affirmance for the last two years drops to 61.5%.  *The Compendium of Federal Circuit Decisions*, Univ. of Iowa, https://fedcircuit.shinyapps.io/federalcompendium (last visited Feb. 4, 2022) (reviewing 109 appeals of IPR decisions initiated by patent challengers, 67 of which resulted in full affirmance).

there opposed lifting the stay even though there was no pending Federal Circuit appeal. 2020 WL 6270776, at *2. The other cases cited by DivX are also distinguishable. In *Masterobjects, Inc. v. eBay, Inc.*, No. 16-cv-06824-JSW, 2018 WL 11353751, at *2 (N.D. Cal. Nov. 7, 2018), the appeal did not involve a claim construction dispute and eBay merely "hope[d] that the Federal Circuit w[ould] issue additional claim construction." *Id.* In contrast, as explained above, at least two of Netflix's appeals expressly involve important issues of claim construction. Furthermore, unlike *Milwaukee Elec. Tool Corp. v. Hilti, Inc.*, No. 14-CV-1288-JPS, 2016 WL 7495808, at *2 (E.D. Wis. Dec. 30, 2016), where the defendants "d[id] not explain why the insight of the Federal Circuit would be substantially more helpful beyond the prospect of reversing the PTAB's ruling," Netflix has explained in detail how the Federal Circuit's rulings would be helpful to this Court regardless of their ultimate outcome. *Medtronic, Inc. v. Axonics Modulation Techs., Inc.*, No. SA CV 19-02115-DOC-JDE, slip op. at *2-3 (C.D. Cal. Oct. 21, 2021) and *Lund*, No. SACV 17-01914-CJC-JPR, slip op. at *6 (*see* Mot. at 8) are distinguishable for the same reason.

DivX also argues that "stays pending appeal subject plaintiffs to an 'open-ended period of delay'" and this weighs against a further stay. Mot. at 8-9. As an initial matter, as the cases DivX cites confirm, to the extent courts take this into consideration, it is with respect to factor three, not factor two. *See Ioengine*, 2020 WL 6270776, at *6 (discussing delay in the context of undue prejudice); *Masterobjects, Inc. v. eBay, Inc.*, No. 16-cv-06824-JSW, 2018 WL 11353751, at *3 (N.D. Cal. Nov. 7, 2018) (same). That, of course, makes sense. The length of an appeal of an IPR decision has no effect on whether its outcome will simplify the issues in the related district court action, and DivX has not offered any basis to suggest otherwise. And while the length of the ongoing appeals may be relevant to assessing prejudice, as discussed in Section IV.C. below, continuing the stay would not unduly prejudice DivX.

DivX further argues that "Congress intended IPRs to be timely and cost-effective" and that continuing the stay "is neither timely nor cost-effective." Mot. at 9

CASE NO. 2:19-CV-01602-PSG(DFMx)
OPPOSITION TO MOTION TO LIFT STAY AND REOPEN CASE

(citing *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11cv492, 2015 WL 11439060, at *5 n.8 (E.D. Tex. Jan. 5, 2015)).  But this argument is inapposite because whether IPRs are timely and cost-effective as an alternative to litigation in general is separate and distinct from the question of whether continuing the stay here will be timely and cost-effective.  Given the impact that the Federal Circuit rulings will have on key disputed claim constructions, that 18 asserted claims could be invalidated on appeal, and another two asserted claims of the '486 patent may be invalidated in the ITC proceeding, it would *not* be cost-effective to lift the stay now.  Rather, continuing the stay will help the parties conserve their resources and promote judicial economy.  *See Baxter*, 2021 WL 22553, at *4 (denying motion to lift stay pending IPR appeals, finding that "lifting the stay has the potential to create duplicative discovery and introduce inefficiencies into the case"); *Sleep Number*, No. 5:18-cv-00356 AB (SPx), slip op. at 1 (denying request to lift stay pending IPR appeals, finding "it is in the interests of judicial economy and the orderly litigation of this case to maintain the stay pending the appeals so that all claims may proceed together"); *Boston Sci.*, 2019 WL 2511162, at *3 (denying motion to lift stay pending IPR appeals, finding the "Court's time, resources, and desire to avoid inconsistent rulings would be better served by continuing the stay"); *Realtime*, 2018 WL 3744223, at *2 (denying motion to lift stay pending IPR appeals, finding that "waiting for the conclusion of the pending appeals . . . advances the court's and parties' interests in avoiding unnecessary expenditure of resources"); *Willis Elec. Co. v. Polygroup Ltd.*, No. 15-cv-3443-WMW-KMM, 2018 WL 7690327, at *2 (D. Minn. Apr. 24, 2018) (denying motion to lift stay, finding that "litigating th[e] case before the Federal Circuit rules on the appeal still creates a risk that the parties and the Court will expend significant resources litigating issues unnecessarily").

