1
2
3
4
5

Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:   (650) 802-6000
Facsimile:    (650) 802-6001

6
7
8
9
10
11
12

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile:  (949) 252-1514

*Attorneys for Plaintiff DivX, LLC*

13
14

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| DIVX, LLC, a Delaware limited liability company,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>    v.<br><br>NETFLIX, INC., a Delaware corporation,<br><br>    Defendant and Counterclaimant. | **Case No. 2:19-cv-1602 PSG (DFMx)**<br><br>**PLAINTIFF DIVX, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO LIFT STAY AND REOPEN CASE**<br><br>Date:    January 26, 2024<br>Time:    1:30 pm<br>Ctrm:    6A<br>Judge:  Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................. 2

     A.   History Of District Court Proceedings ................................. 2

     B.   IPR Proceedings .................................................................. 3

III.   LEGAL STANDARD ...................................................................... 5

IV.   ARGUMENT ................................................................................. 5

     A.   Factor 1: The Stage Of Proceedings Supports Lifting The Stay ......... 6

     B.   Factor 2: Continuing The Stay Will Not Meaningfully Simplify This Case ...................................................................... 7

          1.   Most Patents-In-Suit Have No Co-Pending IPR Proceedings .. 7

          2.   No Likelihood Of Simplification From Unpatentability .......... 8

          3.   No Likelihood Of Simplification From Claim Construction .. 11

     C.   Factor 3: A Stay Would Unduly Prejudice And Tactically Disadvantage DivX ........................................................... 11

          1.   Sub-Factor 1: Netflix Delayed And Filed IPR Petitions On Only Some Asserted Claims ...................................... 12

          2.   Sub-Factor 2: The Timing Of The Request For A Stay .......... 13

          3.   Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay ... 13

          4.   Sub-Factor 4: The Relationship Between The Parties ............ 13

          5.   DivX Is Unduly Prejudiced If Its Claims Are Not Timely Resolved ............................................................. 15

     D.   The Totality Of The Circumstances Favors Lifting The Stay .......... 18

V.    CONCLUSION ........................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Boston Sci. Corp., v. Edwards Lifesciences Corp.*,

   2018 WL 11349847 (C.D. Cal. Nov. 15, 2018) (Carney, J.) ..................................... 9

*Game & Tech. Co. v. Blizzard Entm't, Inc.*,

   No. CV 16-06499-BRO (SK), slip op. (C.D. Cal. May 15, 2017) (O'Connell, J.) 5, 6, 18

*Helferich Patent Licensing, L.L.C. v. The New York Times Co.*,

   Case No. 10-cv-4387, slip op. (N.D. Ill. May 8, 2012)............................................. 10

*Interval Licensing LLC v. AOL, Inc.*,

   Case No. C10-1385 MJP, slip op. (W.D. Wash., June 25, 2012) ............................ 16

*Ioengine, LLC v. PayPal Holdings, Inc.*,

   2020 WL 6270776 (D. Del. Oct. 26, 2020)....................................................... 10, 16

*Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*,

   No. CV 19-4047 PSG (MAAx), 2020 WL 5079051 (C.D. Cal. June 17, 2020)

   (Gutierrez, J.)......................................................................................................... 5, 7

*Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*,

   No. SACV 17-01914-CJC-JPR, Order (C.D. Cal. May 13, 2020).................. 6, 10, 17

*MasterObjects, Inc. v. Ebay, Inc.*,

   No. 16-cv-06824-JSW, 2018 WL 11353751 (N.D. Cal. Nov. 7, 2018)................... 10

*Milwaukee Electric Tool Corporation v. Hilti, Inc.*,

   2016 WL 7495808 (E.D. Wis. Dec. 30, 2016)..................................................... 10, 17

*Netflix, Inc. v. DivX LLC*,

   IPR2020-00052, Paper 103 (PTAB Jun. 9, 2023).................................................... 3

*Netflix, Inc. v. DivX LLC*,

   IPR2020-00511, Paper 51 (PTAB Jun. 7, 2023)..................................................... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00511, Paper 55 (PTAB Aug. 11, 2023) ..................................................... 11

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00511, Paper 57 (PTAB Aug. 25, 2023) ..................................................... 11

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00558, Paper 54 (PTAB Apr. 20, 2021) ..................................................... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00614, Paper 68 (Sealed FWD) ..................................................... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00614, Paper 70 (Public FWD) (PTAB Dec. 15, 2021, Jan. 26, 2022) ....... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00646, Paper 47 (FWD), (PTAB Sep. 9, 2021) ........................................... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00646, Paper 52 (PTAB Oct. 20, 2023) ..................................................... 4

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00052, Paper 102 (PTAB May 25, 2023) ..................................................... 3

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00052, Paper 96 (PTAB Feb. 3, 2023) ..................................................... 3

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00647, Paper 28 (FWD) (PTAB Sep. 27, 2021) ........................................... 3

*Netflix, Inc. v. DivX LLC,*

   IPR2020-00648, Paper 28 (PTAB Sep. 27, 2021) ..................................................... 3

*Netflix, Inc. v. DivX, LLC,*

   84 F.4th 1371 (Fed. Cir. 2023) ..................................................... 3

*Network-1 Security Solutions, Inc. v. Alcatel-Lucent USA Inc.,*

   2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ..................................................... 16

*Unified Patents, Inc. v. DivX, LLC*,

    IPR2019-01379, Paper 52 (PTAB Feb. 8, 2021) .......................................................... 3