Finally, if DivX's cases against Hulu continue to be stayed, DivX admits that coordination between the Netflix and Hulu cases will simplify issues in this case, but argues that this does not "overcome the overwhelming reasons for lifting the stay" as to

1   Netflix.  Mot. at 10.  But the commonality between the patents asserted by DivX in

2   *Hulu I* and this case means that many of the same factual and legal issues exist in both

3   cases, including without limitation, claim construction, patentability under 35 U.S.C.

4   § 101, and secondary considerations of non-obviousness.  In terms of conserving

5   resources and avoiding duplicative litigation, it would make no sense to continue the

6   stay in the *Hulu* cases while moving forward in this case.  If the Court finds that the

7   stay in the *Hulu* cases should be continued, the parties' interests in conserving

8   resources and judicial economy favor continuing the stay here as well.

9          Given the current status of this case, the high likelihood that the Federal Circuit

10   will issue opinions in the appeals before the Court can try this case, and the substantial

11   impact the appeals and the ITC proceeding could have on this case, this factor favors

12   continuing the stay.

13          **C.    DivX Will Not Be Prejudiced By a Continued Stay**

14          Delay alone is not sufficient to show undue prejudice and that is, at best, all

15   DivX has shown.  *Software Rts. Archive*, 2013 WL 5225522, at *5 ("Delay alone,

16   without specific examples of prejudice resulting therefrom, is insufficient to establish

17   *undue* prejudice.").  For this factor, the central determination in deciding whether to lift

18   a stay pending an appeal of the PTAB's IPR decision is "whether a stay would unduly

19   prejudice or present a clear tactical disadvantage to the non-moving party." *Realtime*,

20   2018 WL 3744223, at *1; *Baxter*, 2021 WL 22553, at *3.  Here, continuing the stay

21   would not.

22          First, the parties are not competitors.  DivX's patents were sold to an affiliate of

23   Fortress Investment Group LLC, which actively invests in patent assertion.[4]  DivX

24

25          [4] *See* https://www.divx.com/press/neulion-enters-into-purchase-agreement-with-an-

26   affiliate-of-fortress-investment-group-to-sell-certain-divx-assets-intellectual-property-
     and-subsidiaries-for-cash-consideration-of-41-5-million/;

27   https://insight.rpxcorp.com/news/8671?utm_source=Mondaq&utm_

28   medium=syndication&utm_campaign=inter-article-link.

expends significant effort touting its history (Mot. at 11-13), but true or not, this alleged history has no bearing on whether Netflix and DivX are competitors. They are not. As this Court already noted in granting the stay, "Plaintiff does not dispute that Defendants do not compete against Plaintiff." Dkt. 106 at 6. Where the parties are not direct competitors, as here, that fact strongly weighs in favor of a stay. *Software Rts. Archive*, 2013 WL 5225522, at *6 (holding prejudice factor "strongly favors granting the stay" where the patentee did "not risk irreparable harm" and could be "fully restored to the *status quo ante* with monetary relief" because the parties "are not competitors"); *see also Convergence Techs.,* 2012 WL 1232187, at *2–3 (granting stay, in part, because plaintiff was not in direct competition with defendant).[5]