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

    943 F. Supp. 2d 1028 (C.D. Cal. 2013)........................................................................ 5

*ZOLL Med. Corp. v. Respironics, Inc.*,

    Case No. 12-1778-LPS, 2015 WL 4126741 (D. Del. July 8, 2015) ......................... 16

**Statutes**

35 U.S.C. § 315(b) ...................................................................................................... 6

**Regulations**

Fed. R. Civ. P. 1 ................................................................................................. 1, 19

## I. INTRODUCTION

This is a patent case involving DivX's foundational patented technology relating to video streaming that Netflix has been using without license.  In the mid-2000s, Netflix was one of several companies that approached DivX to discuss using DivX's technology to power online video content delivery platforms.  Dkt. 60, ¶ 42. But rather than work with DivX or obtain the right to use its technology, Netflix built its platform using DivX's patented technology without license or recognition, harming DivX's reputation and business opportunities in a market that DivX helped create.

Although DivX filed this case almost five years ago, it has now been stayed for over three and a half years, first during pendency of the IPRs and then during pendency of the Federal Circuit appeals of those IPRs.  After this lengthy stay and careful scrutiny, the validity of either all or some asserted claims of every single one of DivX's eight asserted patents has been confirmed.  By the time of the hearing on this motion, the IPR process is expected to complete for seven of the eight asserted patents, and Netflix did not even attempt an IPR against one of the asserted claims of the eighth patent.

Even so, Netflix still opposes allowing this case to proceed, in favor of a further stay of indeterminate duration.  Netflix wants the stay to remain in place because three of the eight asserted patents were remanded to the PTAB for further proceedings after the Federal Circuit appeals. But the majority of the patents and the asserted claims are not even subject to these remands, and the PTAB's remand decisions on two of those three patents are imminent (already past the period in which PTAB intends its remand decisions to occur).  For the eighth patent (the third on remand), the decision will most likely issue by April 2024, which will be only three months into the revived case.  In any event, this lone patent does not provide a basis to continue staying the entire case, especially given that one claim is not even subject to the IPR proceedings, so the patent will be part of the case no matter what happens in the limited remaining proceeding. The accused products/services are the same for the eight patents, so in practical terms, virtually all of the fact discovery that will be occurring while the last remand is

proceeding will need to proceed regardless of the outcome of that remand.   DivX
believes all three remands will end successfully for DivX, but, to simplify the proceeding
here, DivX will dismiss any asserted claim if it is found to be invalid by the PTAB on
remand.

Further, the simplification the Court intended to achieve through stays, in
particular in terms of the Federal Circuit guidance for claim construction, has been
achieved and there will be no further such guidance from the three remands.

The Courts should be open to all litigants to have their disputes heard on the
merits, and all litigants should be given a "just, **speedy**, and inexpensive determination
of every action and proceeding" pursuant to Federal Rule of Civil Procedure 1.  DivX
respectfully requests that the Court lift the stay and allow this case to proceed so DivX
may finally get its day in Court.

## II.   BACKGROUND

### A.   History Of District Court Proceedings

DivX filed this case on March 5, 2019, more than four and a half years ago.  Dkt.
1.  The Court set a trial date of April 27, 2021.  Dkt. 83 (Jan. 29, 2020 Order).  On March
13, 2020, more than a year after the case was filed, Netflix moved for a stay.  Dkt. 94.
The Court granted that motion on May 11, 2020.  Dkt. 106.  DivX moved to lift the stay
on January 8, 2022, upon issuance of final written decisions in all IPRs, and the Court
denied that motion on March 29, 2022 ("March 2022 Order").  Dkts. 125, 130.  The
March 2022 Order required the parties to file a joint status report "within 10 days of the
resolution of each [IPR] appeal pending before the Federal Circuit."  Dkt. 130 at 13.
The parties have done so (*see* Dkts. 140, 141, and 142), and the last filed joint status
report addressed the final appeals at the Federal Circuit.

The March 2022 Order also addressed co-pending cases between DivX and Hulu,
including one with many of the same patents-in-suit.  *See* Dkt. 130.  Both *Hulu* cases
were dismissed with prejudice after DivX and Hulu's parent Disney entered into a
license agreement.  *DivX, LLC v. Hulu, LLC*, CV 19-1606 PSG (DFMx) (*Hulu I*), Dkts.

156, 157; CV 21-1615 PSG (DFMx) (*Hulu II*), Dkts. 104, 105.

### B. IPR Proceedings

Appeals were filed on seven of the patents-in-suit, and the Federal Circuit has now issued its opinions in each of those appeals. The following table summarizes the status of IPR proceedings, focusing on the asserted claims on which DivX had previously selected to proceed. Dkt. 125-6 at 2 (DivX's selection of asserted claims). The green highlighting shows the six patents and their claims on which no IPR was ever filed or on which IPR proceedings have completed:

| Asserted Claims | Claims In IPR | Status of IPR and Appeals | Pending Remand | No Pending IPR[1] |
|---|---|---|---|---|
| 10,212,486 1, 4, 8, 15, 21 | None | No IPR ever filed | None | All (1, 4, 8, 15, 21) |
| 9,270,720 1, 2, 4, 5 | All[2] | FWD 9/27/21 upheld all claims, affirmed on appeal 10/25/2023[3] | None | All found patentable (1, 2, 4, 5) |
| 9,998,515 1, 16 | All[2] | FWD 9/27/21 upheld claim 1; claim 16 unpatentable, affirmed on appeal 10/25/2023[3] | None | Claim 1 found patentable |
| 8,139,651 1, 2, 19 | All[4] | Remand FWD 2/3/2023 upheld claim 2, claims 1 and 19 unpatentable, no appeal[4] | None | Claim 2 found patentable |

[1] This column does not list claims finally found unpatentable as such claims will not be asserted in this case.  This column lists claims for which IPRs were never filed or all IPR proceedings and appeals have been completed.