Second, DivX will not be prejudiced from continuing the stay because—as evidenced by DivX's failure to seek a preliminary injunction—it can be fully compensated for any alleged harm by monetary damages. *Realtime*, 2018 WL 3744223, at *2 (finding no undue prejudice and denying motion to lift stay where "[P]laintiff is understandably seeking money damages. As such, plaintiff can be fully compensated through this action even after some delay.") (internal citation omitted); *Willis Electric*, 2018 WL 7690327, at *2 (denying motion to lift stay pending IPR appeals where "[t]he record does not show that maintaining the stay for the pendency of the appeal to the Federal Circuit will affect Willis' position in the market in ways that cannot be addressed by money damages"); *see also Magseis*, 2020 WL 1429338, at *2 (finding argument "unpersuasive" that patentee "will suffer prejudice if the stay is not lifted" where "case was pending for well over a year and [patentee] did not deem it necessary to seek injunctive relief"); *Straight Path IP Group, Inc. v. Verizon Commc'ns*

---

[5]   DivX cites to *Jiaxing*, but that case does not change the law in this regard. *Jiaxing* relies on *E.Digital Corp. v. Dropcam, Inc.*, No. 14-CV-04922-JST, 2016 WL 658033, at *4 (N.D. Cal. Feb. 18, 2016), which found that "e.Digital does not dispute that it is 'a patent assertion entity that does not compete with Dropcam,' and therefore 'any harm from the alleged continued infringement can be compensated by monetary damages.'"

1   *Inc.*, No. 16-cv-4236 (AJN), 2016 WL 6094114, at *3 (S.D.N.Y. Oct. 18, 2016)

2   (granting a stay pending IPR appeals, finding no prejudice because "[a]s a patent

3   licensing and enforcement firm, Straight Path is not (and does not purport to be) a

4   direct competitor of Defendants – an 'important factor' that courts consider in assessing

5   potential business injury to patent owners in the context of stay applications.").

6         DivX claims it will be prejudiced by "other smaller, streaming video companies"

7   refusing a license because Netflix has refused a license. Mot. at 14-15. But just as this

8   Court previously found (*see* Dkt. 106 at 7), DivX offers no evidence to support that

9   assertion. Rather, DivX acknowledges it has still been able to license its technology

10  "including while this case was pending," directly contradicting its empty assertion that

11  it will be prejudiced by not being able to execute licenses with other companies if the

12  stay is maintained. Mot. at 14. DivX has failed to point to any evidence or authority

13  supporting its claim that it is being prejudiced by an inability to obtain licenses or from

14  the mere delay in continuing the stay through the Federal Circuit appeals. *See Straight*

15  *Path*, 2016 WL 6094114, at *3 ("Competitive considerations aside, the Court simply

16  sees no reason (and Straight Path provides none) why the stay of an infringement action

17  initiated by Straight Path would impede its ability to license any patent in its

18  portfolio."). To the contrary, "[c]ourts have consistently found that a patent licensor

19  cannot be prejudiced by a stay because monetary damages provide adequate redress for

20  infringement." *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029

21  (N.D. Cal. 2014) (internal quotation marks omitted) (deeming argument that entry of

22  stay would harm plaintiff's efforts to license the patents-in-suit "speculative"). DivX

23  also has offered no evidence that lifting the stay would improve its chances of licensing

24  its patents when they are still subject to the pending IPR appeals. *See Realtime*, 2018

25  WL 3744223, at *2 ("Plaintiff argues that an ongoing dispute contesting the

26  enforceability of its patents makes it more difficult to license those patents, but lifting

27  the stay in this case would not end any of the pending appeals or IPR applications that

28  are contesting the patents' validity.").

1    DivX also argues that continuing the stay would "unfairly provide tactical
2    advantage to Netflix." Mot. at 15. But DivX again provides zero support for that
3    assertion. That is because maintaining the stay only benefits both parties and the Court.
4    For example, waiting until the Federal Circuit appeals are final saves the parties and the
5    Court time and resources and offers finality regarding claim construction disputes. *See*
6    *supra* Section IV.B. DivX's conclusory arguments regarding prejudice "if its claims
7    are not timely resolved" also do not hold water. Mot. at 14. The cases DivX cites,
8    unlike here, all involved direct competitors. *See Milwaukee Elec. Tool Corp. v. Hilti,*
9    *Inc.*, No. 14-CV-1288-JPS, 2016 WL 7495808, at *3 (E.D. Wis. Dec. 30, 2016); Mot.
10   Ex. 3, *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-01914-
11   CJC-JPR, slip op. 6 (C.D. Cal. May 13, 2020).

12   DivX has not shown any undue prejudice or tactical disadvantage. Accordingly,
13   this third factor weighs in favor of maintaining the stay.