[2] Dkt. 106 at 2-3; *Netflix, Inc. v. DivX LLC*, IPR2020-00648, Paper 28 at 57 (PTAB Sep. 27, 2021) (515 Patent).

[3] *Netflix, Inc. v. DivX LLC*, IPR2020-00647, Paper 28 (FWD) at 49 (PTAB Sep. 27, 2021); *Netflix, Inc. v. DivX LLC*, IPR2020-00648, Paper 28 (FWD) at 57 (PTAB Sep. 27, 2021); *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371 (Fed. Cir. 2023).

[4] *Netflix, Inc. v. DivX LLC*, IPR2020-00052, Paper 96 at 57 (PTAB Feb. 3, 2023), Paper 102 (PTAB May 25, 2023), Paper 103 (PTAB Jun. 9, 2023).  Unified Patents did not appeal its loss in *Unified Patents, Inc. v. DivX, LLC*, IPR2019-01379, Paper 52 (PTAB Feb. 8, 2021).

| Asserted Claims | Claims In IPR | Status of IPR and Appeals | Pending Remand | No Pending IPR[1] |
|---|---|---|---|---|
| 7,295,673 10, 18, 21, 29, 32 | 2 of 5 claims (10, 18)[5] | FWD 12/15/21 challenged claims unpatentable; affirmed on appeal 4/18/2023[5] | None | Claims 21, 29, 32 (no IPR filed) |
| 10,225,588 1, 13, 16 | All[2] | Remand IPR fully briefed, awaiting FWD | All, FWD goal 10/10/23[6] | |
| 9,184,920 1, 3, 5 | All[2] | Remand IPR fully briefed, awaiting | All, FWD goal 12/6/23[6] | |
| 8,472,792 1, 9, 15, 16, 22 | 4 of 5 claims (1, 9, 15, 22)[7] | Appeal resulted in a remand[7] | Claims 1, 9, 15, 22: FWD goal 4/18/24[7] | Claim 16 (no IPR filed) |

In summary, of the nineteen asserted claims from the five patents for which IPRs have finally concluded, only five were found unpatentable. All five patents remain at issue in this case, as do fourteen of their previously asserted claims. Eight of the previously asserted claims and the entire 486 Patent were not even challenged in IPR.

For the 588 Patent and the 920 Patent, the remand proceedings are fully briefed and awaiting decision. The Board's goal in remand proceedings is to issue its decision within six months of the Federal Circuit's mandate. Ex. 1 (PTAB's SOP 3) at 1. Those dates have passed for these two patents, so the decisions will issue imminently, likely

---

[5] *Netflix, Inc. v. DivX LLC*, IPR2020-00614, Paper 68 (Sealed FWD), Paper 70 at 85 (Public FWD) (PTAB Dec. 15, 2021, Jan. 26, 2022).

[6] The Board "has established a goal to issue decisions on remanded cases within six months of the Board's receipt of the Federal Circuit's mandate." Ex. 1, PTAB SOP 3, at 1. The mandate issued in the appeal for Patent No. 10,225,588 on April 7, 2023 for *Netflix, Inc. v. DivX LLC*, IPR2020-00558, Paper 54 (PTAB Apr. 20, 2021). The mandate issued in the appeal for Patent No. 9,184,920 on June 6, 2023. *Netflix, Inc. v. DivX LLC*, IPR2020-00511, Paper 51 (PTAB Jun. 7, 2023).

[7] *Netflix, Inc. v. DivX LLC*, IPR2020-00646, Paper 47 (FWD) at 36, (PTAB Sep. 9, 2021), Paper 52 (PTAB Oct. 20, 2023). The mandate issued in the appeal for Patent No. 8,472,792 on October 18, 2023. *Id.*

before the hearing on this motion.  For the 792 Patent, the PTAB's goal is to issue the remand decision by April 18, 2024, but one of the asserted claims of the 792 Patent is not subject to the remand proceeding.

Netflix also strategically delayed bringing the present IPR proceedings before seeking a stay. Netflix was served with the Complaint on March 12, 2019, starting the one-year period for filing IPR petitions.  Dkt. 32; 35 U.S.C. § 315(b).  Netflix waited to file until the end of that period.  Six out of seven IPRs were filed in or near the last month of the allowed period.  Dkt. 125-3.

## III.   LEGAL STANDARD

Stays pending IPR are within the Court's discretion.  In determining whether to stay a case pending IPR, or whether to lift such a stay, courts consider three factors:

> (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

Ex. 2, *Game & Tech. Co. v. Blizzard Entm't, Inc.*, No. CV 16-06499-BRO (SK), slip op. at 3 (C.D. Cal. May 15, 2017) (O'Connell, J.); *Hulu II*, Dkt. 83 at 7.  In weighing the third factor—prejudice—courts consider four sub-factors: "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *Jiaxing Super Lighting Elec. Appliance Co. v. Maxlite, Inc.*, No. CV 19-4047 PSG (MAAx), 2020 WL 5079051, at *4 (C.D. Cal. June 17, 2020) (Gutierrez, J.).  "[U]ltimately 'the totality of the circumstances governs.'" Ex. 2, *Game & Tech.,* slip op. at 3 (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013)).  "The proponent of a stay bears the burden of establishing its need." *Id*.