14       1.    **DivX's Arguments For Each Sub-Factor Should Be Rejected**

15   DivX cites to four sub-factors: "(1) the timing of the petition for review; (2) the
16   timing of the request for the stay; (3) the status of review proceedings; and (4) the
17   relationship of the parties." *Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. CV 18-8085
18   PSG (GJSx), 2019 WL 9443180, at *4 (C.D. Cal. Sept. 24, 2019) (citing *E.Digital*
19   *Corp. v. Dropcam, Inc.*, No. 14-CV-04922-JST, 2016 WL 658033, at *4 (N.D. Cal.
20   Feb. 18, 2016) (quoting *Cypress Semiconductor Corp. v. GSI Tech*, Inc., No. CV 13-
21   2013 JST, 2014 WL 5021100, at *3 (N.D. Cal. Oct. 7, 2014)). These sub-factors weigh
22   in favor of maintaining the stay.

23   The first sub-factor is the timing of the petition for review. Given the large
24   number of asserted claims in this case, Netflix moved diligently in preparing and filing
25   the IPRs, and DivX has not been prejudiced. "Provided an accused infringer is diligent,
26   delay due to preparing an [IPR] petition, ascertaining the plaintiff's theories of
27   infringement, or otherwise researching the patents that have been asserted in an action
28   does not unduly prejudice the patent owner." *Cypress Semiconductor*, 2014 WL

5021100, at *4.  Netflix began filing its IPR petitions more than five months before the expiration of the one-year statutory period, filed most of the remaining IPR petitions more than a month before the expiration of the one-year statutory period, and filed all within a year of DivX's complaint, which is all well within the statutory period.  This timing in this case was favors maintaining the stay.  *See*, *e.g.*, *Lodge Mfg.*, 2019 WL 9443180, at *4 (finding sub-factor favored stay where "Defendant filed its IPR petition more than two months before the expiration of the one-year statutory period, well within the statutory period"); *see also E.Digital Corp. v. Dropcam, Inc.*, No. 14-CV-04922-JST, 2016 WL 658033, at *4 (N.D. Cal. Feb. 18, 2016) (finding it sufficient that "Dropcam's petition for review was filed just under a year after e.Digital filed its complaint, and it filed its request for stay three weeks after all of its IPR petitions had received determinations"); *Software Rts. Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) ("Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here.").

The second sub-factor is the timing of the request for the stay.  Here, attempting to dodge a factor unfavorable to it, DivX argues that "[t]his sub-factor is no longer relevant" and "cannot weigh in favor of a stay."  Mot. at 11.  DivX is wrong.  Netflix filed its Motion to Stay the case just two days after filing its last IPR petition with the PTAB.  As this Court previously found, Netflix "timely brought [its] motion to stay after filing [its] March 2020 petitions."  Dkt. 106 at 6; *see also Lodge Mfg.*, 2019 WL 9443180, at *4 ("Defendant filed this motion within a week after Plaintiff confirmed that it would not stipulate to a stay.").  DivX likewise cites no authority suggesting that whether it was prompt in attempting to lift the stay factors into this analysis.

The third sub-factor is the status of the review proceedings.  While the review proceedings before the PTAB have concluded for now, the review proceedings are still very much alive in the pending appeals.  *See supra* Section IV.B.  Courts regularly stay

cases through appeal of IPR decisions. *See, e.g.*, *Sleep Number*, No. 5:18-cv-00356 AB (SPx), slip op. at 1 (denying motion to lift stay pending IPR appeals); *Realtime*, 2018 WL 3744223, at *2 (same); *Safe Storage LLC v. Dell Inc.*, No. 12-1624-GMS, 2016 WL 11689536, at *2 n.1 (D. Del. Mar. 11, 2016) (same); *Andrea Elecs. Corp.*, 2019 WL 3712120, at *2 (same); *Willis Electric*, 2018 WL 7690327, at *2 (same); *Baxter*, 2021 WL 22553, at *3 (same); *Magseis*, 2020 WL 1429338, at *3 (denying motion for reconsideration of denial of request to lift stay pending IPR appeals); *Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236 (AJN), 2016 WL 6094114, at *3 (S.D.N.Y. Oct. 18, 2016) (granting motion to stay pending resolution of Federal Circuit IPR appeals).