## IV.   ARGUMENT

With all IPRs and appeals of those IPR decisions resolved, and only one expected

remand pending at the time of the hearing on this motion, all stay factors and the totality of the circumstances favor lifting the stay.

### A.  Factor 1: The Stage Of Proceedings Supports Lifting The Stay

The March 2022 Order found that this factor was neutral.  Dkt. 130 at 7.  This Court concluded that it "agrees with Plaintiff that this factor should not weigh against lifting the stays, because otherwise the justification for maintaining the stays—based on the lack of progress in the cases due to the stays themselves—would be circular."  *Id.* Another court in this district previously found this factor "neutral" when the case was "nearing the ***two-year*** mark," and a "significant portion of that time was subject to the current stay," despite no depositions, expert discovery, or trial date.  Ex. 2, *Game & Tech.*, slip op. at 4.  This case is now more than four and a half years old and has been stayed for over three and a half years.  *See* Dkt. 1, 106.  Because of the more advanced age of this case, the lengthier stay, and the absence of depositions, expert discovery, or a scheduled trial date, this factor should now weigh in favor of lifting the stay.

Before the stay, this case was proceeding in this Court.  The parties served and responded to discovery, served detailed contentions, and were about to start claim construction.  *See* Dkts. 89, 102-1.  DivX narrowed its asserted claims and produced 72,783 pages in discovery.  Dkt. 102-1. Ex. 2, *Game & Tech.*, slip op. at 3.  This also favors lifting a stay.

The complex proceedings before the PTAB and the Federal Circuit also weigh in favor of lifting the stay.  Another court in this district found that this factor "slightly favor[ed]" lifting a stay where, like here, the parties had engaged in "some motions practice before this Court" and "complex proceedings before the PTAB."  Ex. 3, *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, No. SACV 17-01914-CJC-JPR, Order (C.D. Cal. May 13, 2020) at 4.  "Given the time that has passed and the resources the parties have expended, it would be a mistake to characterize this case as one that is still in its early stages." *Id.*  Here, this Court has already addressed two substantive motions to dismiss.  Dkts. 59, 72. There have also certainly been complex proceedings

not only before the PTAB but also on appeal, a significant expenditure of resources, and a lengthy amount of time that has passed.  This factor favors lifting the stay for these reasons as well.

### B.   Factor 2: Continuing The Stay Will Not Meaningfully Simplify This Case

In the March 2022 Order, the Court found that this factor weighed in favor of continuing the stay, considering that: (1) the appeals of the Final Written Decisions (FWDs) included "seven of the eight patents asserted in *Netflix*," (2) the possibility that the Federal Circuit "determines that any of the numerous asserted claims subject to appeal are unpatentable," and (3) the likelihood of simplifying the issues and avoiding unnecessarily wasting party and judicial resources "particularly as to claim construction."  Dkt. 130 at 7-10.  The circumstances have now changed significantly, so this factor does not support continuing the stay.

### 1.   Most Patents-In-Suit Have No Co-Pending IPR Proceedings

First, unlike when the Court previously declined to lift the stay, it is no longer the case that seven of eight patents have pending appeals.  None of them do.  Decisions have issued in every one of the appeals that prompted the March 2022 Order.  *See* Table above.  Five of the eight patents-in-suit have no pending IPR proceedings or appeals. *Id*.

Netflix opposes lifting the stay based on the pending IPR remands on only some claims of the three remaining patents-in-suit.  Dkt. 142 at 1.  But IPR remand proceedings on three of eight patents are insufficient to support a stay of this entire case. This Court has previously denied a stay when four of six patents (67%) would never be subject to an IPR, and correctly concluded that the Court "will have to resolve all claims in dispute as to those patents" and "waiting for the outcome of reexamination does nothing for that portion of the litigation." *Jiaxing*, 2020 WL 5079051, at *3.

Here, similar to *Jiaxing*, effectively the same percentage of patents has no pending

IPRs or appeals, and, by the time of the hearing on this motion, only one remand is expected to still be proceeding.  Any simplification for the five patents free of IPRs and appeals has been achieved, and these patents are ripe for resolution of all remaining disputes in this Court.  Waiting further for IPR remand proceedings on three patents does nothing for the five patents for which all IPRs and appeals have concluded.

One of the three patents on remand, the 792 Patent, must also be addressed in this case regardless of the outcome of the pending IPR proceedings, because, although some claims of the 792 Patent are subject to remand, Claim 16 is asserted here, but Netflix chose not to challenge it in IPRs.  This means that six of eight patents (75%) will proceed in this case regardless of the remaining remand outcomes.  Therefore, the facts here favor lifting the stay even more than the facts in *Jiaxing*.  There is no harm to Netflix in proceeding on the 792 Patent now.  Even if Netflix succeeds in IPR, the effect would be no more than a narrowing of the claims to be tried from this patent.  The discovery that will occur while that remand is pending will apply to the one claim that will be proceeding in this Court in any event, and the Netflix streaming platform is accused of infringement for all of the patents.  Narrowing the set of claims for trial as the case progresses is an ordinary part of litigation, not something that merits a stay of this entire case.