The fourth sub-factor is the relationship of the parties, and as demonstrated above, this factor strongly favors maintaining a stay. *See supra* Section IV.C.

### D.    The Totality of the Circumstances Favors Continuing the Stay

In light of the totality of the circumstances, the Court should maintain the stay through the pendency of the Federal Circuit appeals. The three stay factors each favor continuing the stay. The case is still in its early stages; the Federal Circuit appeals raise issues that go to important claim construction and validity issues that would affect the rest of this litigation, saving the parties and the Court significant time, resources, and expense by waiting for those decisions before proceeding blindly; and DivX has offered no evidence that it will be unduly prejudiced by continuing the stay, especially where it is undisputed that DivX can be fully compensated for any delay by monetary damages. Plus, other circumstances discussed above weigh in favor of continuing the stay. For example, given the continuing trial delays and backlogs due to the pandemic, it is highly unlikely that a civil jury trial will take place in the next 12 months. On the other hand, all of DivX's appeals should be resolved by then. And the parties and the Court will greatly benefit in this litigation from receiving an initial determination from the ITC on asserted claims in the '486 patent, which is expected in less than two months.

In its analysis of the totality of the circumstances, DivX offers the conclusory

1   assertion that "[t]here will be continuing harm to DivX if its claims are not adjudicated
2   on the merits" while the IPR appeals are pending before the Federal Circuit.  Mot. at
3   16.  But even if that were true (and DivX has not even offered an explanation as to how,
4   much less evidence to support that assertion), DivX never claims that any (unidentified)
5   continuing harm cannot be remedied by monetary damages.  It can.  And DivX
6   misapplies the law when it quotes from *Game and Tech.*, arguing that "[i]f there is
7   'even a fair possibility that the stay . . . will work damage to someone else,' the party
8   requesting the stay 'must make out a clear case of hardship or inequity in being
9   required to go forward.'"  Mot. at 16 (quoting *Game and Tech.*)).  That quote is from a
10  Ninth Circuit case where the petitioner appealed the district court's stay of its case
11  against a former customer.  *See CMax, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).
12  DivX relies on this quote to argue that since a stay will damage DivX, Netflix is
13  required to—but cannot—demonstrate that it will suffer hardship or inequity in being
14  required to move forward with the district court case before it is entitled to a stay.  Mot.
15  at 16.  But as the Ninth Circuit explained, the "damage to someone else" that triggers
16  the requirement for the party seeking a stay to show it will suffer hardship or inequity
17  absent the stay must be "irreparable injury and a miscarriage of justice" and not just
18  money damages.  *See id.*  And since DivX can be adequately compensated by money
19  damages, Netflix does not need to show hardship or inequity to be entitled to a stay.

20      DivX's Rule 1 arguments are also unpersuasive and do not sway the totality of
21  the circumstances away from favoring continuing the stay.  As DivX admits, Rule 1
22  provides that the Federal Rules are to be administered to "secure the just, speedy, and
23  inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1; Mot. at
24  4.  Thus, Rule 1 requires the court to consider not just speed, but also expense, which
25  strongly favors continuing the stay.  Here, for example, if the Court were to proceed
26  with claim construction and the Federal Circuit later finds differently on the disputed
27  claim constructions, then the parties would have to redo infringement and invalidity
28  contentions, expert reports, motions for summary judgment, and possibly even trial at

- 22 -

great expense.  Plus, as explained above, there is no evidence that maintaining the stay will negatively impact the speed of a final resolution in this case.

The totality of the circumstances weighs in favor of maintaining the stay through the pendency of the Federal Circuit appeals.

## V.    CONCLUSION

For at least the reasons explained above, the stay factors weigh in favor of maintaining the stay until the Federal Circuit issues its rulings on Netflix's IPR appeals, and the Court should therefore deny DivX's Motion.


Dated:  February 4, 2022            Respectfully Submitted,

By */s/ Lance L. Yang*
QUINN EMANUEL URQUHART & SULLIVAN, LLP

David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
Andrew M. Holmes (Bar No. 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang (Bar No. 260705)
lanceyang@quinnemanuel.com
Valerie Lozano (Bar No. 260020)
valerielozano@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for Defendant and Counterclaimant Netflix, Inc.*