### 2.    No Likelihood Of Simplification From Unpatentability

Second, there is no likelihood of further simplification that would support continuing a stay based on invalidating claims.  Any simplification on the first five patents that have no pending IPR or appeal proceedings has been achieved.  Despite what has now been a three-and-a-half-year stay, none of these five patents was eliminated from this proceeding, and fourteen of nineteen claims from these patents remain in this case.  *See* Table above.

The three pending IPR remand proceedings are also not likely to result in any meaningful simplification, will be ending soon, and do not support a further stay.  For the 588 and 920 Patents, the remand IPR proceedings are fully briefed and awaiting

decision.  The Board's goal is to issue remand decisions within six months of the Federal Circuit's mandate, and those six months have passed for both proceedings.  These proceedings will likely be resolved before the hearing on this motion.  The last remand IPR proceeding for the 792 Patent is likely to conclude in April 2024 based on the Patent Office's six-month goal. This remand proceeding will likely be resolved early in the case, likely during fact discovery.  *See* Dkt. 89 at 4, 5 (expert discovery was scheduled about five and a half months after the case was stayed, and trial was scheduled for approximately eleven months after the case was stayed). Moreover, that same fact discovery will be required regardless of the outcome of this last proceeding.

Given that these proceedings will resolve soon, any simplification that could arise from a finding that the claims are unpatentable can be achieved without continuing the stay.  Although DivX believes the challenged claims of the 588, 920, or 792 Patents will not be found unpatentable, it will not pursue in this case any claims that are found unpatentable.  Because the IPR remand proceedings will likely conclude soon, and before any expert discovery, there is no need to stay the case to achieve any potential simplification.

If, on the other hand, the challenged claims of the 588, 920, and 720 Patents are not found unpatentable on remand, then that would be the second time their validity has been confirmed by the Patent Office (see Dkt. 125-3), and the only possible further IPR-related proceedings would be if Netflix were to seek rehearing or appeal.  Such a possible appeal is not a basis to stay this entire case.  An additional lengthy delay for an appeal of indefinite duration on the last remaining challenged patents should not be permitted, let alone when it is the ***second*** appeal in the same matter. As another court in this district concluded, "[w]aiting for a decision from the Federal Circuit subjects the present action to the ***indefinite timeline*** of the appeal process in exchange for an uncertain or unlikely possibility of further simplification of the issues." *Boston Sci. Corp., v. Edwards Lifesciences Corp.*, 2018 WL 11349847, at *2 (C.D. Cal. Nov. 15, 2018) (Carney, J.). Other courts have similarly found that stays pending appeal subject plaintiffs to an

"***open-ended*** period of delay;" while "IPR proceedings are statutorily limited in duration," appeals are not. *Ioengine, LLC v. PayPal Holdings, Inc.*, 2020 WL 6270776, at *6 (D. Del. Oct. 26, 2020);[8] Ex. 4, *Helferich Patent Licensing, LLC v. The New York Times Co.*, Case No. 10-cv-4387, slip op. at 2 (N.D. Ill. May 8, 2012) ("The potential for a delay lasting years [from the stay that would include an appeal] is prejudicial to HPL, and the term of the proposed delay is indefinite."). Although any change in result from an appeal is highly speculative, a lengthy delay is certain to result from any such stay. The prospect of an expeditious trial should favor lifting the stay instead of indefinitely staying these proceedings.

Moreover, Netflix has no likelihood of success in an appeal of claims it failed twice to show were unpatentable in IPR, and relying on the possible outcome of a future appeal that has not even been filed is speculative. Other courts in this and other districts have concluded that appeals are not a reason to continue a stay. As the Federal Circuit Judge Bryson explained while sitting by designation in Delaware, "the great weight of the case law, both in this district [Delaware] and elsewhere," rejects issuing a stay pending an appeal of an IPR decision. *Ioengine*, 2020 WL 6270776, at *5. "Whether any further simplification will result from an appeal to the Federal Circuit from the PTAB's final written decisions is ***speculative***." *Id.* at *7; *MasterObjects, Inc. v. eBay, Inc.*, No. 16-cv-06824-JSW, 2018 WL 11353751, at *2-3 (N.D. Cal. Nov. 7, 2018) (noting the "***speculative***" nature of awaiting additional claim construction on appeal); *Milwaukee Electric Tool Corp. v. Hilti, Inc.,* 2016 WL 7495808, at *2 (E.D. Wis. Dec. 30, 2016) ("[N]ow that those patents have survived IPR, there remains only a ***speculative*** possibility that the Federal Circuit will reverse the PTAB and invalidate them."); Ex. 3, *Lund*, Order at 6 ("The Court declines to subject this case to certain delay based on the ***speculative*** possibility that its scope might be somewhat altered by Defendants' appeal.").

---

[8] Emphasis added and internal quotation marks and citations omitted throughout unless noted.

### 3.     No Likelihood Of Simplification From Claim Construction

Third, there is no possibility of further simplification through claim construction. The March 2022 Order noted appeals for three patents—the 651 Patent, the 673 Patent, and the 920 Patent—that involved claim construction issues. The IPR proceedings and appeals of the 651 and 673 Patents are concluded, and there will be no additional simplification at this point for those patents, including with respect to claim construction. The Federal Circuit has already issued its opinion for the 920 Patent, and any simplification from that appeal related to claim construction has occurred.  The IPR decision on remand is forthcoming, but Netflix did not seek any additional claim constructions on remand. *Netflix, Inc. v. DivX LLC*, IPR2020-00511, Papers 55 and 57 (PTAB Aug. 11 and 25, 2023).  Thus, there will be no further simplification relating to claim construction.

### C.     Factor 3: A Stay Would Unduly Prejudice And Tactically Disadvantage DivX

The circumstances have also significantly changed regarding the undue prejudice and the clear tactical disadvantage to DivX from continuing the stay since the March 2022 Order finding that this factor weighs "slightly in favor of maintaining the stay[]." Dkt. 130 at 12 (emphasis omitted).  DivX invented and patented its foundational technology relating to streaming well before streaming became commonplace.  DivX also filed this case in early 2019 when streaming was still gaining a wider audience and, four years later, streaming has become commonplace. Netflix has reaped extraordinary benefits from using DivX's technology during this time while not paying for it, but DivX is not any closer to having its day in Court.  On the other hand, by proceeding with litigation in other fora, DivX was able to secure licenses from third parties to the same patents it asserts here.  Further, in August 2022, DivX licensed one of Netflix's competitors, Disney, and continuing the stay would result in even greater prejudice because DivX is being prevented from protecting its licensee Disney and from enforcing

its rights timely.   Also, Netflix's opposition to lifting the stay seeks to tactically disadvantage DivX by maximizing delay and creating inefficiency, such as by requiring that the parties delay this case for validity proceedings at the PTAB on a subset of claims only to need to repeat the process of addressing validity for other claims in the present case that Netflix deliberately chose not to challenge at the PTAB.

### 1.   Sub-Factor 1: Netflix Delayed And Filed IPR Petitions On Only Some Asserted Claims

Netflix delayed in bringing its original IPRs.  DivX acknowledges and does not seek to revisit the Court's original decisions to grant and continue the stay.  The further stay that Netflix now seeks, however, must be considered against the backdrop of the timing of Netflix's IPR petitions.  This Court has previously considered six months to be a "delay" that contributed to this factor weighing against a stay.  *Jiaxing*, 2020 WL 5079051, at *4 ("Defendant delayed in both bringing the IPRs and in bringing the request for a stay.  Although Plaintiffs served Defendant with the complaint in May 2019, Defendant did not bring its IPRs until November 2019.").  Here, Netflix's delay was even longer.  The first IPR was not filed until seven months after service of the Complaint, and the remaining petitions were filed from around eleven months to a full year after service.  *See* Dkt. 106; Dkt. 32 (Complaint served on March 12, 2019).

Netflix's opposition to lifting the stay confirms it is seeking a tactical advantage by attempting to maximize the delay in resolving DivX's claims.  This is not "mere delay," which the Court in March 2022 found insufficient.  Dkt. 130 at 10.  For example, Netflix challenged in IPR only *some* claims and *some* patents but sought and obtained a stay on *all* claims and *all* patents. Netflix never sought IPRs on nine asserted claims across three patents, which is almost one third of the previously asserted claims, but Netflix appears to intend to litigate the validity of these claims in the present case. The practical result of Netflix's strategy is that no matter the result of the few remaining remands,  Netflix intends to litigate validity again in any event. Allowing a further stay would allow Netflix's strategic choices to result in procedural duplication, inefficiency,

and tactical disadvantage.

### 2. Sub-Factor 2: The Timing Of The Request For A Stay

Although the timing of Netflix's initial request for a stay was relevant to whether to stay the case in the first place, it provides no reason to continue the stay now that all substantive reasons for doing so are gone. This sub-factor is no longer relevant and cannot weigh in favor of a stay. In any case, this cannot outweigh the other sub-factors. DivX is promptly moving to lift the stay upon the conclusion of the last IPR appeal and close to the dates when DivX expects two of the three remands to complete. DivX's diligence favors lifting the stay.

### 3. Sub-Factor 3: The Status Of IPRs Favors Lifting The Stay

The Court previously found this sub-factor weighed slightly against a stay in *Hulu* (*Hulu II*, Dkt. 83), when IPR petitions had been filed on two *Hulu II* patents out of five (60% of the patents had no IPR filing), and a stay based on the *Hulu II* patents could extend the stay on the *Hulu I* patents more than a year after the last FWD in *Hulu I*. In this case, six of eight patents (75%) have claims that must be addressed in the present case. The IPRs and appeals have concluded for four of those patents, and for some they were resolved long ago such that, similar to the Court's reasoning for *Hulu*, denying this motion would likely subject those patents to a stay of a year or more past the resolution of their IPR or appeal. The remand FWD for the 651 Patent already issued almost a year ago, and the appeal concluded on the 673 Patent over eight months ago. Some or all claims of two additional patents were not challenged in IPR and have been stayed for years with no pending IPR proceedings. A further indefinite extension of the stay based on a small number of patents when the vast majority have claims with no pending IPR proceedings should weigh against a stay as it did in *Hulu*.

### 4. Sub-Factor 4: The Relationship Between The Parties

The fourth and final prejudice sub-factor is the "relationship of the parties." *Jiaxing*, 2020 WL 5079051, at *4. Although the Court found in March 2022 that the

"parties are not direct competitors," and "Plaintiff can be adequately compensated through damages for any harm from the continued stay," Dkt. 130 at 11, a new DivX licensee *is a direct competitor* to Netflix.  In August 2022, DivX licensed the streaming provider Disney, whose streaming services include Disney+, Hulu, and ESPN+.  Ex. 5 (Press Release).  In second quarter of 2023, Disney+ and Hulu were fourth and fifth most popular streaming services in the US whereas Netflix was the second most popular.  *See* Ex. 6 (Statista Report, "Market shares of selected subscription video-on-demand (SVOD) services in the United States in 2nd quarter 2023").  DivX's licensee is at a disadvantage when it pays for DivX technology, but its competitor Netflix uses DivX technology without paying for it.

The importance of a licensor's ability to protect its licensee is highlighted in licensing literature.  According to a textbook titled "Technology Licensing: Corporate Strategies For Maximizing Value," a "major consideration" to the licensee is the "nature and amount of protection that a licensor offers to the licensee."  Ex. 7 (Parr, R. L. and Sullivan, P. H, Eds.) at 5.  The textbook says that the "licensee must be assured not only that adequate legal protection is in place, but also that the licensor is prepared to enforce and *is capable of enforcing* this protection against infringers."  *Id*. at 5-6.  Thus, where DivX's enforcement of its intellectual property is stalled, DivX is limited in its ability to: (1) protect current licensees from Netflix's infringing sales, and (2) encourage the adoption of the patented technology through future licensees.  Such harm is not generally readily quantifiable or recoverable with monetary damages.  This also supports lifting the stay.

DivX itself also has a long history as a pioneer in technology for providing high quality video over the internet.  DivX's innovations—including those described in the asserted patents—span a wide range of technologies that permit the viewing experience to which today's users have become accustomed.  For example, DivX improved digital rights management, which controls access to, and prevents piracy of, protected digital media—a *sine qua non* of non-pirated streaming video.  DivX developed technology for

adaptive bitrate streaming that detects streaming conditions and adjusts the quality of the stream accordingly to prevent disruption in video playback. DivX developed "trick play" technology that provides effects such as a "fast forward" for a familiar and friendly user experience. DivX technology also enabled high quality video playback, including ultra-high definition (4K) video. *See, e.g.*, Dkt. 60 (Amended Complaint), ¶¶ 10, 80, 81, 124. DivX built the technological foundations that Netflix now uses without a license and to DivX's detriment. Indeed, DivX released its own products long before Netflix changed focus from sending its customers DVDs through the mail to streaming video on the internet. Netflix's decision to design its platform using DivX technology without permission requires remedy from this Court, and the relationship between the parties weighs against a continued stay for this reason as well.

In the mid-2000s, Netflix was one of the companies that approached DivX to discuss using DivX's technology to power online video content delivery platforms. Dkt. 1, ¶ 42. Netflix has never denied it. Dkt. 125-01 at 13-14. Rather than purchasing DivX technology or seeking the right to use the DivX technology it needed, Netflix built its platform for internet video using technology that belongs to DivX. The PTAB's decisions continue to confirm that DivX developed valid and important inventions. DivX's only recourse for the on-going harm to its reputation and business is in this Court. It would be inequitable for Netflix to benefit from a supposed lack of competition when Netflix itself chose to infringe DivX's patents instead of doing business with DivX.

### 5.    DivX Is Unduly Prejudiced If Its Claims Are Not Timely Resolved

Although this Court noted that the "parties are not direct competitors," courts have found that competition is not required to find there is harm to a patentee in staying its claims. Dkt. 130 at 11. The long pendency of the stay in this case only increases the prejudice to DivX, accentuating the right under Rule 1 to have these claims adjudicated timely.

1    Courts have recognized that continuing a stay—including during an appeal of an

2    IPR—would "'unduly prejudice [the plaintiff] and unfairly advantage [the defendant].'"

3    *Milwaukee Elec. Tool*, 2016 WL 7495808, at *3 (alterations in original, quoting *ZOLL*

4    *Med. Corp. v. Respironics, Inc.*, Case No. 12-1778-LPS, 2015 WL 4126741, at *1 (D.

5    Del. July 8, 2015)).   Even in the absence of direct competition between Netflix and

6    DivX, there is harm to DivX.   Judge Bryson explained that:

7        "undue prejudice to the nonmoving party . . . is stronger now than it was

8        when the stay was initially sought. . . . [A] ***patentee has an interest in***

9        ***prompt enforcement of its patent rights***. While that interest in the case of

10       a non-practicing entity is not typically as strong as it is for a competitor of

11       the accused infringer, it is nonetheless a factor that ***must be afforded weight***

12       ***in the balance***."

13   *Ioengine*, 2020 WL 6270776, at *3.   *See also id.* at *7 (stay pending appeal would

14   "increas[e] the prejudice to the patent owner's interest in having its patent rights

15   enforced on a timely basis," and "would be unduly prejudicial to [patent holder's]

16   interest in the ***timely enforcement*** of its patent rights."); *see also Network-1 Sec. Sols.,*

17   *Inc. v. Alcatel-Lucent USA Inc.,* 2015 WL 11439060, at *4-5 (E.D. Tex. Jan. 5, 2015)

18   (finding plaintiffs have an "interest in ***timely enforcement*** of a patent" regardless if they

19   "make or sell any product or services," "the additional delay that would be incurred by

20   maintaining the stay pending exhaustion of appeals is considerable," and plaintiffs

21   "would be unduly prejudiced by maintaining the stay until all appeals have been

22   exhausted"); *ZOLL*, 2015 WL 4126741, at *1 ("Continuing the stay would unduly

23   prejudice Zoll and unfairly advantage Respironics, in part by keeping this case at its

24   relatively early stage for perhaps up to another year, while the appeal is briefed and

25   decided."); *Interval Licensing LLC v. AOL, Inc.*, Case No. C10-1385 MJP, slip op. at 2

26   (W.D. Wash., June 25, 2012) (finding that a requested stay for reexamination appeal

27   "may take as long as five years to reach final resolution," that the court could "try the

28   case in a much shorter period of time," and that "[c]ontinued delay for the purpose of

waiting for a final resolution of what appears a difficult appeal is far outweighed by the Court's interest in resolving the pending dispute in a ***timely manner***"). The length of the stay in this case, and the harm to DivX's ability to timely enforce its rights, weigh against a further stay.

Extending what has already been a three-and-a-half year stay would not be consistent with the requirement in Rule 1 for a "just, speedy, and inexpensive determination of every action and proceeding." One court found that "[i]n light of its obligation to ensure the expeditious resolution of this case, *see* Fed. R. Civ. P. 1, the Court finds that the stay in the Related Cases has outlived its usefulness." *Milwaukee Elec. Tool*, 2016 WL 7495808, at *3. A court in this district similarly found its "obligation to manage its docket to ensure that cases are resolved in a timely manner" and the passage of time—in that case the years since the case was filed—without the court being "able to weigh in on the merits of its claims" also weighed in favor of lifting a stay. Ex. 3, *Lund*, Order at 6. Under Rule 1 and for efficiency, DivX respectfully requests that this case now be allowed to proceed.

The Court previously rejected DivX's arguments that the stay impedes DivX's licensing business, but DivX continues to suffer harm to that business. *See* Dkt. 106 at 6; Dkt. 130 at 11; *MasterObjects*, 2018 WL 11353751, at *3-4 (plaintiff argued that "a delay of resolution in this case impairs its ability to license its intellectual property," and "allowing this case to proceed, even with the ongoing Federal Circuit appeal, decreases the likelihood of prolonged uncertainty with respect to the patent at issue"). Although Disney did enter a license with DivX, other streaming video companies, such as Amazon, are following Netflix's example and have refused to take a license – a tactic that the on-going delay in this case confirms. As DivX's prior CEO Brian Way stated following Samsung's and LG's decisions to license DivX patents, "[w]hen other companies use our technology without authorization, including some of the largest companies in the world, our ability to protect our investment for both DivX and DivX's licensees . . . is significantly impacted by their unauthorized use." Ex. 8 at 1. On the

other hand, Samsung and LG entered a license "a week before the evidentiary hearing" in the ITC, and after LG and Samsung "lost the bulk of claim construction" and "lost a bid for summary determination of noninfringement." *Id*. VIZIO, Inc. took a license while an ITC Investigation was proceeding against it on some of the same patents asserted here. This confirms the best way to resolve this dispute is to allow the case to progress in this Court. Netflix's disrespect of DivX's patents for its own commercial advantage threatens to proliferate lawsuits, not simplify them, and a continued stay causes DivX irreparable harm.

### D.   The Totality Of The Circumstances Favors Lifting The Stay

There is no reason the patents in this case should not be allowed to proceed on the merits. Any simplification from the parallel proceedings has been achieved, and there is no likelihood of any significant additional simplification that a continued stay would achieve. If there is "even a fair possibility that the stay . . . will work damage to someone else," the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward." Ex. 2, *Game & Tech*., slip op. at 3. There is no harm or inequity to Netflix if the stay is lifted. Efficiency will be achieved not by a further stay, but by now allowing this case to proceed after an already lengthy stay.

### V.   CONCLUSION

Rule 1 requires the just and speedy determination of every action. That may be even more important in cases, like this one, involving intellectual property rights in a rapidly growing area of technology. The stay imposed in this case was designed to capture benefits of parallel proceedings. After three-and-a-half years, those proceedings are basically over, and any benefits that may have been contemplated from a stay have been realized. All of the factors courts use to evaluate a stay point towards lifting it now, especially given the undue prejudice to DivX of continuing a stay at this time. DivX thus respectfully asks the Court to exercise its discretion and lift the stay so this case may proceed to resolution.

Dated: December 29, 2023          Respectfully submitted,


/s/         *Matthew D. Powers*
Matthew D. Powers (Bar No. 104795)
matthew.powers@tensegritylawgroup.com
Paul T. Ehrlich (Bar No. 228543)
paul.ehrlich@tensegritylawgroup.com
William P. Nelson (Bar No. 196091)
william.nelson@tensegritylawgroup.com
Natasha M. Saputo (Bar No. 291151)
natasha.saputo@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA 94065
Telephone:     (650) 802-6000
Facsimile:     (650) 802-6001
DivX_Netflix_Service@tensegritylawgroup.com

Azra M. Hadzimehmedovic (Bar No. 239088)
azra@tensegritylawgroup.com
Aaron M. Nathan (Bar No. 251316)
aaron.nathan@tensegritylawgroup.com
Samantha A. Jameson (Bar No. 296411)
samantha.jameson@tensegritylawgroup.com
TENSEGRITY LAW GROUP, LLP
1676 International Drive, Suite 910
McLean, VA 22102
Telephone:     (703) 940-5033
Facsimile:     (650) 802-6001
DivX_Netflix_Service@tensegritylawgroup.com

David M. Stein, SBN 198256
dstein@brownrudnick.com
Brown Rudnick LLP
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone:  (949) 752-7100
Facsimile:  (949) 252-1514

*Attorneys for Plaintiff*
*DivX, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for DivX, LLC, certifies that this brief contains 6,531 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 29, 2023          _/s/    Matthew D. Powers_
                                                      Matthew D. Powers (Bar No. 104795)
                                                      matthew.powers@tensegritylawgroup.com